```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUN 2 2 2012
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
ILLINOIS NATIONAL INSURANCE COMPANY,:
THE INSURANCE COMPANY OF THE STATE OF:
PENNSYLVANIA, and NATIONAL UNION FIRE:   11 Civ. 431 (KBF)
INSURANCE COMPANY OF PITTSBURGH, PA,:
                                    :    MEMORANDUM & ORDER
              Plaintiffs,           :
                                    :
        -v-                         :
                                    :
TUTOR PERINI CORPORATION,           :
                                    :
              Defendant.            :
                                    :
------------------------------------X

KATHERINE B. FORREST, District Judge:

   On January 20, 2011, plaintiffs Illinois National Insurance Company, The Insurance Company of the State of Pennsylvania, and National Union Fire Insurance Company of Pittsburgh, PA (the "Chartis Insurers") filed this declaratory judgment action against defendant Tutor Perini Corporation ("Tutor"), seeking a declaration that there is no coverage under the Chartis Insurers' disparate policies (the "Policies") for a claim arising out of the buckling of a brick façade for a Metropolitan Transit Authority ("MTA") bus terminal located at 100th Street in Manhattan. (See generally Am. Compl. (Dkt. No. 18).)

   On February 14, 2012, Tutor asserted counterclaims alleging, inter alia, that the Chartis Insurers' denial of coverage amounts to a violation of the Massachusetts Consumer

Protection Act, M.G.L. ch. 93A § 11.  (Second Am. Answer & Counterclaims ("Countercl.") ¶¶ 50-53 (Dkt. No. 67).)  The Chartis Insurers have now moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) as to that claim ("Counterclaim III"), asserting that it does not sufficiently allege that the claim occurred "primarily and substantially" in Massachusetts.  (Dkt. No. 53.)  The motion was fully submitted as of April 30, 2012.

For the reasons set forth below, the motion is DENIED without prejudice.

## BACKGROUND[1]

The Court recites only the facts pertinent to the counterclaim at issue.

Tutor is a Massachusetts corporation, which had its principal place of business in Framingham, Massachusetts until October 2009 when, following a merger, such place was transferred to Sylmar, California.  (Countercl. ¶ 5.)  Prior to October 2009 and continuing to the present, Tutor maintained a risk management office in Framingham, Massachusetts.  (Id.)  According to Tutor, the Framingham risk management office

---

[1] The Court accepts as true all well-pleaded allegations for purposes of this motion and construes them in the light most favorable to Tutor.  See Rolon v. Henneman, 517 F.3d 140, 142 (2d Cir. 2008).

Tutor submitted a number of materials outside the pleadings in connection with its opposition to the Chartis Insurers' motion.  (See Decl. of Vianny M. Pichardo (Dkt. No. 58).)  Consideration of such materials is inappropriate on a motion for judgment on the pleadings.  See Fed. R. Civ. P. 12(d).

handled and continues to handle the "insurance matters" at issue in both the primary action and the counter-suit. (Id.)

Counter-defendant Illinois National Insurance Company ("Illinois National") is an Illinois corporation (Countercl. ¶ 6); both Insurance Company of the State of Pennsylvania ("ISCOP") and National Union Fire Insurance Company of Pittsburgh ("National Union") are Pennsylvania corporations (id. ¶¶ 7, 8). All three Chartis Insurers maintain their principal places of business in New York, New York. (Id. ¶¶ 6-8.)

On May 1, 2000, Tutor and the MTA entered into a contract pursuant to which Tutor would design and construct a bus depot in New York, New York. (Countercl. ¶ 9.) Subsequent to construction, on April 17, 2008, a section of that depot's "exterior masonry wall failed." (Id. ¶ 10.) Approximately two months thereafter, on June 22, 2008, Tutor and the MTA entered into another contract pursuant to which Tutor agreed to pay for the repair or replacement of the portion of the wall that failed. (Id. ¶ 12.) That agreement has resulted in approximately $13 million of additional costs for Tutor. (Id. ¶ 13.)

Illinois National sold the MTA a primary general liability insurance policy, which allegedly also insures Tutor "through owner controlled insurance endorsements." The policy covered the period between March 1, 1999 and March 1, 2004. (Countercl.

3

¶ 14.)  That policy requires Illinois National to reimburse costs incurred due to, inter alia, "physical injury to tangible property."  (Id. ¶ 17.)  ISCOP sold Tutor a primary general liability insurance policy that covered the period from December 31, 1999 through May 31, 2008, and reimburses for "physical injury to tangible property."  (Id. ¶¶ 19, 20.)  National Union sold Tutor an umbrella commercial general liability insurance policy which provides excess coverage to Tutor over the ISCOP policy and ran with successive terms from December 31, 1998 through May 31, 2008.  (Id. ¶ 24.)  That policy reimburses Tutor for, inter alia, "physical injury to tangible property."  (Id. ¶ 26.)

On January 6, 2009, Tutor provided notice of the failure of the MTA wall to the Chartis Insurers.  (Countercl. ¶ 29.)  It is alleged that such notice issued from Tutor's risk management office in Framingham, Massachusetts.  (Id.)  Tutor subsequently sent letters to the Chartis Insurers on April 8, 2009, May 13, 2009, and August 28, 2009 from that same office, requesting action on the claim.  (Id. ¶ 32.)  Tutor alleges that none of those letters received a response from any of the Chartis Insurers.  (Countercl. ¶ 32.)

Then, on January 21, 2010, Tutor contacted the Chartis Insurers to request an "immediate meeting to discuss relevant information" regarding the wall failure and the repairs and

4

replacements needed.  (Countercl. ¶ 30.)  Tutor alleges that the Chartis Insurers never responded to that request either.  (Id.)

According to Tutor, it was not until April 27, 2010 that the Chartis Insurers responding, notifying Tutor that they would likely have an expert inspect the bus depot.  (Countercl. ¶ 31.) It is alleged that without any indication that the Chartis Insurers conducted such inspection, they each sent letters on August 9, 2010 and December 23, 2010 to Tutor's Massachusetts risk management office, in which they denied coverage for the claim at issue.  (Id. ¶ 33.)

## DISCUSSION

I. Legal Standard[2]

The standard for dismissal under Rule 12(c) of the Federal Rules of Civil Procedure are the same as those for dismissal under Rule 12(b)(6).  Rivera v. Heyman, 157 F.3d 101, 103 (2d Cir. 1998).  To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Alt. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In other

---

[2] Tutor asserts that consideration of the viability of a Chapter 93A claim is inappropriate on a motion for judgment on the pleadings (or motion to dismiss).  That assertion is belied by cases that consider this issue, brought before the Court on precisely those types of motions.  See, e.g., Weber v. Sanborn, 502 F. Supp. 2d 197 (D. Mass. 2007); Am. Mgmt. Servs., Inc. v. George S. May Int'l Co., 933 F.Supp. 64, 67-68 (D. Mass. 1996).

5

words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570). See also Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (same). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. In applying that standard, the court accepts as true all well-plead factual allegations, but does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." Id. If the court can infer no more than "the mere possibility of misconduct" from the factual averments--in other words, if the well-pleaded allegations of the complaint have not "nudged claims across the line from conceivable to plausible," dismissal is appropriate. Twombly, 550 U.S. at 570; Starr, 592 F.3d at 321 (quoting Iqbal, 129 S. Ct. at 1950).

II.  Mass. General Law Chapter 93A

The Massachusetts Consumer Protection Act proscribes "the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice . . . ." M.G.L. ch. 93A § 11. The statute applies, however, only where "the actions and

6

transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth [i.e., Massachusetts]." Id. (emphasis added).  The burden of proof of proving that the alleged violations did not occur "primarily and substantially" within Massachusetts lies with the Chartis Insurers.  See id.

The Supreme Judicial Court of Massachusetts considered what would satisfy the "primarily and substantially" requirement in Kuwaiti Danish Computer Co. v. Digital Equipment Corp., 781 N.E.2d 787, 438 Mass. 459 (Mass. 2003), ultimately holding that it "is not a determination that can be reduced to any precise formula."  Id. at 798.  Rather, the question is "fact intensive and unique to each case," focusing on "whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth."  Id. at 798, 799.[3]

Courts considering the "primarily and substantially" question subsequent to Kuwaiti Danish Computer Co. have considered, inter alia, the "location of events, and to some

---

[3] As mentioned above (see note 2 supra), despite the Massachusetts Supreme Judicial Court's focus on the development of fact finding in relation to the "primarily and substantially" question, courts have resolved questions on motions to dismiss or motions for judgment on the pleadings, prior to development of a full factual record.

7

extent, the location of the harm." See, e.g., Weber v. Sanborn, 502 F. Supp. 2d 197, 198 (D. Mass. 2007).

Under that standard and on the instant motion, the Court finds that Counterclaim III plausibly states that the conduct has a sufficient nexus to Massachusetts. It is alleged that all of the correspondence relating to the claim for coverage emanated from and arrived to Tutor's Framingham, Massachusetts risk management office. (See Countercl. ¶¶ 29, 32.) Having a Massachusetts-based risk office, especially where communications emanated from or were made to that office, is sufficient to satisfy the "primarily and substantially" factor at the pleading stage. See In re TJX Cos. Retail Sec. Breach Litig., 564 F.3d 489, 498 (1st Cir. 2009).[4] Accordingly, Tutor's counterclaim withstands the Chartis Insurers' motion for judgment on the pleadings.

Although Counterclaim III remains at this time, it is possible (and even likely given the assertions made by the Chartis Insurers that are outside of the pleadings) that evidence will show that the "circumstances that give rise to the claim" is not "primarily and substantially" within

---

[4] The Chartis Insurers argue that because the decisions to deny coverage--and the letters regarding that denial--occurred in New York, at their primary places of business, the "center of gravity" of Tutor's Chapter 93A claim is New York, not Massachusetts. Nothing in the pleadings indicates as much and the Chartis Insurers' letters (which the Court could have considered as documents incorporated by reference into the Counterclaim, or as documents relied upon in drafting the Counterclaim) were not submitted to the Court on this motion.

8

Massachusetts. Thus, the denial of the instant motion is without prejudice.

## CONCLUSION

For the aforementioned reasons, the Chartis Insurers' motion for judgment on the pleadings is DENIED without prejudice, with leave to renew as a motion for summary judgment upon sufficient evidentiary matter being produced in this action.

The Clerk of the Court is directed to terminate the motion at Dkt. No. 53.

SO ORDERED:

Dated: New York, New York
       June 22, 2012

_____
KATHERINE B. FORREST
United States District Judge