UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ILLINOIS NATIONAL INSURANCE COMPANY, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

Case No.: 11-CV-00431 (KBF)

                              Plaintiffs,

      - against -

TUTOR PERINI CORPORATION,

                                  X
------------------------------------------------------------------------
TUTOR PERINI CORPORATION,

                              Third-Party Plaintiff,

      - against -

CERTAIN UNDERWRITERS AT LLOYD'S LONDON

                              Third-Party Defendant.
------------------------------------------------------------------------X

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON'S SUPPLEMENTAL STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF SUMMARY JUDGMENT**

      The Third-Party Defendant, Certain Underwriters at Lloyd's, London who subscribe to Policy No. 576/UF7274400 ("Underwriters"), submit this supplemental statement of undisputed facts in support of their Motion for Summary Judgment. In support of this Statement, Underwriters refer to the Supplemental Declaration of George Rockas ("Supp. Rockas Decl.") and the exhibits thereto.

**Perini's Original Position Was That It Was Not Liable To The MTA For The Façade Failure**

      98. As of August 2008, it was the position of Perini that Perini was not liable for the Façade Failure because the warranty in the construction contract between Perini and the MTA for

construction of the Building had expired, and that the repair of the Façade Failure was the responsibility of the MTA. This position was communicated to the MTA by John Loftus, the President of Perini's Civil Division. *See* Depo. Ex. 8 attached as Exhibit 21 to Rockas Decl.; *see also* Deposition of James Laing ("Laing Depo."), attached as Exhibit 33 to Supp. Rockas Decl., 47:11-49:19; 96:12-22.

99. During a meeting between Perini and the MTA on or about November 21, 2008, the MTA demanded that Perini "pay for external third-party costs and potential internal costs of MTA related to this façade failure." The MTA wanted Perini to "acknowledge [its] responsibility." At the meeting, the MTA's attorney "was very resolute in her discussion with John Loftus that she was not happy with his previous correspondence." *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 86:19-25; 87:18-88:6; 202:9-13.

**After Perini's Acquisition of Perini, Perini Sought To Expand Its Business In New York**

100. In September of 2008, Perini Corporation acquired Tutor-Saliba Corporation, creating Perini. *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 13:13-17.

101. "As related to the acquisition of Tutor-Saliba Corporation by the Perini Corporation, one of the aspects of that was to grow the civil business in addition to what was primarily building group emphasis under the old Perini Corporation." One of the markets in which Perini wanted to grow was New York City. *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 109:2-19.

102. Perini's corporate position is that issues relating to safety or quality of projects should be resolved quickly. *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 44:5-13.

103. Perini was concerned about its reputation as a contractor. *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 43:15-44:13. Perini was also concerned about negative publicity. *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 45:6-46:9.

**The MTA Told Perini It Would Not Get Another MTA Project If It Did Not Repair The Façade**

104. As of December 2008 Perini was also in the process of negotiating a bid with the MTA on a new project – the construction of the extension of the Second Avenue subway at the 96th Street Station. *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 104:19-105:10. In those negotiations, the MTA brought up the issue of quality with respect to the 100th Street project. *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 105:25-107:5.

105. On December 3, 2008 Frank Salvato from the MTA's procurement department wrote an email to Jack Frost, a chief operations office and executive vice president from Perini. The email mostly concerned the proposed 96th Street Project. Mr. Salvato had the responsibility over the procurement of a contractor for the 96th Street Project. At the end of the email, Salvato wrote:

> Additionally, relating to the 100th Street Bus Depot and as per Stan Grill's email to Jack Frost, we are expecting a report from the forensic consultant within a week or so, which should give NYCT a better idea of the work that will be required to repair the façade. At some point soon after that **we will need to get a written commitment from Perini that you will reimburse NYCT Transit for whatever costs we've incurred** thus far in connection with this problem **as well as that Perini will take full responsibility for fixing it**, consistent with what was indicated in our meeting on Nov. 21. **As was discussed, absent that, it will be impossible to convince our Board members to approve an award to Perini for 96th Street."** (emphasis added).

*See* Depo. Ex. 182, attached as Exhibit 34 to Rockas Decl; *see also* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 102:21-103:20; 112:2-122:18.

942651.2

106. Perini explains that "through this communication, it was apparent that individuals in the procurement department believed a written agreement memorializing our commitment to meet our quality requirements under the original contract would help them make the recommendation to their board, which would potentially then give us an award for the 96th Street project." *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 125:12-24.

**Perini Changed Its Position And Agreed To Bear All The Costs Of Repairing Its Work Notwithstanding That It Believed The Costs Were Too High**

107. "Sometime in late 2008" Perini changed its position and agreed that it would "stand up and take responsibility for what is our contractual responsibility," although it did not want to "pay everything." *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 117:15-118:6; 177:16-23.

108. Perini explains that initially "there was a concern that the MTA was looking for something above and beyond what the original contractual responsibility was going to be forced…" *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 118:20-25.

109. On January 12, 2009, Jack Frost sent an email to the MTA's attorney in which he said that the costs expended to date by the MTA, for which it was seeking reimbursement, "are without question 3-4 times of what it should have cost…" *See* Depo. Ex. 188, attached as Exhibit 35 to Rockas Decl.

110. Although the reimbursement costs "seemed high" to Perini, it "ultimately took on the burden of that cost" *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 150:20-151:14. Perini did not fight the MTA's position by, for example, bringing a lawsuit. *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 151:15-151:22.

111. Moreover, although Perini had earlier voiced objections to the categories of expense reimbursements requested by the MTA, in the Repair Agreement, Perini ultimately

agreed to pay all of the categories of expenses that the MTA had first requested. *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 178:7-180:7.

**Perini Views The Repair Agreement As Affirming Its Duties Under The Building Contract**

112. On January 13, 2009, Perini wrote a letter to the MTA in which it proposed: "Perini will repair and/or reconstruct the brick façade of the Bus Depot as may be necessary to assure that such work reasonably conforms to the intent of the Contract…" *See* letter dated January 13, 2009 attached as Exhibit 23 to Rockas Decl., TP031521-2.

113. Perini views this letter, as well as the ultimate Repair Agreement, as re-affirming its obligations under the original Building Contract. Perini admits that its work under the Repair Agreement represents only work it was originally required to do under the Building Contract: "It was under our original contract obligation to build the building to the standards that were accepted, that were adopted in the original contract. We didn't agree to anything more than that at any time." *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 147:25-148:6.

114. "At some point, a formal written agreement was agreed, that would be the best course of action to protect both the MTA and Perini's respective positions related to the original contract." *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 122:3-7.

115. Perini says it entered into the Repair Agreement because "we wanted written clarity to that 'whatever all costs' aspect and to protect our rights, and to effectively have that agreement be a part of the original contract documents." *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 122:8-18.

116. Through the Repair Agreement, Perini "agreed that under our original contract, we had an obligation to provide them with a building that met certain requirements." *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 175:24 -176:18.

117.    Perini now believes that the Repair Agreement was intended to re-state Perini's obligations under the construction contract and confirm Perini's obligations under the construction contract to repair faulty work: "As part of the original contract, there is clauses related to if defective work is uncovered or requested to be uncovered and the work is found to not be in conformance with the contract the contractor would be obligated to pay for those." *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 91:21-92:3; 214:6-9.

**Perini Believes The Façade Failure May Be Covered By A Bond**

118.    Perini entered into a settlement agreement with Steelco, a subcontractor that performed work on the façade. In the agreement, Perini reserved its right to bring a claim against Steelco related to the Façade Failure. Perini has put Steelco on notice of a claim related to the Façade Failure, and has also put Steelco's bond company on notice. Perini believes it has a valid claim against Steelco and its bond company. *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 25:14-30:4; 35:8-17; 36:22-37:7. Perini understands that the purpose of a bond is to "secure obligations to fulfill contractual work." *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 161:13-25.

**Perini's Alleged Damages**

119.    The damages Perini seeks in this lawsuit are its expenses in complying with the Repair Agreement. *See* Laing Depo. attached as Exhibit 33 to Supp. Rockas Decl., 194:5-16.

**Completed Operations Coverage**

120.    David Melick, the Assistant Vice President and national wrap up manager at Chartis testified as to a general liability policy issued by Illinois National to the MTA covering the period October 1, 2005 to October 1, 2006. *See* Deposition of David Melick

("Melick Depo."), attached as Exhibit 36 to Supp. Rockas Decl., 8:4-7, 38:19-39:7; *see also* Depo. Ex. 206 attached as Exhibit 37 to Rockas Decl.

    121.    Melick also testified as to coverage under completed operations coverage. Specifically he was asked the following:

> Q:    If completed operations coverage had been triggered prior to the inception of the policy that was marked as Exhibit 206, that is the policy period 10/1/05 to 10/1/06, if completed operations coverage had been triggered under another policy prior to the inception of that policy, how does that affect your analysis as to coverage under Exhibit 206 with respect to the bus depot project.
>
> A:    If the products completed operations trigger had occurred prior to inception of Exhibit 206, that is October 1, 2005, then there is no coverage afforded under that and subsequent policies.
>
> Q:    By that you mean 206?
>
> A:    Correct. Coverage would then apply if applicable to a prior coverage period's products completed operations hazard limit.

*See* Deposition of David Melick ("Melick Depo."), attached as Exhibit 36 to Supp. Rockas Decl., 8:4-7, 66:18-67:12; Depo. Ex. 206 attached as Exhibit 37 to Rockas Decl.

    122.    Melick explained further:

> Q:    With respect to that completed operations coverage trigger that you are talking about for prior to let's say the policy period in Exhibit 206, with respect to that if an occurrence takes place during - - if property damage or bodily injury takes place during the policy period of Exhibit 206, and notwithstanding the existence of any completed operations coverage for the project under any prior policy, it would still be covered under Exhibit 206 subject to that policy's terms and conditions; is that correct?
>
> A:    No, I don't think so.
>
> Q:    Why not?
>
> A:    If work was completed and put to its intended use in a prior period, then the intent of the program would be to not be providing coverage in that follow on period, i.e., '05 to 2006 coverage period. So if due to the nature of the products completed operations endorsement there is in effect a tail

942651.2

> period by which those events would be covered based on the fact pattern and the limit would apply would be the previous policy, or the period when the work was completed and put to its intended use, or other applicable contractual obligation.

*See* Melick Depo. attached as Exhibit 36 to Supp. Rockas Decl., 67:16-68:18; Depo. Ex. 206 attached as Exhibit 37 to Rockas Decl.

    Respectfully submitted,

    WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER LLP

    By:/s/ George C. Rockas
    George C. Rockas, BBO #544009
    George.Rockas@wilsonelser.com
    WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER LLP
    *Attorneys for Third Party Defendant,*
    *Certain Underwriters at Lloyds*
    *Subscribing to Policy No. 576/UF7274400*
    260 Franklin Street, 14th Floor
    Boston, MA 02110
    (617) 422-5300

    /s/Jensen Varghese
    Jensen Varghese
    Jensen.Varghese@wilsonelser.com
    WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER LLP
    3 Gannett Drive
    White Plains, NY 10604-3407
    914-872-7720

Dated: August 15, 2012

942651.2