UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILLINOIS NATIONAL INSURANCE COMPANY, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>                            Plaintiffs,<br>   v.<br>TUTOR PERINI CORPORATION,<br>                            Defendant. | CASE NO. 11-CV-00431 (KBF)(ECF) |
| TUTOR PERINI CORPORATION,<br><br>                            Third-Party Plaintiff,<br>   v.<br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,<br>                            Third-Party Defendant, | |

**TUTOR PERINI'S MEMORANDUM OF LAW IN OPPOSITION TO CERTAIN UNDERWRITERS AT LLOYD'S, LONDON'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| Preliminary Statement | | 1 |
| Statement of Facts | | 2 |
| I. | The Bus Depot Project | 2 |
| II. | The Lloyd's Policy | 3 |
| Argument | | 4 |
| I. | New York Law Dictates that the Policy Must be Read as a Whole with Ambiguities and Exclusions Construed *Against* the Insurance Company. | 4 |
| II. | The Façade Failure Constitutes An "Occurrence" Under the Policy. | 5 |
| | A. The Façade Failure Is Covered Under the Policy's Insuring Agreement. | |
| | B. Lloyd's Arguments That There Allegedly Was No "Occurrence" Are Unavailing. | 6 |
| III. | The Lloyd's Policy Explicitly Contemplates Claims For Property Damage By The MTA Against Tutor Perini | 7 |
| IV. | The Cases Cited by Lloyd's Are Distinguishable. | 8 |
| | 1. The Cases Lloyd's Cites Regarding Coverage for Faulty Work Do Not Involve the Subcontractor Exception. | 8 |
| | 2. Lloyd's Cases In Support of Its Argument That There is Allegedly No Coverage For Contractual Liability Are Similarly Inapplicable. | 9 |
| V. | Lloyd's Arguments Regarding Defenses to Coverage Are Unavailing. | 9 |
| | A. Lloyd's Waived its Policy Defenses by Failing to Timely Disclaim Coverage. | 9 |
| VI. | Lloyd's "Other insurance" Argument Has No Merit. | 12 |
| VII. | In The Alternative, The Lloyd's Policy Provides Coverage For Property Damage In Connection With The Rendering of Professional Services | 13 |
| VIII. | Conclusion | 13 |
| | CERTIFICATE OF SERVICE | 15 |

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ace Wire & Cable Co. v. Aetna Casualty & Surety Co.*,
   60 N.Y.2d 390 (N.Y. 1983) ................................................................................................8

*Am. Home Ass. Co. v. Rep. Ins. Co.*,
   984 F.2d 76 (2d Cir. 1993)................................................................................................13

*Am. Home Assur. Co. v. Int'l Ins. Co.*,
   90 N.Y.2d 433 (N.Y. 1997) ..............................................................................................14

*Belt Painting Corp. v. TIG Ins. Co.*,
   100 N.Y.2d 377, 795 N.E.2d 15 (N.Y. 2003) ....................................................................8

*Borg-Warner Corp. v. Insurance Co. of North America*,
   174 A.D.2d 24, 577 N.Y.S.2d 953 (N.Y. App.Div. 1992) .................................................8

*Continental Cas. Co. v. Rapid-American Corp.*,
   80 N.Y.2d 640, 609 N.E.2d 506, 593 N.Y.S.2d 966 (N.Y. 1993)......................................7

*Continental Cas. v. ACE Amer. Ins. Co.*,
   , 2009 WL 857594 (S.D.N.Y. Mar. 31, 2009) .................................................................14

*Deso v. London & Lancashire Indem. Co. of Am.*,
   3 N.Y.2d 127 (N.Y. 1957) ................................................................................................13

*First Fin. Ins. Co. v. Jetco Contracting Corp.*,
   202 F.Supp.2d 13 (S.D.N.Y. 2001) ..................................................................................14

*Gullo v. Commercial Cas. Ins. Co.*,
   226 A.D. 429 (4th Dep't 1929).........................................................................................14

*Hotel des Artistes, Inc. v. Gen. Acc. Ins. Co. of America*,
   9 A.D.3d 181, 775 N.Y.S2d 262, 189 (1st Dep't 2004) .....................................................8

*Lumbermens Mut. Cas. Co. v. Flow Int'l Corp.*,
   844 F. Supp. 2d 286 (N.D.N.Y. 2012)..............................................................................16

*Matter of Brandon*,
   97 N.Y.2d 491 (2002) ......................................................................................................14

*Matter of Govn't Empls. Ins. Co. v. Elman*,
   40 A.D.2d 994 (2d Dep't 1972) .......................................................................................14

## TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Metalios v. Tower Ins. Co. of New York*,
  77 A.D.3d 471, 910 N.Y.S.2d 28 (N.Y. App.Div. 2010) .......................................8, 9

*New York Univ. v. Jetco Contracting Corp.*,
  352 F.3d 653 (2d Cir. 2003)..........................................................................................14

*Olin Corp. v. Ins. Co. of N. Amer.*,
  966 F.2d 718 (2d Cir. 1992)..........................................................................................14

Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.,
  472 F.3d 33 (2d Cir. 2006)............................................................................................15

*Peerless Ins. Co. v. Nationwide Ins. Co.*,
  12 A.D.2d 602 (1st Dep't 1960) ...................................................................................14

*Platek v. Town of Hamburg*,
  97 A.D.3d 1118, --- N.Y.S.2d ----, 2012 WL 2626955 (N.Y. App.Div. 2012).........8

*Power Auth. Of State of N.Y. v. Westinghouse Elec. Corp.*,
  117 A.D.2d 336 (1st Dep't 1986) .................................................................................13

*Raymond Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*,
  5 N.Y.3d 157, 833 N.E.2d 232, 800 N.Y.S.2d 89 (N.Y. 2005) ...................................7

*Savik, Murray & Aurora Constr. Mgmt. Co., LLC v. ITT Hartford Ins. Group*,
  26 Misc.3d 1237(A), 907 N.Y.S.2d 103 (N.Y. Sup. Ct. N.Y. Cnty. 2010), *aff'd as
  modified*, *Savik, Murray & Aurora Constr. Mgmt. Co. v. ITT Hartford Ins. Group*, 86
  A.D.3d 490 (1st Dep't 2011) ........................................................................................12

*Sec. Mut. Ins. Co. of N.Y. v. Acker-Fitzimmons*,
  31 N.Y.2d 436 (N.Y. 1972) ..........................................................................................14

*Spoleta Constr. Corp. v. CNA Ins. Co.*,
  4 Misc.3d 1010(A), 791 N.Y.S.2d 874 (N.Y.Sup. Ct. Monroe Cnty. 2004) ............14

*TLC Beatrice Int'l Holdings v. Cigna Ins. Co.*,
  , 2000 WL 282967 (S.D.N.Y. Mar. 16, 2000) .............................................................14

*Travelers Indem. Co. v. Commerce & Industry Ins. Co. of Canada*,
  36 A.D.3d 1121 (3d Dep't 2007) ....................................................................................7

*Travelers Ins. Co. v. Volmar Constr. Co.*,
  300 A.D.2d 40 (1st Dep't 2002) ...................................................................................13

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*White v. City of New York,*
    81 N.Y.2d 955 (N.Y. 1993) ...................................................................................................14

**STATUTES**

4 Misc.............................................................................................................................................15

**OTHER AUTHORITIES**

Oxford Dictionaries (Oxford Univ. Press 2012) at
    http://oxforddictionaries.com/definition/english/accident. ..........................................................9

**Preliminary Statement**

Tutor Perini Corporation ("Tutor Perini") respectfully submits this memorandum of law in opposition to the summary judgment motion of Certain Underwriters at Lloyd's, London ("Lloyd's").

Lloyd's argues in its motion that it has no duty to indemnify Tutor Perini for damage to the façade of the Metropolitan Transportation Authority's ("MTA") 100th Street Bus Depot (the "Façade Failure" or "Failure"), whose cause arose from the defective work of a subcontractor Metropolitan Steel Industries, Inc. d/b/a Steelco ("Steelco"). Lloyd's summary judgment motion must be denied for at least the following reasons, which are more fully set forth herein:

- The damage to the Bus Depot's facade meets the requirements for coverage under the insuring agreement of the insurance policy at issue;

- Whether Tutor Perini's alleged liability to the MTA arises out of contract is irrelevant to the determination of whether the Façade Failure constitutes an "occurrence" under the policy;

- Damage caused by faulty work constitutes an "occurrence" under the policy;

- The your work exclusion does not preclude coverage due to the subcontractor exception, which renders the your work exclusion ambiguous at minimum and thus it must be construed in favor of coverage; and

- Lloyd's waived its policy defenses by failing to timely disclaim coverage; alternatively, Tutor Perini had a good excuse for delay in giving notice such that coverage is not barred by any alleged late notice and Tutor Perini specifically waived its voluntary payments defense by failing to act after receiving notice of the Failure.

Accordingly, summary judgment cannot be granted in Lloyd's favor.

**Statement of Facts**[1]

**I.      The Bus Depot Project**

Tutor Perini entered a contract with the MTA to serve as the contractor and designer of the MTA's 100th Street Bus Depot (the "Bus Depot"). As part of the contract, the MTA agreed to purchase insurance to insure Tutor Perini. (TP SOF, ¶1-2).

The Bus Depot was deemed "substantially complete" in July 2003 and the MTA started using the Bus Depot in September 2003, but there remained work to be completed for the project. (Lloyd's SOF, ¶17). The Bus Depot did not reach "final completion" in October 2007. (TP SOF, ¶8). On or about April 17, 2008, the brick façade of the Bus Depot started bulging and partially collapsed (the "Façade Failure" or "Failure"). (TP SOF, ¶42). The MTA made emergency repairs to the façade. (TP SOF, ¶44).

In November 2008, after Tutor Perini received preliminary reports indicating that the Façade Failure was caused by one or more of its subcontractors' defective work, and in or about November 2008 the MTA represented that it had notified the OCIP administrator and applicable insurance companies of the Façade Failure and the insurance companies had made an evaluation of coverage. (TP SOF, ¶49-51). Prior to this point, Tutor Perini did not believe that it was liable in any way for the Failure and consequently did not believe it would need to seek insurance coverage for any repairs. (TP SOF, ¶49-50). In or about November 2008, Tutor Perini's risk manager learned of the Façade Failure and thereafter on January 14, 2009 placed Lloyd's on notice. (TP SOF, ¶50-59).

---

[1] Tutor Perini incorporates by reference its Supplemental Statement of Undisputed Facts as if fully set forth herein. Tutor Perini also reserves the right to set forth any evidentiary objections to Lloyd's evidence both for the purposes of the hearing on this motion and at trial.

2

In June 2009, Tutor Perini signed an agreement with the MTA in order to obtain access to the Bus Depot to examine the damage and to establish the framework for any repairs. (TP SOF, ¶73). In July 2009, Tutor Perini received an engineering report detailing the cause of the Façade Failure which indicated that one or more subcontractors work was the cause of the Facade Failure. (TP SOF, ¶46-49).

Lloyd's failed to acknowledge the Façade Failure claim to Tutor Perini, failed to contact Tutor Perini for any information regarding the claim and failed to provide any coverage position with respect to the claim. (TP SOF, ¶60-71).

## II. The Lloyd's Policy

Lloyd's sold the MTA a commercial umbrella liability policy which also insured Tutor Perini for the policy period April 1, 2001 to April 1, 2008. (TP SOF, ¶84). The Lloyd's Policy provides coverage in relevant part for "those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law . . . because of . . . Property damage . . . that takes place during the Policy Period and is caused by an Occurrence." (TP SOF, ¶85). The "Retained Limit" is defined either as the greater of the "total of the applicable limits" of any coverage provided by the Illinois National 2005-2008 or $10,000 to the extent that the Illinois National 2005-2008 Policies do not provide coverage for an "Occurrence." (TP SOF, ¶85). Accordingly, to the extent that the Illinois National 2005-2008 Policies do not provide coverage for the Façade Failure, the Lloyd's Policy provides coverage subject to its terms and conditions. Id.

**Argument**

I. **New York Law Dictates that the Policy Must be Read as a Whole with Ambiguities and Exclusions Construed *Against* the Insurance Company.** [2]

New York law is clear that a policy must be construed "in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect." *Raymond Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 5 N.Y.3d 157, 162, 833 N.E.2d 232, 234, 800 N.Y.S.2d 89, 91 (N.Y. 2005) (quotations and citations omitted); *Travelers Indem. Co. v. Commerce & Industry Ins. Co. of Canada*, 36 A.D.3d 1121, 1122 (3d Dep't 2007).

"To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Continental Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 652, 609 N.E.2d 506, 512, 593 N.Y.S.2d 966, 972 (N.Y. 1993) (citations omitted); *Hotel des Artistes, Inc. v. Gen. Acc. Ins. Co. of America*, 9 A.D.3d 181, 775 N.Y.S2d 262, 189 (1st Dep't 2004). The policyholder has the burden of demonstrating that an exception to an exclusion applies. *Borg-Warner Corp. v. Insurance Co. of North America*, 174 A.D.2d 24, 31, 577 N.Y.S.2d 953, 957 (N.Y. App.Div. 1992). However, "ambiguities in an insurance policy are . . . to be construed against the insurer, particularly when found in an exclusionary clause." *Ace Wire & Cable Co. v. Aetna Casualty & Surety Co.*, 60 N.Y.2d 390, 398 (N.Y. 1983); *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383, 795 N.E.2d 15, 792 (N.Y. 2003) ("[P]olicy exclusions are given a strict and narrow construction, with any ambiguity resolved against the

---

[2] While Tutor Perini asserts the arguments herein under New York law, on the basis that there does not appear to be any conflict as to the issues in dispute with Massachusetts law, it reserves its right to argue that Massachusetts law applies to any of the claims at issue in this litigation to the extent any conflict between Massachusetts and New York law is found with regard to a particular issue.

insurer." (citing *Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*, 34 N.Y.2d 356, 361, 357 N.Y.S.2d 705, 314 N.E.2d 37 (1974));  *Platek v. Town of Hamburg*, 97 A.D.3d 1118, --- N.Y.S.2d ----, 2012 WL 2626955, at *2 (N.Y. App.Div. 2012); *Metalios v. Tower Ins. Co. of New York*, 77 A.D.3d 471, 473, 910 N.Y.S.2d 28, 30 (N.Y. App.Div. 2010).

In light of this well-established New York law on policy construction, the Court should construe the Policy to find that there is coverage for property damage arising out of a subcontractor's work as any other construction of the Lloyd's Policy would render the subcontractor exception to the your work exclusion meaningless.  In addition, the presence of the subcontractor exception in the your work exclusion renders the exclusion ambiguous at minimum and thus the provision should be construed in favor of coverage.

## II. The Façade Failure Constitutes An "Occurrence" Under the Policy.

### A. The Façade Failure Is Covered Under the Policy's Insuring Agreement.

The Policy states:

> We will pay on behalf of the **Insured** those sums in excess of the Retained Limit the **Insured** becomes legally obligated to pay by reason of liability impose by law or assumed by the **Insured** under an **Insured Contract** because of **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** that takes place during the **Policy Period** and is caused by an **Occurrence** happening anywhere in the world.

(Lloyd's SOF, ¶85).  The Policy defines "Occurrence" as "an accident, including continuous or repeated exposure to conductions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured**."  (Lloyd's SOF, ¶85).  The Policy defines "Property Damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property."  (Lloyd's SOF, ¶85).  The Policy does not define the term "accident," however, "accident" is typically defined as "an unfortunate incident that happens unexpectedly

5

nydocs1-993451.3

and unintentionally, typically resulting in damage or injury." Oxford Dictionaries (Oxford Univ. Press 2012) at http://oxforddictionaries.com/definition/english/accident.

Here, the Façade Failure clearly is covered by the Policy in the first instance. The Failure was caused by a subcontractor's negligent installation of vertical steel columns and other subcontractor errors. (TP SOF, ¶3-7, 48-49; Lloyd's SOF, ¶62-66). There is no evidence that the Failure was expected or intended, in other words not an "accident." Id. Further, it is not disputed that the defective installation caused the Failure. Id. Thus, there was "physical injury to tangible property," i.e. "property damage," as defined by the Policy. Finally, as set forth in more detail below, this property damage occurred during the Lloyd's policy period as the Façade Failure occurred during the three year extension of products-completed operations hazard coverage.

For these reasons, there is no genuine issue of material fact as to whether the Façade Failure falls within the Policy's coverage grant.

### B.    Lloyd's Arguments That There Allegedly Was No "Occurrence" Are Unavailing.

Lloyd's sets forth in its brief the same arguments Chartis makes in support of its summary judgment motion regarding whether the Façade Failure constitutes an "occurrence" under the Policy (*compare* Lloyd's Br. 4-15 *with* Chartis Br. 5-15), namely, that (1) CGL policies allegedly are not meant to cover liability arising from contract (as opposed to tort liability(Lloyd's Br. 9-10); (2) faulty work allegedly cannot constitute an "occurrence" (Lloyd's Br. 4-9); and (3) the subcontractor exception to the your work exclusion allegedly "cannot create coverage" for the Façade Failure (Lloyd's Br. 11-15).

6

In its opposition to Chartis's summary judgment motion, Tutor Perini argued that (1) whether Tutor Perini's Liability arises from contract is irrelevant to whether there is an "occurrence" under the Policy because the Policy language does not delineate between coverage for tort (as opposed to contract) claims (Tutor Perini Opp. Sec. II.B); (2) New York cases hold that faulty work can constitute an "occurrence" because the damage caused was neither expected nor intended (Tutor Perini Opp. Sec. II.C); (3) the your work exclusion does not preclude coverage due to the bargained-for subcontractor exception to that exclusion, which renders that exclusion ambiguous at minimum and therefore the exclusion must be construed in favor of coverage (Tutor Perini Opp. Sec. III). Tutor Perini incorporates into this Opposition each of these arguments, which are fully set forth in its opposition to Chartis's summary judgment motion, as if fully set forth herein. To the extent Lloyd's has cited caselaw in support of arguments that is in addition to that cited by Chartis, Tutor Perini will address such additional caselaw below.

## III. The Lloyd's Policy Explicitly Contemplates Claims For Property Damage By The MTA Against Tutor Perini

In addition, the Lloyd's Policy explicitly contemplates claims for property damage by the MTA against Tutor Perini.

The Lloyd's Policy contains a Cross Liability Endorsement which covers property damage claims by one insured against another insured as if each had been issued a separate policy. The "Cross Liability Endorsement" states in relevant part that:

> In the event of claims being made by reason of damage to property belonging to any Insured hereunder, for which another Insured hereunder is, or may be liable, then this policy shall cover such Insured against whom a claim is made, or may be made, in the same manner as if separate policies had been issued to each Insured hereunder.

7

(TP SOF 88). Thus, because the Lloyd's Policy explicitly contemplates an insured making a claim for property damage against another insured under an OCIP program, the Policy plainly evidences an intent to provide coverage for such property damage.

**IV.    The Cases Cited by Lloyd's Are Distinguishable.**

        **1.    The Cases Lloyd's Cites Regarding Coverage for Faulty Work Do Not Involve the Subcontractor Exception.**

Lloyd's relies on many of the same cases Chartis cites in its brief to argue to that "faulty work does not constitute an occurrence." As set forth in Section IV of Tutor Perini's opposition to Chartis's motion for summary judgment (which Section Tutor Perini incorporates by reference as if fully set forth herein), these cases should not control here because none of them (with the exception of one district court federal case which is not controlling and was wrongly decided) discuss the Subcontractor Exception to the Your Work Exclusion and the majority do not involve products-completed operations hazard coverage. The additional case which Lloyd's cites similarly is distinguishable from the instant dispute and should not control here because the CGL policy at issue did not contain a subcontractor exception nor did it involve products-completed operations hazard coverage. *See Savik, Murray & Aurora Constr. Mgmt. Co., LLC v. ITT Hartford Ins. Group*, 26 Misc.3d 1237(A), 907 N.Y.S.2d 103 (N.Y. Sup. Ct. N.Y. Cnty. 2010), *aff'd as modified*, *Savik, Murray & Aurora Constr. Mgmt. Co. v. ITT Hartford Ins. Group*, 86 A.D.3d 490 (1st Dep't 2011).

Accordingly, Lloyd's cases concerning coverage for faulty work should not be followed here.

nydocs1-993451.3

### 2. Lloyd's Cases In Support of Its Argument That There is Allegedly No Coverage For Contractual Liability Are Similarly Inapplicable.

As with its faulty work argument, Lloyd's relies on many of the same cases Chartis cites to argue to that there allegedly is no coverage for contractual liability As set forth in Section IV.B of Tutor Perini's opposition to Chartis's motion for summary judgment (which Section Tutor Perini incorporates by reference as if fully set forth herein), those cases are similarly inapplicable to this dispute because they concerned loss that was excluded from coverage due to the absence of a subcontractor exception in the policies at issue or did not concern property damage arising from a subcontractor's faulty work in the context of a construction project such as the Bus Depot.

Accordingly, Lloyd's cases concerning coverage for liability arising out of contract should not be followed here.

## V. Lloyd's Arguments Regarding Defenses to Coverage Are Unavailing.

### A. Lloyd's Waived its Policy Defenses by Failing to Timely Disclaim Coverage.

Lloyd's argues that there is no coverage because Tutor Perini allegedly failed to give notice of the Façade Failure "as soon as practicable." (Lloyd's Br. 15-19.) Lloyd's also argues that there is no coverage because Tutor Perini's payment to the MTA allegedly violates the voluntary payment provision of the Policy. (Lloyd's Br. 19-22.) As Chartis makes the same arguments in support of its summary judgment motion, Tutor Perini incorporates herein each of the arguments Tutor Perini set forth in opposition to Chartis's motion as if fully set forth herein, which are in sum: (1) the late notice and voluntary payment defenses are unavailable because Lloyd's waived those defenses by failing to disclaim coverage at (Tutor Perini Opp. Sec. V.B); (2) if the Court declines to find that Lloyd's waived its policy defenses by failing to timely disclaim coverage, then the Court should find that Tutor Perini gave notice within a reasonable

9

time (Tutor Perini Opp. Sec. V.C); (3) if the Court declines to find that Lloyd's waived its policy defenses by failing to timely disclaim coverage, then (a) the Court should find that Lloyd's specifically waived the voluntary payments defense because of its failure to act after receiving notice of the claim, or (b) the issue of whether Tutor Perini violated the provision is question of fact (Tutor Perini Opp. Sec. V.D).

It is undisputed that Lloyd's was notified of the Façade Failure at the latest by March, 2009.  Notwithstanding that notification, Lloyd's <u>never</u> contacted Tutor Perini or issued a coverage position of any kind, even after it knew that Tutor Perini had repeatedly sought contact from Lloyd's.  Such delay is unreasonable as a matter of law and precludes Lloyd's from asserting defenses based on the Lloyd's Policy's notice and voluntary payment provisions.

Here, in contrast, up until the time it gave notice, Tutor Perini had a reasonable belief in no liability and in any event Tutor Perini's Risk Manager (whose knowledge is the operative knowledge for the purposes of notice) was not aware of the Façade failure until shortly before notice was given and therefore there was no late notice.  (TP SOF, ¶49-59).  Moreover, even assuming a late notice the Lloyd's Policy contains a clause which Lloyd's underwriter testified would not prejudice coverage in the event of a "clerical oversight" such as a failure to send notice in time.  (TP SOF, ¶59).

To the extent Lloyd's cites cases in addition to those cited by Chartis in support of its late notice defense, those cases are inapplicable here because in several of those cases, the policyholder's delay was not based on a belief in non-liability or other valid excuse.  *See Am. Home Ass. Co. v. Rep. Ins. Co.*, 984 F.2d 76, 78 (2d Cir. 1993); *Deso v. London & Lancashire Indem. Co. of Am.*, 3 N.Y.2d 127, 130 (N.Y. 1957); *Travelers Ins. Co. v. Volmar Constr. Co.*, 300 A.D.2d 40, 41 (1st Dep't 2002); *Power Auth. Of State of N.Y. v. Westinghouse Elec. Corp.*,

117 A.D.2d 336, 340 (1st Dep't 1986); *Matter of Govn't Empls. Ins. Co. v. Elman*, 40 A.D.2d 994 (2d Dep't 1972); *Peerless Ins. Co. v. Nationwide Ins. Co.*, 12 A.D.2d 602, 602 (1st Dep't 1960).

One case which Lloyd's cites in support of its late notice argument, *First Fin. Ins. Co. v. Jetco Contracting Corp.*, 202 F.Supp.2d 13 (S.D.N.Y. 2001), was vacated and remanded on appeal  the district court had <u>incorrectly</u> found that the insurance company's 48 day delay in disclaiming coverage was reasonable. *See New York Univ. v. Jetco Contracting Corp.*, 352 F.3d 653, 654 (2d Cir. 2003). Another case Lloyd's cites, *Matter of Brandon*, 97 N.Y.2d 491, 496 (2002), is inapplicable to this dispute because it concerns notice in the context of an uninsured motorist claim.

In the remainder of Lloyd's cases, there was no claim, as there is here, that the insurance company failed to timely disclaim coverage. *See Olin Corp. v. Ins. Co. of N. Amer.*, 966 F.2d 718, 721 (2d Cir. 1992); *Am. Home Assur. Co. v. Int'l Ins. Co.*, 90 N.Y.2d 433, 438-39 (N.Y. 1997); *White v. City of New York*, 81 N.Y.2d 955, 957 (N.Y. 1993); *Sec. Mut. Ins. Co. of N.Y. v. Acker-Fitzimmons*, 31 N.Y.2d 436, 439-440 (N.Y. 1972); *Gullo v. Commercial Cas. Ins. Co.*, 226 A.D. 429 (4th Dep't 1929).

Similarly, to the extent Lloyd's cites cases in addition to those cited by Chartis in support of its voluntary payments defense, those cases are inapplicable here because in those cases, unlike here, the insurance companies did not fail completely to contact its insured following submission of the claim. *See Continental Cas. v. ACE Amer. Ins. Co.*, , 2009 WL 857594 (S.D.N.Y. Mar. 31, 2009); *TLC Beatrice Int'l Holdings v. Cigna Ins. Co.*, , 2000 WL 282967 (S.D.N.Y. Mar. 16, 2000); *Spoleta Constr. Corp. v. CNA Ins. Co.*, 4 Misc.3d 1010(A), 791 N.Y.S.2d 874 (Table) (N.Y.Sup. Ct. Monroe Cnty. 2004). While *Spoleta Constr. Corp.*, 4

Misc.3d 1010(A), is not controlling authority, it is further distinguishable because there was a dispute as to whether the insurance company even had notice of the loss prior to when the contractor undertook repairs to the building at issue.

**VI.    Lloyd's "Other insurance" Argument Has No Merit.**

Lloyd's argues that there is no PCOH coverage under the Policy because the "completed operations coverage for the Bus Depot was not rolled over." (Lloyd's Br. 22.) This is factually inaccurate and unsubstantiated by the Lloyd's Policy. There is nothing in the Lloyd's Policy or its endorsements thereto which limits coverage for the Bus Depot to only "punch list" work. (TP SOF, ¶19-41).    In addition, when Lloyd's was presented with a list of projects to be covered under the Structures 2000 Program, Lloyd's signed off on the entire list of projects, which included the Bus Depot and Lloyd's failed to indicate any intent to limit coverage for the Bus Depot in any way. Id. Moreover, Lloyd's has failed to assert that the Lloyd's Policy is ambiguous in any way and cannot therefore rely on any extrinsic evidence to support its contention that the coverage for the Bus Depot Project is somehow limited, including by relying on the TIG Policy or statements by any individuals as to the intent of the Lloyd's Policy. Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 43 (2d Cir. 2006)

Moreover, Lloyd's incorrectly argues that there allegedly was PCOH coverage in place under the TIG Policy at the time of the Failure. (Lloyd's Br. 23.)   In fact, there was no PCOH coverage in place under the TIG policy at the time of the Façade Failure because the PCOH coverage under the TIG policy ran for three years from the expiration of the TIG Policy (March 1, 2004), and the Façade Failure occurred April 18, 2008. (TP SOF, ¶82-83).  Further, even if there was coverage, there is no provision in the Policy [such as a "prior insurance" provision] which states that it does not provide coverage if there is other insurance available to

12

cover the Façade Failure. Lloyd's citation of Joseph Russo's testimony cannot overcome the plain language of the Policy. While the Policy contains an "other insurance" provision (End. 13 (TP031460)), that provision is inapplicable here because there is no coverage under the TIG Policy.

**VII.    In The Alternative, The Lloyd's Policy Provides Coverage For Property Damage In Connection With The Rendering of Professional Services**

In the alternative, even accepting that the Lloyd's Policy does not provide coverage based on there being "no occurrence" or an economic/contractual liability theory, (which Tutor Perini does not), unlike the Chartis Policies, the Lloyd's Policy also explicitly provides coverage for "Property Damage arising from the rendering of or failure to render Professional Services." (TP SOF, ¶92).

When considering whether acts or people under consideration involve the provision of "professional services", a court focusses on "the special acumen and training of professionals when they engaged in the acts challenged." *Lumbermens Mut. Cas. Co. v. Flow Int'l Corp.*, 844 F. Supp. 2d 286, 302 (N.D.N.Y. 2012)(holding that "engineering activities undoubtedly require specialized knowledge and therefore constitute professional services.")

Here, in the alternative, at a minimum a genuine issue of material fact exists as to whether the Façade Failure and resulting property damage caused by a subcontractor's work also was caused in whole or in part by the failure to inspect and ensure that the construction and engineering work was properly performed.

Accordingly, in the alternative genuine issues of material fact exist as to whether the Lloyd's Policy's professional services coverage is triggered.

**VIII.   Conclusion**

For all the reasons stated herein, and in Tutor Perini's opposition to Chartis's

13

Motion, Tutor Perini respectfully requests that the Court deny Lloyd's motion for summary judgment.

Dated:   New York, New York
         August 31, 2012

Respectfully submitted,

By: /s/ Vianny M. Pichardo
Finley T. Harckham, Esq.
Alexander D. Hardiman, Esq.
Carrie M. DiCanio, Esq.
Vianny M. Pichardo, Esq.
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 278-1000
Fax:  (212) 278-1733
*Attorneys for Defendant and
Third-Party Plaintiff
Tutor Perini Corporation*

## **CERTIFICATE OF SERVICE**

I, Vianny M. Pichardo, hereby certify that, on August 31, 2012, I served a copy of the within document by delivering the same to the following attorneys by email and U.S. mail:

John David Hughes (JHughes@edwardswildman.com)
Joshua W. Gardner (JGardner@edwardswildman.com)
Richard J. McCarthy (RMcCarthy@edwardswildman.com)
EDWARDS WILDMAN PALMER LLP
111 Huntington Avenue
Boston, MA 02199

George Rockas (george.rockas@wilsonelser.com)
Sara Palencia (sara.palencia@wilsonelser.com)
Jensen Varghese (jensen.varghese@wilsonelser.com)
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
260 Franklin Street - 14th Floor
Boston, MA 02110-3112

/s/ Vianny M. Pichardo

Vianny M. Pichardo, Esq.