UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ILLINOIS NATIONAL INSURANCE COMPANY,
THE INSURANCE COMPANY OF THE STATE OF
PENNSYLVANIA, and NATIONAL UNION FIRE
INSURANCE COMPANY OF PITTSBURGH, PA,

                            Plaintiffs,

v.

TUTOR PERINI CORPORATION,

                            Defendant,

v.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

                            Third-Party Defendant.

CASE NO. 11-CV-00431 (KBF)

---

**CHARTIS INSURERS[1] REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT[2]**

---

[1] Illinois National Insurance Company ("Illinois National"), The Insurance Company of the State of Pennsylvania ("ICSOP"), and National Union Fire Insurance Company of Pittsburgh, Pa ("National Union").

[2] The Chartis Insurers submit this reply memorandum in advance of the deadline so it is available to the Court at the earliest possible date. The response to Tutor's statement of further facts will follow before the deadline.

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| A. | THERE ARE NO MATERIAL FACTS IN DISPUTE AND SUMMARY JUDGMENT IS RIPE | 1 |
| B. | TUTOR'S AMBIGUITY AND BURDEN OF PROOF ARGUMENTS HINGE ON A FALSE PREMISE | 2 |
| C. | THIS IS NOT AN EXCLUSION CASE | 2 |
| D. | TUTOR'S MISLEADING ATTEMPT TO DISTINGUISH THE KEY NEW YORK CASES FAILS | 2 |
| | 1.  Aquatectonics, Inc. v. The Hartford Cas. Ins. Co. (E.D.N.Y. Mar. 26, 2012) | 3 |
| | 2.  Baker v. Resid. Ltd., 782 N.Y.S2d 249 (1st Dep't 2004) | 3 |
| | 3.  Transp. Ins. Co. v. Aark Constr. Group, 526 F. Supp.2d 350 (E.D.N.Y. 2007) | 4 |
| | 4.  Pavarini Constr. Co. v. Cont'l Ins. Co., 759 N.Y.S.2d 56 (1st Dep't 2003) | 4 |
| E. | UNDER NEW YORK LAW CGL POLICIES DO NOT COVER BREACHES OF CONTRACT | 5 |
| F. | THE OUT OF STATE LAW WOULD NOT HELP TUTOR IN ANY EVENT | 5 |
| G. | TUTOR INVENTS A NEW RECORD TO DEFEND ITS VOLUNTARY PAYMENT | 7 |
| H. | TUTOR'S ARGUMENT THAT THE MOTION DID NOT DISCUSS ALL POLICY YEARS IS MERITLESS | 8 |
| I. | THE 93A CLAIM MUST BE DISMISSED BECAUSE THE CENTER OF GRAVITY LIES OUTSIDE MASS. | 8 |
| J. | TUTOR CONCEDES ITS 93A CLAIM FAILS FOR LACK OF CAUSATION OR DAMAGES | 9 |

## TABLE OF AUTHORITIES

Page(s)

**CASES**

40 Gardenville, LLC v. Trav. Prop. Ins.,
  387 F. Supp.2d 205 (W.D.N.Y. 2005) ................................................................................. 8

640 Broadway Renaissance Co. v. Cuomo,
  740 F. Supp. 1023, 1026-31 (S.D.N.Y. 1990), aff'd, 927 F.2d 593, cert. den'd, 500 U.S.
  933 ........................................................................................................................................ 3

Amin Realty, L.L.C. v. Travelers Prop. Cas. Co,
  No 05-CV-195, 2006 WL 1720401 (E.D.N.Y. June 20, 2006) ............................................. 4

Andy Warhol Found. v. Fed. Ins. Co.,
  189 F.3d 208 (2d Cir. 1999) .................................................................................................. 8

Aquatectonics, Inc. v. The Hartford Cas. Ins. Co.
  (E.D.N.Y. Mar. 26, 2012) .............................................................................................. passim

Aurelius Capital Master, Inc. v. MBIA Ins. Corp.,
  695 F. Supp. 2d 68 S.D.N.Y. 2010) ...................................................................................... 4

Auto Owners Ins. Co. v. Travelers Cas. & Sur. Co.,
  227 F. Supp.2d 1248 (M.D. Fla. 2002) ................................................................................. 7

Baker v. Resid. Ltd.,
  782 N.Y.S2d 249 (1st Dep't 2004) ........................................................................................ 3

Cahaly v. Benistar Prop. Exch. Trust Co.,
  No. 01-0075, 2003 WL 25316217 (Mass. Sup. Ct. Sept. 23, 2003) ..................................... 8

Calcasieu Parish School Bd. v. Lewing Constr. Co., Inc.,
  971 So.2d 1275 (La. Ct. App. 2007) ..................................................................................... 7

Consol. Edison Co. of N.Y. v. Allstate Ins. Co.,
  98 N.Y.2d 208 (N.Y. 2002) ................................................................................................... 2

Cont'l Cas. Co. v. Rapid Am. Corp.,
  80 N.Y.2d 640 (N.Y. 1993) ................................................................................................... 2

Crossman Comm. of N.C. v. Harleyville Mut. Ins. Co.,
  No. 26909, 2011 WL 3667598 (S.C. Aug. 22, 2011) ........................................................... 7

ePlus Group, Inc. v. Travelers Prop. Cas. Co. of Am.,
  268 Fed. App'x 117 (2d Cir. 2008) ....................................................................................... 2

French v. Assurance Co. of Am.,
  448 F.3d 693 (4th Cir. 2006) ................................................................................................. 5

George A. Fuller Co. v. U.S. Fidelity & Guar. Co.,
 613 N.Y.S.2d 152 (1st Dep't 1994) ............................................................................... 5

Hotel Des Artistes, Inc. v. Gen. Acc. Ins. Co.,
 775 N.Y.S.2d 262 (1st Dep't 2004) ............................................................................... 5

Isadore Rosen & Sons v. Sec. Mut. Ins. Co.,
 31 N.Y.2d 342 (1972) ................................................................................................... 7

J.C. Penney Corp., 635 F. Supp.2d 126 (N.D.N.Y. 2008) ..................................................... 2

Jakobson Shipyard, Inc. v. The Aetna Cas. & Sur. Co.,
 961 F.2d 387 (2d Cir. 1992) .......................................................................................... 2

Kuwaiti Danish Computer v. Digital Equip. Corp.,
 438 Mass. 459 (2003) .................................................................................................... 8

Lexicon, Inc. v. ACE Am. Ins. Co.,
 634 F.3d 423 (8th Cir. 2011) ......................................................................................... 6

Lund v. Chemical Bank,
 No. 84 CIV 1621, 1990 WL 17711 (S.D.N.Y. Feb. 20, 1990) ...................................... 2

Mantz Automation, Inc. v. Navigators Ins. Co.,
 326 Wis.2d 266, 2010 WL 1881941 (Wis. App. May 12, 2010) .................................. 7

Pavarini Constr. Co. v. Cont'l Ins. Co.,
 759 N.Y.S.2d 56 (1st Dep't 2003) ............................................................................. 4,5

RGJ Assoc., Inc. v. Stainsafe, Inc.,
 338 F.Supp.2d 215 (D. Mass. 2004) ............................................................................. 8

Rhodes v. AIG Domestic Claims, Inc.,
 461 Mass. 486 (2012) .................................................................................................... 9

Rothman v. Gregor,
 220 F.3d 81, 92 (2d. Cir. 2000) ..................................................................................... 4

Smart Style Indus. v. Penn. Gen. Ins. Co.,
 930 F. Supp. 159 (S.D.N.Y. 1996) ................................................................................ 7

Stoneridge Dev. Co. v. Essex Ins. Co.,
 382 Ill. App.3d 731 (May 6, 2008) ............................................................................... 5

Supreme Serv. & Spec. Co. v. Sonny Greer, Inc.,
 958 So.2d 634 (La. Supr. Ct. 2007) .............................................................................. 7

Tenney v. Ins. Co. of N.A.,
 409 F. Supp. 746 (S.D.N.Y. 1975) ................................................................................ 5

Transp. Ins. Co. v. Aark Constr. Group,
    526 F. Supp.2d 350 (E.D.N.Y. 2007) .................................................................................. 2,4

Travelers Indemnity Co of Am. v. Moore & Assoc.,
    No. M2004-01233, 2005 WL 2293009 (Tenn. App. Ct. Mar. 20, 2006) ................................ 6

Uncle Henry's Inc. v. Plaut Consulting Co. Inc.,
    399 F.3d 33 (1st Cir. 2005) .................................................................................................... 9

**OTHER AUTHORITIES**

18 Moore's Federal Practice 134.04[5] 2011 ............................................................................... 3

The Chartis Insurers respectfully submit this reply in support of summary judgment.[3]

**A. There Are No Material Facts In Dispute And Summary Judgment Is Ripe**

Tutor makes immaterial non-factual responses to the Chartis Insurers' Statement of Facts ("SOF"). Tutor, for example, admits a statement is true, but says the statement "highlights a disputed issue of fact" that "[t]here was property damage related to the Façade Failure which meets the terms and conditions of the Chartis Policies." This is not a disputed fact – this is the disputed legal conclusion ripe for summary judgment.

Tutor admits all facts necessary to determine there was no occurrence[4]: 1) Tutor was the general contractor for the construction of the Bus Depot project[5]; 2) subcontractors performed some of the faulty work on the façade[6]; and 3) a section of the façade failed in April 2008.[7] The remaining issue – whether faulty work, even if by a subcontractor, can be an occurrence – is a pure issue of law that is settled by New York courts. Tutor similarly admits it entered into the Corrective Work Agreement,[8] so it is purely an issue of law whether the agreement violates the voluntary payment provisions in the Policies, and none of the facts with respect to the 93A primarily and substantially argument are in dispute. Although the briefing is unduly voluminous, no truly material facts are in dispute. Thus, Tutor's Opposition concentrates almost entirely on pure issues of law.

**B. Tutor's Ambiguity And Burden Of Proof Arguments Hinge On A False Premise**

Tutor centers its ambiguity and burden-of-proof arguments on cases in which the insurers relied on exclusions to disclaim coverage. Tutor argues that "[t]o negate coverage by virtue of an exclusion, an

---

[3] The Chartis Insurers' incorporate the arguments Lloyds makes in its memorandum. In particular, Lloyds makes extensive arguments concerning the issue of Tutor's late notice.
[4] All of the Chartis Insurers' key cases were decided on summary judgment.
[5] Chartis SOF 1; Tutor SOF In Response to Lloyds 1-2.
[6] Tutor SOF in Response to Lloyds 3-7; 48-Chartis SOF 4, 27 & 28 (Tutor has confirmed its response contains a typo and should read "Tutor does not object that it does not disagree with the WJE report") The Chartis Insurers concede the faulty work was done by subcontractors for purposes of this motion only. The Chartis Insurers will put on evidence at trial that Tutor itself performed much of the faulty work.
[7] Tutor SOF in Response to Lloyds 42; Lloyds SOF 36-43.
[8] Chartis SOF 31-35.

America 17096851.1                                   1

insurer must establish that the exclusion is stated in clear and unmistakable language…"[9] The Chartis Insurers, however, do not rely on an exclusion; their argument is that Tutor cannot meet its initial burden of showing an "occurrence." See Consol. Edison Co. of N.Y. v. Allstate Ins. Co., 98 N.Y.2d 208, 220 (N.Y. 2002) (insured has burden to prove occurrence). Tutor does not cite any New York case finding "occurrence" ambiguous because there is none. See Jakobson Shipyard, Inc. v. The Aetna Cas. & Sur. Co., 961 F.2d 387, 389 (2d Cir. 1992) ("there is no pertinent ambiguity in the policies' definition of 'occurrence").[10] New York courts uniformly interpret "occurrence" as not including faulty work.[11]

## C. This Is Not An Exclusion Case

Tutor wants the Court to jump over the requirement that it first prove an occurrence under the insuring agreement, and instead consider the Policies' exclusions. The law is clear, however, that where there is no occurrence, the exclusions do not come into play. See Aquatectonics, Inc. v. The Hartford Cas. Ins. Co., No. 10-cv-2935, 2012 WL 1020313, at *7 (E.D.N.Y. Mar. 26, 2012).[12]

## D. Tutor's Misleading Attempt To Distinguish The Key New York Cases Fails

Tutor provides a page-long footnote of cases from other jurisdictions. Opp, 12-13. Notably, they are from states, unlike New York, in which faulty work can be an occurrence. Some agree with Tutor's reasoning, but most are more nuanced. The Chartis Insurers could, of course, provide their own string cite of cases from other states. But cases from other states do not help this Court determine how a New York court would rule because all New York courts to have considered this issue have uniformly held that faulty work is not an occurrence. New York courts reject the exact sub contractor arguments made by Tutor. This Court is bound by those decisions,[13] and can look to the underlying pleadings to determine the scope of

---

[9] Opp, 4 (citing Cont'l Cas. Co. v. Rapid Am. Corp., 80 N.Y.2d 640, 652 (N.Y. 1993)).
[10] Accordingly, Tutor's many arguments that rely on extrinsic evidence do not come into play.
[11] See Chartis Insurers' Memo in Support of Summary Judgment, at 5-10.
[12] See also, ePlus Group, Inc. v. Travelers Prop. Cas. Co. of Am., 268 Fed. App'x 117, 118 (2d Cir. 2008) ("Since we affirm the district court's opinion on different grounds, i.e. the absence of any 'occurrence' that would have entitled ePlus to coverage-the possible application of the exclusions is immaterial"); Transp. Ins. Co. v. Aark Constr. Group, 526 F. Supp.2d 350 (E.D.N.Y. 2007).
[13] See J.C. Penney Corp., 635 F. Supp.2d 126, 132 (N.D.N.Y. 2008) (even "[e]rroneous or unsupported legal reasoning, by itself, is not a ground for rejecting" appellate division precedent); Lund v. Chemical Bank, No. 84 CIV 1621, 1990

those decisions.[14] Moreover, Tutor admits <u>Aquatectonics, Inc. v. The Hartford Cas. Ins. Co.</u>, No. 10-cv-2935, 2012 WL 1020313 (E.D.N.Y. Mar. 26, 2012) is precisely on point. Opp, 12 n. 10. Finally, the cases cited on page 9 of the Opposition do not find that faulty work can constitute an occurrence; they find an occurrence where faulty work actually causes damage to third party property. Here, the Façade Failure caused no such third party property damage – it is pure faulty work.

### 1.     <u>Aquatectonics, Inc. v. The Hartford Cas. Ins. Co. (E.D.N.Y. Mar. 26, 2012)</u>

Tutor admits that both the facts and law of <u>Aquatectonics</u> are squarely on point. Tutor's only objection is that <u>Aquatectonics</u> failed "to place the burden on the insurance company to prove that the Your Work exclusion applied and instead read[] the exclusion into the policy's coverage grant." Opp. 15-16. The opinion, however, contains a detailed discussion, with citations, concerning the burden. <u>Aquatectonics</u>, 2012 WL 1020313, at *5. The insured has the burden to prove an occurrence. <u>Id.</u> There, like here, the insured cannot meet that burden. There, like here, the insurer is relying on the insuring agreement and not the exclusions – "because the Court has determined that the property damage to the pool did not arise out of an 'occurrence' pursuant to the Policy, it need not determine whether any exclusions from coverage would apply." <u>Id.</u>, at *7. Indeed, pages 11 through 14 of Tutor's brief are superfluous because under New York law if an insured cannot show an occurrence, the court does not consider the exclusions. <u>Id.</u>

### 2.     <u>Baker v. Resid. Ltd., 782 N.Y.S2d 249 (1st Dep't 2004)</u>

This case is controlling. Tutor misleadingly states that <u>Baker</u> has "no discussion of subcontractor exception" or of the PCOH. Opp, 15. As Tutor's counsel well knows – because they represented Baker – the court did consider both. The court affirmed summary judgment because the "defective structural beams that … deteriorated … due to improper … flashing, and waterproofing" was not an occurrence. <u>Id.</u>, at 250.

---

WL 17711, at *2 (S.D.N.Y. Feb. 20, 1990) ("federal courts must follow authority from the state intermediate appellate court if that authority represents even only a 'defensible' prediction of what the state's highest court would say on the issue").

[14] <u>See</u> <u>640 Broadway Renaissance Co. v. Cuomo</u>, 740 F. Supp. 1023, 1026-31 (S.D.N.Y. 1990) (summary dismissal constitutes precedent, and court can look to party's briefs to determine scope of decision), <u>aff'd</u>, 927 F.2d 593, <u>cert. den'd</u>, 500 U.S. 933; 18 Moore's Federal Practice 134.04[5] 2011 (stare decisis "may extend beyond issues that are explicitly decided to those which are actually decided by necessary implication").

The court did not discuss exclusions because, like here, there was no occurrence under the insuring agreement.

Significantly, the court ruled, "We have considered plaintiffs' other arguments and find them unavailing." Id. Attached hereto as Exhibit A is Anderson Kill's brief in Baker. Baker made precisely the arguments Tutor makes here – that the court should overrule its longstanding rule that faulty work is not an occurrence, and instead look to such things as opinions from other jurisdictions and ISO drafting history with respect to the subcontractor language.[15] Baker relied on the same core cases and arguments Tutor makes here, and the court found them "unavailing."

### 3. Transp. Ins. Co. v. Aark Constr. Group, 526 F. Supp.2d 350 (E.D.N.Y. 2007)

Tutor concedes Aark discusses the PCOH, but says that there is "no indication a subcontractor exception appeared in the policy." Opp, 15. The policy, however, did have a subcontractor exception.[16] In any event, the court did not discuss the exclusions because, just as the Chartis Insurers argue, where there is no occurrence, the inquiry ends: "This Court need not discuss whether these exclusions would apply because, as explained below, accidents involving damage to a contractor's work product alone does not constitute an occurrence under a CGL policy." Id., at 356 n.2.

### 4. Pavarini Constr. Co. v. Cont'l Ins. Co., 759 N.Y.S.2d 56 (1st Dep't 2003)

This case is also controlling. The opinion makes clear subcontractors performed the faulty work; and the First Department ruled: "[w]e have considered plaintiffs' remaining contentions and find them unavailing." Id. at 502. Pavarini advanced the same subcontractor argument and cases as Tutor, and again the court found them "unavailing."[17]

---

[15] This Court can take judicial notice of the attached pleadings. See FRE 201(b); Rothman v. Gregor, 220 F.3d 81, 92 (2d. Cir. 2000); Aurelius Capital Master, Inc. v. MBIA Ins. Corp., 695 F. Supp. 2d 68, 75 (S.D.N.Y. 2010).

[16] Attached hereto as Exhibit B is an excerpt of the insurer's Local Rule 56.1 statement in Aark, to which the insured did not respond; paragraph 22 states the policy's subcontractor exception.

[17] Attached as Exhibit C is the section of Pavarini's appellate brief where it made the subcontractor argument. Similarly, Tutor says Amin Realty, L.L.C. v. Travelers Prop. Cas. Co, No 05-CV-195, 2006 WL 1720401, at *6 (E.D.N.Y. June 20, 2006) should be disregarded in part because there is "no indication there was any subcontractor exception in the policy"). Attached hereto as Exhibit D is an excerpt of the policy showing it in fact had a subcontractor exception. Tutor similarly dismisses Fuller by saying that "no subcontractor exception or products-completed operations at issue." Opp.

### E. Under New York Law, CGL Policies Do Not Cover Breaches Of Contract

New York law is clear that a contractual breach due to faulty workmanship is not an occurrence. See Memo, 7-9. Tutor peculiarly argues that the Chartis Insurers' cases do not apply because their facts do not involve "a construction project such as the Bus Depot." Opp. 16-17. Although the type of project should not matter, remarkably, Aark actually does involve a parking garage, and the court ruled: "CGL policies do not provide coverage for complaints sounding in contract." 526 F. Supp.2d at 357 n.3. Pavarini also found no coverage for faulty waterproofing on a parking garage. Pavarini, 759 N.Y.S.2d at 56.[18] In the "contract" cases Tutor cites, the insured was liable for an actual occurrence, such as a fire, by reason of a contract. Tutor's own cases distinguish that scenario from where, as here, there is no third party property damage, but rather, the insured's own faulty work is itself the claimed breach of contract for which damages are sought.[19]

### F. The Out Of State Law Would Not Help Tutor In Any Event

For Tutor to succeed, New York case law defining an occurrence would have to be ignored. But even if this Court were to follow the reasoning of the cases on which Tutor relies, the Chartis Insurers would still not be required to indemnify Tutor for correcting its own work. Even if the April 2008 Façade Failure were an occurrence, Tutor would recover only for the damage the Façade Failure itself caused – which is nothing. Even under Tutor's case law, it does not get to repair the whole faulty facade.

For example, in a key case cited by Tutor, French v. Assurance Co. of Am., 448 F.3d 693 (4th Cir. 2006), the court found no coverage for the repair of the defective wall itself, but only

---

15. The faulty work was done by subcontractors, but the court does not discuss the exclusions because the insured could not show coverage.. Fuller, 613 N.Y.S.2d at 155. 84 N.Y.2d 806 (1994).

[18] Indeed, if the fact that a wall collapsed were determinative, then the wall case of Stoneridge Dev. Co. v. Essex Ins. Co., 382 Ill. App.3d 731 (May 6, 2008) would control. That court ruled "that damages from the collapse of part of a masonry wall defectively installed by the subcontractor was not an 'occurrence'" and that the "subcontractor exception cannot negate the lack of an 'occurrence' here, as the damage arose from the natural and ordinary consequence of defective workmanship rather than from an 'accident." Id. at 657.

[19] For example, in Tenney v. Ins. Co. of N.A., 409 F. Supp. 746 (S.D.N.Y. 1975), which Tutor cites and in fact does not involve a CGL policy, there was an occurrence of a fire that resulted in personal injury. The insured was liable for the injury by reason of a contract. Likewise, in Hotel Des Artistes, Inc. v. Gen. Acc. Ins. Co., 775 N.Y.S.2d 262, 270 (1st Dep't 2004), there was a fire that damaged third party property. The court specifically distinguished that scenario from where, as here, the insured is "being sued for economic loss resulting from its own work product." Id. at 269.

America 17096851.1                               5

found coverage for damage the defective wall caused to other property – the non defective structure of the home. Id. at 703. The court divided the property damage into two categories: 1) the defective exterior, and 2) damage to the house from moisture intrusion through the defective exterior. Id. at 703. For 1), the court found defective installation of the extererior not to be an occurrence because it is not unexpected that a faulty wall would fail; accordingly, the "repair and replacement costs of the exterior represent non-insured economic loss." Id. at 703. For 2) the court distinguished between "the cost to correct a defect in work performed under a construction contract, for which no coverage under the 1986 ISO CGL policy form exists, and property damage to something other than the defective object itself." Id. at 705 (quote omitted). "For example, if a collapse of the veneer had injured a user of the facility or damaged property other than the veneer itself, these may well be covered." Id. (quote omitted). The court noted that its splitting of the damages "gives effect to the subcontractor exception to the 'your Work' exclusion in these policies.'" Id. at 705.

    The court in Lexicon, Inc. v. ACE Am. Ins. Co., 634 F.3d 423 (8th Cir. 2011), the other key subcontractor case cited by Tutor, similarly split the damages. There the general contractor subcontracted welding work on the construction of a silo. After completion, the whole silo collapsed and damaged nearby conveyor equipment and ore product. Since the Silo was defective, its collapse, which resulted "in damages only to the work product itself – is not an occurrence," and the insurer could deny coverage. Id. at 426. The insurer was obligated to pay for the equipment on which the silo fell because it "was foreseeable that faulty subcontractor work would damage the silo, but not foreseeable that faulty subcontractor work would cause millions of dollars in collateral damage." Id. at 427. The court noted that this division of coverage is consistent with the your work exclusion. "This subcontractor exception to the your work exclusion in each policy affords coverage for certain property damage resulting from faulty subcontractor work." Id.[20]

---

[20] See also Travelers Indemnity Co of Am. v. Moore & Assoc., No. M2004-01233, 2005 WL 2293009 (Tenn. App. Ct. Mar. 20, 2006) (where defective windows in a hotel allowed penetration of water, the damaged interior room finishes

Here, of course, the Façade Failure did not cause any damage other than to the faulty façade itself. It hit no one and did not affect anything else.[21] Even under the out-of-state law, Tutor is not entitled to coverage to repair its faulty work on the whole building.

**G.  Tutor Invents a New Record To Defend Its Voluntary Payment**

A precondition to coverage is that Tutor not "make a payment, assume any obligation, or incur any expense .. without our assent." [Chartis SOF, 75] Tutor's main defense is that "despite having notice and being invited to participate in negotiations, Chartis did not get involved." Opp, 20. As evidence, Tutor cites its SOFs 1-8. None of those SOFs provide evidence, let alone even language, that Chartis "was invited to participate in negotiations." [Tutor SOF 1-8]. There is no evidence Tutor invited Chartis to participate in settlement negotiations with the MTA because it did not do so. [Chartis SOF 37]

Tutor's cases about notice and insurers' delay do not work. Tutor assumed obligations before there could even be any delay. Only a few days after Tutor put the Chartis Insurers on notice of the claim, Tutor "assumed obligations" to the MTA by way of its January 13, 2009 letter, and never told the Chartis Insurers about the negotiations or the ultimate agreement. [Chartis SOF 30-31, 39][22]

---

and fixtures were covered, but not the cost "to repair or replace [the general contractor's] faulty workmanship"); Mantz Automation, Inc. v. Navigators Ins. Co., 326 Wis.2d 266, 2010 WL 1881941 (Wis. App. May 12, 2010) (no coverage, even under Wisconsin law, where "the only alleged property damege is the defective floor itself, which is indisputably the result of faulty workmanship"); Supreme Serv. & Specialty Co. v. Sonny Greer, Inc., 958 So.2d 634 (La. Supr. Ct. 2007) (the work product exclusion "does not insure any obligation of the policyholder to repair or replace his own defective product"); Calcasieu Parish School Bd. v. Lewing Constr. Co., Inc., 971 So.2d 1275 (La. Ct. App. 2007) (citing Supreme Serv. & Spec. Co. v. Sonny Greer, Inc., 958 So.2d 634 (La. Supr. Ct. 2007) that PCOH only covers damages "other than the faulty product or work itself"); Auto Owners Ins. Co. v. Travelers Cas. & Sur. Co., 227 F. Supp.2d 1248 (M.D. Fla. 2002) (defective construction is an occurrence, but CGL policies only cover damage that results from such defective workmanship and do "not afford coverage for the repair of the defective workmanship itself"); Crossman Comm. of N.C. v. Harleyville Mut. Ins. Co., No. 26909, 2011 WL 3667598 (S.C. Aug. 22, 2011) (cost of repairing or removing defective stucco work is not a claim for "property damage" since the defective stucco was not "injured," but damage to the remainder of project from water damage could constitute "property damage").

[21] Chartis SOF 8, 9. Even if Tutor were to argue that the Façade Failure damaged the section around the failed area, that cost of that repair was only $12,000. Chartis SOF 11, 12. Even under Tutor's case law, the repair of the entire façade is not covered.

[22] Smart Style Indus. v. Penn. Gen. Ins. Co., 930 F. Supp. 159 (S.D.N.Y. 1996) does not help because the Chartis Insurers did not withhold permission to settle. There a counterclaim was brought against the insured in an ongoing lawsuit. Id., at 161. The insured specifically requested the insurer pay attorney fees for the counterclaim Id., at 162. The court ruled the insurers could not delay consent to save money on the defense costs. Id. at 164. In Isadore Rosen & Sons v. Sec. Mut. Ins. Co., 31 N.Y.2d 342 (1972), the insured subcontractor paid the general contractor the amount demanded because the general contractor would not otherwise release the subcontractor's pay for the job. Id. at 346. The court declined summary judgment because it needed to determine whether the insurer knew about this economic pressure and

Nor can Tutor invent an issue of fact. Tutor cites no SOFs in its voluntary payment argument. Tutor just argues a fact-finder needs to determine "whether the agreement with the MTA ... constitutes a voluntary payment." Opp, 20. That is an issue of law that can be decided now.[23]

**H.   Tutor's Argument That The Motion Did Not Discuss All Policy Years Is Meritless**

Tutor argues the Motion should be denied because it does not discuss all policy years. Opp, 3-4. Tutor admits that for a policy to apply, there must be an "occurrence" that causes "property damage" during the policy period. Opp, 6. The Façade Failure occurred in April 2008. [Lloyds SOF 36-37] Thus, there is no need to consider policies from the same lines of policies at issue that were not then in effect. Tutor further muddies the waters by discussing policies from as far back as 1999 – two years before Tutor began its work. [Chartis SOF 2].

**I.   The 93A Claim Must Be Dismissed Because The Center of Gravity Lies Outside Mass.**

As this Court predicted (See ECF No. 68, 8-9), the center of gravity of each of the alleged bad acts is not in Massachusetts. The Opposition fails to link its assertions with the record, and fails to respond to the Motion's specific bullet points that separate out each alleged bad act. Instead, Tutor clouds the inquiry with thematic bullet points that misstate the record and conflate all the acts, dates, and insurers.[24]

> 1)   Tutor says that "every relevant deceptive communication" was received in Mass. and the Chartis Insurers "exclusively corresponded" with John Hughes in Massachusetts. Opp. 21. Tutor fails to identify the "relevant" communications because they are not deceptive, and because they were sent by different insurers. The key communication – by Illinois National denying the claim – was sent to the head of risk management in California. [Chartis SOF 49, 59]

---

then delayed acting. Id. at 348. Here the Chartis insurers did not withhold consent; they were never asked. [Chartis SOF 37] Nor does Tutor allege the Chartis Insurers knew about some sort of economic pressure but still withheld their consent.

[23] Tutor says the Court needs to determine whether Tutor considered the Corrective Work Agreement to constitute a voluntary payment based on the "reasonable expectation of the insured." Opp, 20. But Tutor points to no ambiguities in the Policies voluntary payment provisions that would require such extrinsic evidence. See Andy Warhol Found. v. Fed. Ins. Co., 189 F.3d 208, 215 (2d Cir. 1999); 40 Gardenville, LLC v. Trav. Prop. Ins., 387 F. Supp.2d 205, 212 (W.D.N.Y. 2005).

[24] See Kuwaiti Danish Computer v. Digital Equip. Corp., 438 Mass. 459, 474 (2003) (only improper acts considered); RGJ Assoc., Inc. v. Stainsafe, Inc., 338 F.Supp.2d 215, 233 (D. Mass. 2004) (same); Cahaly v. Benistar Prop. Exch. Trust Co., No. 01-0075, 2003 WL 25316217 (Mass. Sup. Ct. Sept. 23, 2003) (each alleged 93A violation must undergo its own primarily and substantially analysis).

2) Tutor falsely says the "Chartis Policies were negotiated, purchased and delivered to Tutor Perini in Massachusetts." Opp. at 22. The important[25] wrap up Illinois National Policy, however, was negotiated and sold to the MTA in New York. [Chartis SOF 57] Tutor still fails to allege anything deceptive about past negotiations.

3) Tutor says its primary place of business was in Massachusetts "during the relevant time periods in this dispute … including during the policy periods at issue." Opp, 22. Tutor fails to identify the "relevant" time, or tie that time to a bad act. Tutor admits that the only alleged bad act when Tutor was based in Massachusetts was the Chartis Insurers' "delay in investigating the claim" (because Tutor had moved to California when the actual coverage decision was made). [Chartis SOF 46, 56] Any delay in investigating the claim, however, took place in New York.

4) Tutor identifies the "critical event" as the denial of coverage while not investigating and "filing this action against Tutor." Although Tutor was located in California at the time, Tutor claims these acts "were received in Massachusetts." The "critical" denial was in fact also received in California and any harm was felt there. [Chartis SOF 46, 56] The failure to investigate took place in New York, and this lawsuit is in New York.

Examined on their own and with respect to each individual insurer, the alleged 93A acts did not occur primarily and substantially in Massachusetts. If the "significant contacts of the competing jurisdictions are approximately in balance, the conduct in question cannot be said to have occurred primarily and substantially in Massachusetts." Uncle Henry's Inc. v. Plaut Consulting Co. Inc., 399 F.3d 33, 45 (1st Cir. 2005). Here it is not close.

**J. Tutor Concedes Its 93A Claim Fails For Lack Of Causation Or Damages**

The Chartis Insurers' memo explains that even if 93A were to apply, the claim would fail because Tutor cannot prove that the Chartis Insurers' alleged deceptive acts caused it any loss. See Rhodes v. AIG Domestic Claims, Inc., 461 Mass. 486, 496 (2012). Here, Tutor had offered to resolve the MTA's claim days after it tendered the matter to the Chartis Insurers, so nothing the Chartis Insurers could have done from that point forward could have damaged Tutor.[26] Tutor fails to respond to this argument.

---

[25] Tutor concedes the ICSOP and National Union policies are secondary; Tutor does not respond to the argument that these policies are not implicated because of their wrap up exclusions. See Chartis Memo, 18-19.
[26] Chartis SOF 30-31, 39.

|  |  |
|---|---|
|  | Respectfully submitted,
|  | ILLINOIS NATIONAL INSURANCE COMPANY, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,
|  | By their attorneys,
| Dated: September 5, 2012 | /s/ Joshua W. Gardner<br>Richard McCarthy<br>Joshua W. Gardner<br>EDWARDS WILDMAN PALMER LLP<br>111 Huntington Ave.<br>Boston, MA 02199<br>Tel. 617.239.0100<br>Fax. 617.227.4420