UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

ILLINOIS NATIONAL INSURANCE COMPANY, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

Case No.: 11-CV-00431 (KBF)

Plaintiffs,

- against -

TUTOR PERINI CORPORATION,

X

---------------------------------------------------------------------

TUTOR PERINI CORPORATION,

Third-Party Plaintiff,

- against -

CERTAIN UNDERWRITERS AT LLOYD'S LONDON

Third-Party Defendant.

---------------------------------------------------------------------X

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON'S[1] REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT[2]**

[1] Certain Underwriters at Lloyd's, London who subscribe to Policy No. 576/UF7274400 ("Underwriters").

[2] Underwriters submit this reply memorandum ahead of the deadline so that the Court can read it before deciding whether trial is necessary. The response to Perini's statement of further facts will follow before the deadline.

# TABLE OF CONTENTS

**Page Nos.**

TABLE OF AUTHORITY ........................................................................................................ ii

1. PERINI HAS FAILED TO ESTABLISH THAT THE FAÇADE FAILURE IS AN "OCCURRENCE"………………………..………….............
1

2. THE CROSS CLAIM ENDORSEMENT DOES NOT ASSIST PERINI .........................................................................................................6

3. UNDERWRITERS DID NOT WAIVE ANY COVERAGE DEFENSES.........................................................................................................7

4. PERINI'S PURPORTED BELIEF OF NON-LIABILITY DOES NOT EXCUSE ITS LATE NOTICE .......................................................................8

5. PERINI'S FAILURE TO OBTAIN CONSENT PRIOR TO ENTERING INTO THE REPAIR AGREEMENT BARS COVERAGE.........................................................................................................10

6. THE ENDORSEMENT FOR PROFESSIONAL SERVICES DOES NOT OBVIATE PERINI'S BURDEN OF ESTABLISHING THAT THE FAÇADE FAILURE IS AN "OCCURRENCE" UNDER THE POLICY. .........................................................................................................11

# TABLE OF AUTHORITIES

**CASES** **Page Nos.**

*American Ins. Co. v. Fairchild Ind. Inc.*
56 F.3d 435 (1995)……………………………………………………………………………...7

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 248 (1986)…………………………………………………………………………..

*Aquatectonics, Inc. v. The Hartford Casualty Insurance Company*
2012 U.S. Distr. LEXIS 41185 (E.D.N.Y. 2012) ..........................................................................5

*Baker Residential Ltd. P'ship v. Travelers Ins. Co.*
10 A.D.3d 586, 782 N.Y.S.2d 249 (1st Dep't 2004) ......................................................................4

*Birnbaum v. Jamestown Mut. Ins. Co.*
298 N.Y. 305 (1948) ...................................................................................................................10

*Celotex Corp. v. Catrett*
477 U.S. 317, 322 (1986)............................................................................................................12

*Co. of Columbia v. Continental Ins. Co.*
83 N.Y.2d 618, 628 (1994) .........................................................................................................10

*Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*
98 N.Y.2d 208, 220 (N.Y. 2002) ..................................................................................................5

*Eagle Ins. Co. v. Garcia*
720 N.Y.S.2d 172, 173 (2d Dept 2001) ........................................................................................8

*George A. Fuller Co. v. U.S. Fidelity and Guar. Co.*
200 A.D.2d 255, 613 N.Y.S.2d 152 (1st Dep't 1994). ..................................................................4

*Lumbermens Mut. Cas. Co. v. Flow In't.*
844 F. Supp. 2d 286, 310 (N.D.N.Y 2012)....................................................................................6

*New York v. Blank*
27 F.3d 783 (2d Cir. 1994)............................................................................................................7

*Olin Corp. v. Ins. Co. of North America*
966 F.2d 718 (2d Cir. 1992)..........................................................................................................8

*Pavarini Constr. v. Continental Ins. Co.*
304 A.D.2d 501, 759 N.Y.S.2d 56 (1st Dep't 2003) ......................................................................4

*Rexnord Holdings, Inc. v. Bidermann*
21 F.3d 522, 1994 U.S. App. LEXIS 7097 ........................................................................13

*Richer Comm. Inc. v. Tower Ins. Co. of N.Y.*
72 A.D.3d 670 (2nd Dept. 2010)..................................................................................10

*Smythe v. American Red Cross Blood Serv.*
797 F. Supp. 147, 152 (N.D.N.Y. 1992)..........................................................................

*Travelers Cas. & Sur. Co. v. Dormitory Auth.*
2008 U.S. Dist. LEXIS 48751 (S.D.N.Y. June 25, 2008)..................................................7

*U.S. Underwriters Insurance Company v. Landau*
679 F. Supp. 2d 330, 342 (2010) ....................................................................................6

*Western World Ins. Co. v. Stack Oil, Inc.*
922 F.2d 118, 121 (2d Cir. 1991)..................................................................................13

RULES/STATUTES

Fed.R.Civ.Pro. ("FRCP") 56(c) ........................................................................................4

N.Y. ISC Law § 3420(d).........................................................................................14, 15

Underwriters submit this reply memorandum in further support of their motion for summary judgment. **Underwriters incorporate the arguments that the Chartis Insurers make in their reply memorandum in Sections A - G in their entirety. In particular, the Chartis Insurers' arguments confirming that New York courts have specifically rejected the sub contractor arguments made by Perini.**

1. **Perini has Failed to Establish that the Façade Failure is an "Occurrence"**

New York law is clear - a CGL policy, like the Lloyd's Policy, does not insure against faulty workmanship to the mere work product itself, rather, it insures against faulty workmanship in the work product which causes bodily injury or property damage to something other than the work product. *George A. Fuller Co. v. U.S. Fidelity and Guar. Co.*, 200 A.D.2d 255, 613 N.Y.S.2d 152 (1st Dep't 1994). Thus, there is no "occurrence", as the case is here, for faulty workmanship disputes claiming only defects to the insured's work.

Here, Perini admits that it was the general contractor responsible for the construction of the entire Building.[3] Thus, the entire Building, even if constructed by subcontractors, is Perini's "work product." *See Fuller*, 200 A.D.2d 255 (Entire building was insured's work product, even if subcontractor performed work, because it was the general contractor responsible for construction of the building and, therefore, subcontractor's negligent construction which caused property damage to the building only was no "occurrence"); *see also Pavarini Constr. v. Continental Ins. Co.*, 304 A.D.2d 501, 502, 759 N.Y.S.2d 56, 57-58 (1st Dep't 2003)(Subcontractor's defective installation of concrete components in the construction of a building was not an "occurrence" because the only damage alleged was to insured/general contractor's own work product, namely, the building. "As a general contractor, [the insured] was responsible for the entire project and all work done by [the insured's] subcontractor was done on [the insured's] behalf."); *Baker Residential Ltd. P'ship v. Travelers Ins. Co.*, 10 A.D.3d 586,

586-87, 782 N.Y.S.2d 249 (1st Dep't 2004)(Insured/general contractor's "work product" was the entire condominium project, even though certain components were performed by a subcontractor and, thus, no "occurrence" where the property damage, caused by the subcontractor's faulty workmanship, was to beams and the interior of the building only); *Aquatectonics, Inc. v. The Hartford Cas. Ins. Co.*, 2012 U.S. Distr. LEXIS 41185 (E.D.N.Y. 2012)(Damage to pool caused by subcontractor's faulty work was not "occurrence" because no damage to property other than the pool itself, which was the general contractor's work product).

While Perini argues that the Façade Failure was not attributable to its work, but rather the work of its subcontractor, that assertion, even if factually accurate, is without significance. The Façade Failure caused damage only to the Building, Perini's "work product", and not to anything other than the Building[4]. This scenario is materially indistinguishable from the controlling cases that have applied the "Non-Occurrence Rule." Consequently, Underwriters are entitled to summary judgment as Perini cannot overcome its threshold burden of showing an "occurrence" under the Lloyd's Policy. *See Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 220 (N.Y. 2002) (insured has burden to prove occurrence).

**2. <u>The Cross Claim Endorsement Does Not Assist Perini</u>**

Perini incorrectly asserts that the Cross Liability Endorsement which covers property damage claims by one insured against another insured as if each had been issued a separate policy "evidences an intent to provide coverage for such property damage." *See* Opp, 7-8. The endorsement applies to a scenario where claims of damage to property belonging to one insured are being made against another and merely provides that in that situation each insured will be treated as if it was issued its own separate policy. The endorsement says nothing about changing or expanding coverage. Thus, Perini misconstrues the application of the endorsement. The

---

[3] *See e.g.* Perini's responses to Underwriters' SOF, 2.
[4] *See e.g.* Perini's responses to Underwriters' SOF, 39-40.

endorsement would apply, for example, if bricks installed by Perini fell from the Bus Depot and accidentally smashed into equipment, owned by the MTA, in front of the Bus Depot. The endorsement provides that in such a situation, the Lloyd's Policy "shall cover such Insured against whom a claim is made . . . in the same manner as if separate policies had been issued to each Insured hereunder." In other words, Underwriters would do exactly what they are doing here, apply the terms of the Lloyd's Policy to Perini, just as it would apply the terms of the Policy to the MTA. Despite Perini's contention, the Cross Liability Endorsement does not expand coverage for claims of faulty workmanship.

**3. Underwriters' Did Not Waive Any Coverage Defenses**

Perini asserts that Underwriters' failure to disclaim coverage for the Façade Failure is unreasonable as a matter of law, and therefore, precludes them from asserting defenses based on the Lloyd's Policy's notice and voluntary payment provisions. This is incorrect. It is undisputed that this matter does not involve a claim for death or bodily injury.[5] Thus, the strict provisions of New York Insurance Law section 3420 do not apply, and Underwriters' failure to promptly disclaim coverage does not automatically preclude it from relying upon coverage defenses. *Lumbermens Mut. Cas. Co. v. Flow In't.*, 844 F. Supp. 2d 286, 310 (N.D.N.Y 2012). Because Perini cannot rely on New York Insurance Law section 3420, it must invoke the doctrine of equitable estoppel to prevent Underwriters from asserting coverage defenses. *Lumbermens*, 844 F. Supp. 2d at 310, citing *U.S. Underwriters Insurance Company v. Landau*, 679 F. Supp. 2d 330, 342 (2010). In order to establish equitable estoppel, Perini has the burden of proving that it relied on Underwriters' coverage to its detriment and was prejudiced by Underwriters delay in disclaiming. *Landau*, 679 F. Supp. 2d at 344. Summary judgment must be entered in Underwriters' favor as there is no evidence that Perini agreed to reimburse the MTA for its defective work in reliance on coverage under the Lloyd's Policy. Nor is there evidence that

Perini suffered any prejudice as a result of Underwriters' untimely disclaimer. To the contrary, the undisputed evidence shows that Perini "assumed obligations" to the MTA as early as January 13, 2009 when it's Chief Operations Officer, Jack Frost, made an offer to settle the threatened litigation with the MTA. UW's SOF, 68. At this time, Perini offered to correct its defective work and offered to pay $1 million to reimburse the MTA for costs incurred for the inspection and repair of the façade. UW's SOF, 69. This offer was extended long before Perini notified Underwriters of the claim in March/April 2009[6]. Admittedly, Perini extended this offer for a multitude of reasons, including "to gain access to the 100th Street Bus Depot Project"[7], "remedy said defects in a cooperative manner"[8] and because Perini changed its position and agreed that it would "stand up and take responsibility" for its "contractual responsibility."[9] The record demonstrates that Perini's decision to perform the repairs to the Façade Failure and reimburse the MTA for costs incurred in remediating the façade was made independent of whether there was insurance coverage available for the claim. Perini was concerned about its reputation as a contractor and negative publicity.[10] Moreover, Perini admits that Underwriters never acknowledged the claim nor contacted Perini in any way. Thus, it would have been unreasonable for Perini to rely on coverage. Consequently, Perini cannot demonstrate that it relied to its detriment on any acts or omissions by Underwriters nor can it show any prejudice.

**4. <u>Perini's Purported Belief of Non-Liability Does Not Excuse its Late Notice</u>**

Perini next argues that its late notice of the Façade Failure should be excused based on its purported "reasonable belief in no liability." Opp, 10. It is well settled that compliance with a policy's notification provisions is a condition precedent to the insurer's liability under the

---

[5] *See e.g.* Perini's responses to Underwriters' SOF, 39.
[6] *See* Opp, 10.
[7] *See e.g.* Perini's responses to Underwriters' SOF, 68-72.
[8] *See e.g.* Perini's responses to Underwriters' SOF, 68-72.
[9] *See* Underwriters' SOF, 107.
[10] *See* Underwriters' SOF, 102.

policy.[11] New York courts have long construed notice provisions such as Condition F as meaning that an insured "owes its insurer two distinct notice obligations: (i) to provide notice of an occurrence as defined by the policies, and (ii) to provide notice of claims or suits filed." *Olin Corp. v. Ins. Co. of North America*, 966 F.2d 718 (2d Cir. 1992).

New York courts have held that a notice of "occurrence" requirement is treated differently than a notice of "claim" requirement. *See American Ins. Co. v. Fairchild Ind. Inc.*, 56 F.3d 435 (1995), citing *New York v. Blank*, 27 F.3d 783, 795-96 (2d Cir. 1994). "In the case of the former, the insured's knowledge of events that create only a very distant possibility of a claim may not trigger a notice of occurrence provision so long as the insured has a good faith and reasonable belief that no liability covered by the policy will result." *Id.*, at 439. A notice of claim provision, on the other hand, "focuses on the actions of third parties and may be triggered by an unreasonable -- even sanctionable -- assertion of liability." *Id.* Consequently, while failure to provide notice of an "occurrence" may be excused where the insured has a good-faith belief in its nonliability, once a "claim" has been filed, "the insured can no longer offer its good faith belief in nonliability for the underlying occurrence (or the claim itself) as an excuse for a failure to provide notice." *Travelers Cas. & Sur. Co. v. Dormitory Auth.*, 2008 U.S. Dist. LEXIS 48751 (S.D.N.Y. June 25, 2008).

Here, a "claim"[12] was filed as early as August 20, 2008 when the MTA threatened to sue Perini for general breach of the construction contract[13]. New York courts have held as a matter of law on numerous occasions that similar inexcusable delays in providing notice discharged an insurer's obligation to provide coverage. *See American Ins. Co. v. Fairchild Ind. Inc.*, 56 F.3d 435, 440 (1995)("Under New York law, delays for one or two months are routinely held

---

[11] See Underwriters Memo, 16.

[12] The Lloyd's Policy does not define the term "claim." The Second Circuit has interpreted this term in an insurance context and held that "a third person's assertion of liability is a claim . . . whether or not there is reason to believe there actually is liability." *See American Ins. Co*, 56 F.3d at 439.

'unreasonable.'"). Perini's seven month delay in notifying Underwriters of the Façade Failure was, therefore, unreasonable as a matter of law.[14]

Finally, Endorsement No. 4 of the Lloyd's Policy does not remedy Perini's failure to send timely notice.[15] Endorsement No. 4 only applies to "clerical" oversights. Although the Lloyd's Policy does not define the term "clerical", its ordinary meaning is "(of a job or person) concerned with or relating to work in an office, especially routine documentation and administrative tasks." Oxford Dictionaries (Oxford Univ. Press 2012) at http://oxforddictionaries.com/definition/american_english/clerical#clerical__2. Admittedly, Perini's failure to notify Underwriters was not because of a "clerical" oversight, but rather it was deliberate.[16] According to Hughes "the issue of excess liability coverage wasn't as important at that time." UW's SOF, 87.

**5. <u>Perini's Failure to Obtain Consent Prior to Entering into the Repair Agreement Bars Coverage</u>**

Perini ridiculously contends that Underwriters cannot rely on its voluntary payments defense because Underwriters failed to contact Perini following submission of the claim. *See* Opp, 11. This assertion is flawed. As the record demonstrates, and as stated *supra* in Section 3, Perini actively participated in negotiations regarding repair of the Façade Failure with the MTA at least seven months before Underwriters were put on notice of the Façade Failure. Indeed, as early as January 13, 2009, Perini offered to pay $1 million to reimburse the MTA for costs incurred for the inspection and repair of the façade. UW's SOF, 69. Ultimately, this offer was memorialized in a formal repair agreement. UW's SOF, 72. It is beyond dispute that Perini

---

[13] *See* Underwriters' SOF, 55.

[14] Even if the Court finds that Perini first became aware of the claim in November 2008, its five month delay in notifying Underwriters was still unreasonable, as a matter of law. To this end, although Hughes may not have been aware of the Lloyd's Policy, lack of knowledge of the existence of a policy does not excuse late notice. *See Olin Corp. v. Ins. Co. of N. Am.*, 966 F.2d 718, 724-25 (2d Cir. 1992); *Eagle Ins. Co. v. Garcia*, 720 N.Y.S.2d 172, 173 (2d Dept 2001).

[15] *See* Underwriters' Memo in Support of Summary Judgment, at 18.

[16] *See e.g.* Perini's responses to Underwriters' SOF, 87.

extended an offer, and therefore assumed liability, without obtaining Underwriters' consent in violation of the Lloyd's Policy.

**6. <u>The Endorsement for Professional Services Does Not Obviate Perini's Burden of Establishing that the Façade Failure is an "Occurrence" under the Policy.</u>**

Perini tries to circumvent the Non-Occurrence rule by arguing that even if the Façade Failure is not an "occurrence," there is still coverage under Endorsement No. 3, which provides coverage for "Property Damage arising from the rendering of or failure to render Professional Services." Opp, 13. This argument is not persuasive. The Lloyd's Policy provides coverage for those sums . . . that the Insured becomes legally obligated to pay . . . because of . . . Property Damage . . . that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world.[17] An "occurrence" is defined as "an accident, including continuous or repeated exposure to conditions."[18]

The endorsement does not obviate Perini's burden of proving that the Façade Failure arises from an occurrence under the insuring agreement. To the contrary, in order for coverage to apply, Perini must prove both that the Façade Failure is an "occurrence" and that it was caused by its rendering or failure to render any professional service. The issue then becomes what constitutes an "occurrence" in this context. No reason exists to interpret the term "occurrence" differently than the way it applies to the main insuring agreement of the Policy. Thus, like situations involving faulty construction work, in the context of the Professional Services Endorsement, an "occurrence" must involve an "accident" and cannot involve the faulty rendering of professional services which causes damage to Perini's own product, i.e., the Bus Depot.[19] The endorsement would apply, for example, if Perini (or its subcontractor) failed to

---

[17] *See* Underwriters' SOF, 93.
[18] *See* Underwriters' SOF, 94.
[19] If the Court were to adopt Perini's argument, namely that it does not have to prove the Façade Failure is an "occurrence," this would convert the general liability policy into a surety for Perini's defective work product. New York courts have declined to take this route. *See* Underwriters' Memo, Section I.

properly tighten a bolt in accordance with an engineering plan, and as a result of this failure, the bolt fell from the building causing bodily injury or property damage to a third party. This is not the situation here. As Underwriters' memorandum explains at Section I, the Façade Failure does not constitute an "occurrence" under New York law, as a matter of law, because it caused damage to the insured's work only – the Building. *See*, *supra*, 1. Coverage, therefore, is barred.

In addition, it is important to note that Perini cites no SOFs in support of its Professional Services argument. Perini merely states "at a minimum a genuine issue of material fact exists as to whether the Façade Failure and resulting property damage caused by a subcontractor's work also was caused in whole or in part by the failure to inspect and ensure that the construction and engineering work was properly performed." *See* Opp, 13. Perini has the burden of establishing that a loss occurred and was a covered event under the terms of the endorsement. *Gongolewski v. Travelers Ins. Co.*, 252 A.D.2d 569, 675 N.Y.S.2d 299, 300 (2d Dept. 1998). Consequently, this conclusory statement is insufficient to raise a genuine issue of material fact.

Under Fed.R.Civ.P. 56(c), summary judgment is mandated upon motion, "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where, as here, the movant does not bear the burden of proof on the issue at hand, the movant need only "point out" that there is an absence of proof essential to the non-movant's case. *Id.*, at 326. Once the movant shows the absence of such issues, the burden then shifts to the nonmovant to show that the record contains sufficient evidence to establish each element of the nonmovant's case. Where, as here, a nonmovant's opposition consists of "merely . . . vaguely asserting the existence of some unspecified disputed material fact, or . . . mere speculation of conjecture", *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1991), offering specific factual assertions in memoranda of law or at oral

argument, *Rexnord Holdings, Inc. v. Bidermann,* No. 93-7762, 21 F.3d 522, 1994 U.S. App. LEXIS 7097, at *11-12 (2d Cir. April 7, 1994); *Smythe v. American Red Cross Blood Serv.,* 797 F. Supp. 147, 152 (N.D.N.Y. 1992) or relying on the pleadings themselves, *Celotex Corp.,* 477 U.S. at 324, the nonmovant has not met his burden of persuasion. To the contrary, a nonmovant may only rebut a movant's prima facie showing by demonstrating "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial", *Id.*, at 322, through the evidentiary materials described in Fed. R. Civ. P. 56(e), namely affidavits, depositions, answers to interrogatories, or admissions. A party who fails to use those evidentiary devices to "set forth specific facts showing that there is a genuine issue for trial", Fed. R. Civ. P 56(e), has not demonstrated that the record contains a genuine issue of material fact, and thus, has not successfully resisted the entry of summary judgment. A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Here, the record is devoid of any facts supporting Perini's conclusory assertion (i.e., an insertion unsupported by the record) that the Façade Failure was due to its failure to "inspect" and "ensure" that the construction and engineering work was properly performed. Notably, the opposite is true, Perini admitted that the Façade Failure was "caused by a subcontractor's negligent installation of vertical steel columns and other subcontractor errors." *See* Opp, 6. Moreover, Perini's on-site project manager, Jason Benfield, testified that the Façade Failure was caused by construction deficiencies, namely the result of someone failing to properly perform their work. UW's SOF 124-137. No where did Mr. Benfield attribute the defects to a failure to inspect or deficient engineering work. Consequently, the Endorsement for Professional Services does not trigger coverage because the damages for which Perini seeks coverage were not the result of the failure to render Professional Services.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: George C. Rockas
George C. Rockas, BBO #544009
George.Rockas@wilsonelser.com
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
*Attorneys for Third Party Defendant, Certain Underwriters at Lloyds Subscribing to Policy No. 576/UF7274400*
260 Franklin Street, 14th Floor
Boston, MA 02110
(617) 422-5300

/s/ Jensen Varghese
Jensen Varghese
Jensen.Varghese@wilsonelser.com
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
3 Gannett Drive
White Plains, NY 10604-3407
914-872-7720

Dated: September 5, 2012