UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILLINOIS NATIONAL INSURANCE COMPANY, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>        Plaintiffs,<br><br> v.<br><br>TUTOR PERINI CORPORATION,<br><br>        Defendant.<br><br>TUTOR PERINI CORPORATION,<br><br>        Counter-Plaintiff,<br><br> v.<br><br>ILLINOIS NATIONAL INSURANCE COMPANY, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>        Counter-Defendants. | CASE NO. 11-CV-00431 (KBF) |

**TUTOR PERINI CORPORATION'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR RECONSIDERATION**

    Defendant and Third Party Plaintiff Tutor Perini Corporation ("Tutor Perini"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its motion for reconsideration ("Motion") pursuant to Local Rule 6.3 and Fed. R. Civ. P. 59. Specifically, Tutor Perini respectfully requests reconsideration of that portion of this Court's Memorandum Decision and Order dated November 15,

2012 (the "Order") granting summary judgment to Third-Party Plaintiff Certain Underwriters at Lloyd's, London ("Lloyd's").[1]

## PRELIMINARY STATEMENT

Tutor Perini respectfully submits that reconsideration of the portion of the Order granting summary judgment as to Tutor Perini's third party action against Lloyd's is warranted on the basis that the Court overlooked or misapprehended certain key facts.

First, the Order overlooks Tutor Perini's arguments that regardless of the "occurrence" arguments posed by Chartis and Lloyd's, the Lloyd's Policy, which provides umbrella coverage over certain of the Chartis policies, also was triggered under the Lloyd's Policy's separate and independent Professional Services coverage.

The Lloyd's Policy Professional Services Endorsement provides insurance coverage for property damage arising out of the rendering or failure to render professional services. This is additional coverage contained in the Lloyd's Policy that does not implicate the "occurrence" issue that forms the principal basis of the Order. Thus, irrespective of whether the Lloyd's Policy provides commercial general liability coverage for property damage, the Lloyd's Policy also separately and independently provides potential coverage for the Facade Failure because a genuine issue of material fact exists as to whether the Facade Failure resulted in whole or in part from Tutor Perini's provision of professional services under a contract which required Tutor Perini

---

[1] While Tutor Perini also respectfully disagrees with the Order as it applies to the Chartis Plaintiffs, and reserves the right to seek review of the Order in its entirety at the appropriate time, for the purposes of reconsideration, Tutor Perini's Motion is limited to the Order as it applied to Lloyd's.

nydocs1-999730.6

to supervise, inspect or provide proper engineering or similar services with respect to the Bus Depot Project. Tutor Perini's arguments for coverage under the Lloyd's Policy's Professional Services coverage, however, were not addressed in the Order.

Secondly, with respect to the late notice arguments posed by Lloyd's, in granting summary judgment on this ground, the Order also overlooks that the Lloyd's Policy notice provision is premised on the knowledge of Tutor Perini's risk manager only, not on the knowledge of its other employees. Moreover, the Court's Order overlooks that any notice delay by Tutor Perini was excused by a clerical oversight notice exception in the Lloyd's Policy and that any delay was waived by Lloyd's failure to ever respond to or contact Tutor Perini after it was on notice of the claim.

Lastly, with respect to granting summary judgment based on the consent to settle provision of the Lloyd's Policy, the Court's Order overlooks Lloyd's waiver of this provision due to its inaction. Lloyd's failed to contact Tutor Perini in any way after it received notice of the Facade Failure and only responded to the claim when it was sued by Tutor Perini in a related action in Massachusetts state court. In addition, the Order contains a factual error regarding the timing of when Tutor Perini "consummated" the agreement between Tutor Perini and the MTA. The Order incorrectly concludes that the agreement between Tutor Perini and the MTA was "consummated" prior to Tutor Perini giving notice of the claim, when in fact Tutor Perini had placed all applicable insurance companies on notice at least six months prior to finalizing any agreement with the MTA.

Each of these arguments is sufficient to grant a motion for reconsideration pursuant to Local Rule 6.3 as these arguments were overlooked in the Order or demonstrate an error and had these arguments been considered, Lloyd's would not be

entitled to summary judgment. Therefore, Tutor Perini respectfully requests that its Motion be granted.

## FACTS

The full underlying facts are set forth in Tutor Perini's opposition papers to Chartis and Lloyd's respective motions for summary judgment and the statement of facts submitted in connection therewith and Tutor Perini incorporates those facts herein by reference. Set forth below, however, is a summary of the facts relevant to this Motion.

### I. THE 100TH STREET BUS DEPOT PROJECT

As part of the May 1, 2000 Design and Building Contract Tutor Perini entered into with the MTA, Tutor Perini was responsible for the design, construction, and overall supervision of the building at the 100th Street Bus Depot Project. (TP SOF[2] ¶¶ 1-2). Tutor Perini hired and supervised numerous subcontractors to perform work on the 100th Street Bus Depot Project, including subcontractors responsible for particular part of the construction and a subcontractor responsible for providing quality assurance services. (TP SOF ¶¶3-7).

### II. THE FACADE FAILURE AT THE 100TH STREET BUS DEPOT PROJECT

On or about April 17, 2008, a section of the Bus Depot's exterior masonry wall failed ("the Facade Failure"). (TP SOF ¶42). Tutor Perini did not receive any notice regarding any problems with respect to the exterior masonry wall prior to the Facade

---

[2] Cites to "TP SOF" refer to the paragraph numbers in Tutor Perini's Counter-Statement of Additional Materials Facts filed with Tutor Perini's Responses and Objections to Lloyd's multiple Statements of Undisputed Facts, dated September 7, 2012.

nydocs1-999730.6

Failure from its quality assurance company, the subcontractors working on the exterior masonry wall, or any other party. (TP SOF ¶43). The MTA informed Tutor Perini of the failure and the MTA further undertook immediate emergency repairs to ensure the safety of the building and surrounding areas. (TP SOF ¶44). Tutor Perini was not allowed to perform its own investigation or start its own repairs if necessary after the Facade Failure. (TP SOF ¶45). The MTA hired Fay, Spofford & Thorndike of New York, Inc. ("Fay"). Fay hired WJE Engineers & Architects, P.C. ("WJE") to "investigate the exterior masonry at the 100th Street Bus Depot" and provide "initial close-up observations of the structural steel and glazed curtain wall connections at the 100th Street Bus Depot." (TP SOF ¶46). The MTA did not initially share any of WJE's preliminary findings. In fact, the MTA expressly instructed Tutor Perini that any of WJE's findings would not be shared with Tutor Perini until as late as December 2008. (TP SOF ¶47).

Ultimately, WJE's report identified a number of issues that led to the Facade Failure, issues which had not been previously identified by Tutor Perini or its subcontractor responsible for monitoring the Bus Depot work. (TP SOF ¶48).

### III. TUTOR PERINI PROMPTLY NOTIFIED LLOYD'S OF THE FACADE FAILURE AT THE 100TH STREET BUS DEPOT PROJECT

Prior to November 2008, Tutor Perini did not believe it was liable for the Facade Failure. (TP SOF ¶¶48-49). Moreover, as WJE's findings were not being shared with Tutor Perini and Tutor Perini was not allowed to perform its own investigation, Tutor Perini also was not aware of the extent or cause of the Facade Failure until after the WJE's own investigation on behalf of the MTA. *Id*. Tutor Perini initially believed that the Facade Failure was not a construction defect and was the

5

MTA's responsibility.  (TP SOF ¶49).  After Tutor Perini reviewed the WJE Report, however, it realized that there was potential liability.  *Id*.

Tutor Perini first became aware of the possibility of a potential claim on or about November 2008, when it was able to review preliminary findings by WJE regarding the Facade Failure. (TP SOF ¶50).  Moreover, on or about November 2008, Tutor Perini also met with the MTA and at such time the MTA's counsel represented to Tutor Perini that the MTA had discussed the claim with the insurance companies and OCIP administrator, and that the insurance companies had made an evaluation as to coverage.  (TP SOF ¶51).

Tutor Perini's risk manager, John Hughes ("Hughes"), who is not based in New York but was and remains located in Massachusetts, was first made aware of the Facade Failure on or about November 2008.  (TP SOF ¶52).  After being notified of the Facade Failure, Hughes promptly undertook steps to investigate the Facade Failure and place all applicable insurance companies on notice.  (TP SOF ¶53).  Pursuant to the terms of the Lloyd's policy, and in accordance with the coverage details of the Design and Building Contract, the notice provision under the Lloyd's Policy is qualified by a Broad Form Knowledge and Notice of Occurrence Endorsement which sets forth that "[k]nowledge of an Occurrence, claim or Suit shall only be knowledge to the Insured if an individual in the following position shall have received such notice: MTA – New York City Transit – Risk Management Department."  (TP SOF ¶54).  As the Lloyd's Policy provided coverage to Tutor Perini through owner controlled insurance endorsements, the broad form knowledge endorsement under the Lloyd's Policy imputes knowledge to Tutor Perini if an individual in the same capacity as listed in the endorsement for the

6

MTA received such notice. (TP SOF ¶55). Tutor Perini's risk manager John Hughes is the individual in the same capacity as listed for the MTA in the Broad Form Knowledge and Notice of Occurrence Endorsement of the Lloyd's Policy. (TP SOF ¶56).

On January 14, 2009, Hughes placed the MTA OCIP Administrator on notice and requested that the OCIP Administrator "place the general liability insurer and excess liability insurer on notice of the [Facade Failure] claim," which included Lloyd's. (TP SOF ¶57). The broker who placed the Lloyd's Policy testified that as Tutor Perini's January 2009 notice "was forwarded to Lloyd's back in March 2009," and that therefore "late notice [wa]s not an issue." (TP SOF ¶58).

The Lloyd's Policy also includes a Failure to Disclose endorsement that sets forth that a "clerical oversight to notify an Occurrence will not prejudice your rights" such as when "written notice isn't posted in time or to the appropriate person," as testified by Lloyd's own representative. (TP SOF ¶59). In such cases, the failure to disclose an occurrence "will not negatively impact your rights." *Id*.

### IV. LLOYD'S NEVER ACKNOWLEDGED THE FACADE FAILURE AND UNREASONABLY DELAYED IN SETTING FORTH A COVERAGE POSITION

Lloyd's was placed on notice of the Facade Failure on January 14, 2009, when Hughes placed the MTA OCIP Administrator on notice pursuant to the OCIP Procedures. (TP SOF ¶60). Therefore, Lloyd's was made aware of the Facade Failure and MTA's claims against Tutor Perini when it received notice of the Facade Failure claim. At the same time, Lloyd's also was aware of the fact that Tutor Perini would be in potential discussions with the MTA to resolve the dispute. (TP SOF ¶61).

7

As early as April 2009, Lloyd's had already assigned a third party claim administrator, McLarens Young, to monitor the claim. (TP SOF ¶63). McLarens Young was responsible for communications between the parties but <u>never</u> communicated with Tutor Perini. In addition, Lloyd's <u>never</u> made any contact with Tutor Perini acknowledging the claim. (TP SOF ¶¶ 64-65). Lloyd's admitted that no action was taken on the claim except to hire McLarens Young. (TP SOF ¶66). In fact, McLarens Young did not hear anything from Lloyd's regarding the Facade Failure claim from the time the Facade Failure claim was sent to Lloyd's in early 2009 until sometime in 2011. (TP SOF ¶67). Moreover, despite Tutor Perini's repeated requests for the Lloyd's Policy or status of the claim to the Broker that placed the Lloyd's Policy, Lloyd's never independently reached out to Tutor Perini. (TP SOF ¶68). Nor did Lloyd's issue or communicate a coverage position regarding the Facade Failure until almost two and half years after the claim. Lloyd's coverage position came in the form of its Answer to Tutor Perini's complaint in a related action in Massachusetts in August 2011. (TP SOF ¶69). Lloyd's did not believe it owed Tutor Perini any form of acknowledgement or communication, admitted that it never contacted Tutor Perini after the claim was submitted, and did not concern itself with getting involved with any discussions with the MTA. (TP SOF ¶70). In fact, Lloyd's appears to have relied on communications with the underlying insurance company, Chartis, to determine its action on the claim, none of which was communicated with Tutor Perini. (TP SOF ¶71).

## V. AGREEMENT BETWEEN THE MTA AND TUTOR PERINI REGARDING THE 100TH STREET BUS DEPOT PROJECT

In June 2009, Tutor Perini was required to enter an agreement with the MTA regarding repairs in order to gain access to the 100th Street Depot Project. (TP

8

nydocs1-999730.6

SOF ¶72). Despite being on notice of the claim and assigning a third party claim administrator, McLarens Young, to monitor the claim, Lloyd's never acknowledged the Facade Failure. (TP SOF ¶73). Thus, by failing to even acknowledge the claim, including the discussions between the MTA and Tutor Perini and the resulting June 2009 agreement (reached after the claim had been submitted to and ignored by Lloyd's), Lloyd's waived any of its policy defenses in connection with this agreement and any other policy defenses. (TP SOF ¶¶74-75).

### VI.   THE LLOYD'S INSURANCE POLICY

The Lloyd's Policy defines "Property Damage" in relevant part as "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured." (TP SOF ¶85). The Lloyd's Policy also contains a "Cross Liability Endorsement" which states in relevant part that

> [i]n the event of claims being made by reason of damage to property belonging to any Insured hereunder, for which another Insured hereunder is, or may be liable, then this policy shall cover such Insured against whom a claim is made, or may be made, in the same manner as if separate policies had been issued to each Insured hereunder.

(TP SOF ¶87).

By endorsement (the "Professional Services Endorsement"), the Lloyd's Policy also provides coverage "for Bodily Injury and Property damage arising from the rendering of or failure to render Professional Services." (TP SOF ¶91).

By endorsement (the "Broad Form Knowledge and Notice of Occurrence") the Lloyd's Policy also provides that "Knowledge of an Occurrence, claim or Suit shall only be knowledgeable to the Insured if an individual in the following position shall have

9

nydocs1-999730.6

receive such notice - MTA – New York City Transit – Risk Management Department. (TP SOF ¶92). By endorsement (the "Failure to Disclose Endorsement"), the Lloyd's Policy also provides that "[a] clerical oversight to notify an Occurrence will not prejudice your rights." (TP SOF ¶93).

## ARGUMENT

### I.  THE LEGAL STANDARD ON A MOTION FOR RECONSIDERATION

Local Rule 6.3 of the United States District Courts for the Southern and Eastern Districts of New York requires a party moving for reconsideration to "set[ ] forth concisely the matter or controlling decisions which counsel believes the court has overlooked."[3] A motion for reconsideration shall be granted where the moving party can demonstrate that the court overlooked factual matters or controlling law that might have altered the court's earlier decision. *Jones v. Donnelly*, 487 F. Supp. 2d 418, 419 (S.D.N.Y. 2007). Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court. *Brown v. Barnhart*, No. 04 Civ. 2450, 2005 WL 1423241, at *1 (S.D.N.Y. June 16, 2005); *Greenes v. Vijax Fuel Corp.,* No. 02 Civ. 0450, 2004 WL 1516804, at *1 (S.D.N.Y. July 7, 2004). It is appropriate to grant reconsideration in order to "correct clear error, prevent manifest injustice or review the court's decision in light of the availability of new evidence." *Kittay v. Korff* (In re Palermo), No. 08–CV–7421, 2011 U.S. Dist. LEXIS 11681, at *13 (S.D.N.Y. Feb 7, 2011) *(citing Parrish v. Sollecito*, 253 F.Supp.2d 713, 715 (S.D.N.Y.2003)). The decision to grant or deny a motion for

---

[3] The standards governing motions under Local Rule 6.3 along with Fed. R. Civ. P. 59 are the same. *Henderson v. Metro. Bank & Trust Co.*, 502 F.Supp.2d 372, 375–76 (S.D.N.Y. 2007).

nydocs1-999730.6

reargument is within the sound discretion of this Court. *See Brown*, 2005 WL 1423241, at *1.

Tutor Perini meets the standard for a motion for reconsideration. Tutor Perini respectfully submits that the Order overlooked: (1) its argument regarding coverage under Lloyd's Professional Services Endorsement; (2) the notice provisions of the Lloyd's Policy which trigger Tutor Perini's notice obligation only at that time its risk manager had knowledge of the Facade Failure and which also includes a clerical oversight exception; and (3) Lloyd's complete failure to acknowledge the claim or contact Tutor Perini in any way regarding the claim thereby waiving any of Lloyd's policy defenses based on notice and or failure of Lloyd's to take part in any negotiations with the MTA. In addition, the Order contains a factual error regarding when Tutor Perini gave notice and when the agreement was finalized between the MTA and Tutor Perini. Order at 16 fn 7. The agreement between the MTA and Tutor Perini was finalized approximately six months after Lloyd's was placed on notice of the Facade Failure claim, <u>not</u> before notice was given to Lloyd's, as incorrectly set forth in the Court's Order. (TP SOF ¶72).

## II. THE LLOYD'S POLICY PROVIDES COVERAGE FOR PROPERTY DAMAGE IN CONNECTION WITH THE RENDERING OF PROFESSIONAL SERVICES

As set forth in Tutor Perini's opposition to Lloyd's summary motion and Tutor Perini's Counter-Statement of Additional Material Facts in response to Lloyd's Statements of Undisputed Facts, the Lloyd's Policy provides separate and independent coverage for "Property Damage arising from the rendering of or failure to render Professional Services." (TP SOF ¶ 91).

When considering whether acts or people under consideration involve the provision of "professional services," a court focusses on "the special acumen and training of professionals when they engaged in the acts challenged." *Lumbermens Mut. Cas. Co. v. Flow Int'l Corp.*, 844 F. Supp. 2d 286, 302 (N.D.N.Y. 2012) (holding that "engineering activities undoubtedly require specialized knowledge and therefore constitute professional services"). Moreover, the endorsement only requires the existence of "Property Damage" -- which under the Lloyd's Policy is defined as "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured." (TP SOF ¶85). There is no requirement that an "occurrence" have taken place, which was the principal basis for the Order granting Lloyd's summary judgment.

Here, Tutor Perini was responsible for the design and building of the 100th Street Bus Depot and for the subcontractors it hired to perform the work. (TP SOF ¶43). These subcontractors included the subcontractors who were responsible for the work outlined as deficient in WJE's report and the quality assurance services.

Therefore, at a minimum, a genuine issue of material fact exists as to whether the Facade Failure and resulting property damage was caused by Tutor Perini and/or the subcontractors for whom it was responsible by their rendering of professional services in the design and construction of the 100th Street Bus Depot. **[facts!!!]** Accordingly, genuine issues of material fact exist as to whether the Lloyd's Policy's professional services coverage is triggered. This argument was overlooked and not addressed in the Order.

nydocs1-999730.6

III. **LLOYD'S POLICY DEFENSES ARE WAIVED BY FAILING TO TIMELY DISCLAIM COVERAGE AND ALSO FAIL BECAUSE TUTOR PERINI PROVIDED TIMELY NOTICE PURSUANT TO THE POLICIES**

The Order states that Lloyd's also "would be entitled to summary judgment on the basis that Tutor Perini failed to comply with the Policies' requirement that Tutor Perini have notified the insurers of a potential claim based upon an 'occurrence' 'as soon as practicable.'"  Order at 14.  The Order further states that in entering into an agreement with the MTA, this "independent action by Tutor Perini violated the clear terms of each policy and is an independent basis for granting summary judgment." Order at 17.  As discussed further below, the Order overlooks (1) Lloyd's own failure to contact Tutor Perini despite its knowledge of the claim and (2) Lloyd's failure to not timely provide a coverage position to Tutor Perini.  Lloyd's inaction thereby waives Lloyd's late notice defense as well as its settlement provision defense.

The Order also overlooks the fact that the notice provision in the Lloyd's Policy is qualified by broad form endorsement which requires that knowledge of a claim is triggered by the knowledge of a risk manager, not other employees.  Additionally, as provided under the Lloyd's Policy, a clerical oversight to notify an occurrence would not prejudice Tutor Perini's rights under the Lloyd's Policy.  None of these facts or arguments were considered in the Order.

The late notice and voluntary payment defenses are unavailable to Lloyd's because Lloyd's waived those defenses due to its complete lack of communication with Tutor Perini after receipt of the claim and failure to disclaim coverage until more than two years after notice of the claim.  Such delay is unreasonable as a matter of law and precludes Lloyd's from asserting defenses based on the Lloyd's Policy's notice and

13

voluntary payment provisions. An insurance company has an obligation to provide timely, written notification of any disclaimer "as soon as is reasonably possible." *See Hartford Ins. Co. v. Nassau County*, 46 N.Y.2d 1028, 1029, 389 N.E.2d 1061, 1062, 416 N.Y.S.2d 539, 540 (1979). A disclaimer of coverage must be timely even if the policyholder's notice to the insurance company purportedly was late. *See id.* at 1029-1030, 389 N.E.2d at 1062, 416 N.Y.S.2d at 540-41.

Under New York law, an insurance company who delays in giving written notice of disclaimer bears the burden of justifying the delay. McKinney's Insurance Law § 3420(d). Moreover, if the insurance company is unable to provide sufficient justification for its delay in disclaiming coverage, it is precluded from doing so. *See Squires v. Robert Marini Builders, Inc.*, 293 A.D.2d 808, 739 N.Y.S.2d 777 (3d Dep't 2002) (delay of 42 days before disclaiming coverage based upon the existence of an exclusion was unreasonable and, therefore, the insurer was not entitled to rely upon the exclusion); *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 369 F.3d 102 (2d Cir. 2004) (a delay of four or five months after notice by the policyholder of a claim was too long to constitute effective notice of disclaimer under New York law; *Squires v. Robert Marini Builders, Inc.*, 293 A.D.2d 808, 739 N.Y.S.2d 777 (3d Dep't 2002). Here, the Order did not consider Lloyd's complete failure to communicate with Tutor Perini with respect to the claim and the fact that the first time that Lloyd's even acknowledged the claim was in the form of its answer to Tutor Perini's complaint in a related Massachusetts Action, over two years after the claim had been submitted. (TP SOF ¶69). Lloyd's has failed to meet its burden for justifying this unreasonable delay in providing a coverage position to Tutor Perini. In fact, it has never given a reason for the

nydocs1-999730.6

delay other than it was in communication with Chartis.  This is not sufficient to meet its obligation to notify Tutor Perini.

Even assuming that Lloyd's had not waived its right to rely on a purported notice defense, as a matter of New York law, the reasonableness of notice by the policyholder is a question of fact.  A policyholder's obligation to give notice "as soon as practicable" is measured by the "yardstick of reasonableness."  See 70A N.Y. Jur. 2d Insurance § 1972 (West 2011).   The requirement has an elastic meaning, and calls for a determination of what was within a reasonable time in the light of the facts and circumstances of the case at hand.  *Id.; see also Mighty Midget v. Centennial Ins. Co.*, 47 N.Y.2d 12, 19 (N.Y. 1979) (holding that seven and a half month delay in providing notice was not unreasonable).  The requirement means that the notice must be given within a reasonable time under the circumstances of each particular case.  Further, summary judgment must be denied where "there is a triable issue of fact whether the [policyholder] provided a reasonable excuse for the delay in giving notice of the occurrence to [the insurance company]."  *Dryden Mut. Ins. Co. v. Brockman*, 259 A.D.2d 947, 948 (1999); *see also Hartford Accident & Indem. Co. v. CNA Ins. Cos.*, 99 A.D.2d 310, 313 (1st Dept. 1984) ("Where an excuse or explanation is offered for delay in furnishing notice, the reasonableness of the delay and the sufficiency of the excuse are matters to be determined at trial."); *Cohen v. Utica First Ins. Co.*, 436 F.Supp.2d 517 (E.D.N.Y. 2006) (denying summary judgment to insurance company where there was a 8 month delay between fire incident and notice as there were disputed questions of material fact with respect to the policyholder's good faith belief that it was not responsible for the fire); *Abner, Herrman & Brock, Inc. v. Great Northern Ins. Co.*, 308

F.Supp.2d 331, 338 (S.D.N.Y.2004) (denying summary judgment where issue of fact existed as to whether delay was reasonable). "[A] good faith belief of non-liability" has been deemed a reasonable excuse for delay in giving notice. Homestead Village Assoc., L.P. v. Diamond State Ins. Co., 818 F. Supp. 2d 642, 648 (E.D.N.Y. 2011). In addition, a justifiable lack of knowledge of insurance coverage may excuse a delay in reporting an occurrence. *Mighty Midgets*, 47 N.Y.2d at 20.

In this case, there are several disputed material facts with respect to the reasonableness of any purported delay as well as Tutor Perini's obligations under the Lloyd's policy which prevents resolution of the case on a motion for summary judgment. As set forth below, Tutor Perini's obligation to notify Lloyd's arose in November 2008 when its risk manager was first made aware of the claim and when it first believed there was an issue of liability against Tutor Perini. Moreover, between November 2008 and when it gave notice January 2009, Tutor Perini's risk manager was promptly investigating the claim and which insurance companies to put on notice. (TP SOF ¶53). This two month time-frame is reasonable under the circumstances or the very least one for the fact finder to determine. Therefore, while New York courts have held that the question of whether notice was given within a reasonable time may be determined as a question of law, no circumstances exist here to make the reasonableness of Tutor Perini's notice an issue that can be determined in a summary judgment motion. First, Tutor Perini has offered valid excuses for the delay and moreover, the facts bearing on the delay in providing notice are in dispute. *New York v. Blank*, 27 F.3d 783, 795 (2d Cir. 1994).

16

With respect to Tutor Perini's obligations under the notice provisions of the Lloyd's Policy, the Order places undue importance on the knowledge of the Facade Failure by Tutor Perini's employees outside of risk management and overlooks the notice provisions in the Lloyd's Policy. As set forth in Tutor Perini's opposition papers and counter-statement of facts, Tutor Perini's notice obligations under the Lloyd's Policy are qualified by two separate endorsements, neither of which are addressed or considered in the Order. If these notice endorsements had been considered, in addition to Lloyd's complete failure to respond to the claim, Lloyd's would not be entitled to summary judgment.

The notice provision in the Lloyd's Policy is first qualified by a Broad Form Knowledge and Notice of Occurrence Endorsement which sets forth that "[k]nowledge of an Occurrence, claim or Suit shall only be knowledge to the Insured if an individual in the following position shall have received such notice: MTA – New York City Transit – Risk Management Department." (TP SOF ¶54). As the Lloyd's Policy provided coverage to Perini through owner controlled insurance endorsements and also contains a "Cross Liability Endorsement,"[4] the broad form knowledge endorsement under the Lloyd's Policy must be read to impute knowledge to Tutor Perini if an individual at Tutor Perini in the same capacity as listed in the endorsement for the MTA received such notice. (TP SOF ¶55). Tutor Perini's risk manager, Hughes, is the individual in the same listed capacity – risk manager - as listed for the MTA in Broad Form Knowledge

---

[4] The Cross Liability Endorsement states in relevant part that "[i]n the event of claims being made by reason of damage to property belonging to any Insured hereunder, for which another Insured hereunder is, or may be liable, then this policy shall cover such Insured against whom a claim is made, or may be made, in the same manner as if separate policies had been issued to each Insured hereunder." (TP SOF ¶87).

nydocs1-999730.6

and Notice of Occurrence Endorsement of the Lloyd's Policy.  (TP SOF ¶56).  Hughes was only made aware of the claim in November 2008.  (TP SOF ¶52). Prior to that, Tutor Perini had a reasonable belief in no liability with respect to the Facade Failure as it was not until November 2008 that the MTA shared the WJE's findings with Tutor Perini. (TP SOF ¶¶48-51).  Therefore, any delay between April 2008 and prior to Hughes' knowledge in November 2008 cannot entitle Lloyd's to summary judgment on the grounds of late notice.

Nevertheless, the Order improperly determined that the two month delay between November 2008 when Hughes first became aware of the Facade Failure and January 2009 when notice was given was unreasonable.  Order at 14.  However, the Order overlooks that once Mr. Hughes was made aware of the potential liability, he promptly took efforts to investigate what insurance companies to put on notice, including what policies would respond (for example the MTA's Policies or Tutor Perini's practice policies) (TP SOF ¶53).  The Order overlooks these facts and the complicated notice implications in noticing a claim, specifically one involving an OCIP program such as here under which the Lloyd's Policy provides coverage.

Moreover, the Order overlooks and did not consider the fact that the Lloyd's Policy also includes a Failure to Disclose endorsement that sets forth that a "clerical oversight to notify an Occurrence will not prejudice your rights" such as when "written notice isn't posted in time or to the appropriate person," as testified by Lloyd's own representative.  (TP SOF ¶59).  In such cases, as testified by Lloyd's own representative, the failure to disclose an occurrence "will not negatively impact your rights." *Id*. In this case, any purported delay by Tutor Perini to place Lloyd's on notice

nydocs1-999730.6

may have been caused due to a clerical error.  Accordingly, the clerical exception at a minimum raises a genuine issue of material fact even assuming there was late notice.

## CONCLUSION

For the foregoing reasons, Tutor Perini respectfully submits that this Court should grant Tutor Perini's Motion for Reconsideration on that portion of the Order granting summary judgment as to Lloyd's.

Dated:   New York, New York
         December 14, 2012

Respectfully submitted,

By:  /s/ Vianny M. Pichardo
    Finley T. Harckham, Esq.
    Alexander D. Hardiman, Esq.
    Carrie M. DiCanio, Esq.
    Vianny M. Pichardo, Esq.
    ANDERSON KILL & OLICK, P.C.
    1251 Avenue of the Americas
    New York, New York 10020
    Telephone:  (212) 278-1000
    Fax:  (212) 278-1733
    *Attorneys for Defendant and*
    *Third-Party Plaintiff*
    *Tutor Perini Corporation*

nydocs1-999730.6

## CERTIFICATE OF SERVICE

I, Vianny M. Pichardo, hereby certify that, on December 14, 2012, I served a copy of the within document by delivering the same to the following attorneys by filing by ECF.  Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

Jonathan Anthony Cipriani (jcipriani@bcnlaw.com)
BATES CAREY NICOLAIDES LLP
191 North Wacker Drive
Suite 2400
Chicago, IL 60606


George Rockas (george.rockas@wilsonelser.com)
Jensen Varghese (jensen.varghese@wilsonelser.com)
Guy Joseph Levasseur (guy.levasseur@wilsonelser.com)
Peri Karger Agulnek (peri.agulnek@wilsonelser.com)
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
260 Franklin Street - 14th Floor
Boston, MA 02110-3112


/s/ Vianny M. Pichardo
_____
Vianny M. Pichardo, Esq.

nydocs1-999730.6