UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

ILLINOIS NATIONAL INSURANCE COMPANY, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

Case No.: 11-CV-00431 (KBF)

                           Plaintiffs,

            - against -

TUTOR PERINI CORPORATION,

                                         X

-----------------------------------------------------------------------

TUTOR PERINI CORPORATION,

                       Third-Party Plaintiff,

            - against -

CERTAIN UNDERWRITERS AT LLOYD'S LONDON

                       Third-Party Defendant.

-----------------------------------------------------------------------X

## CERTAIN UNDERWRITERS AT LLOYD'S, LONDON'S[1] MEMORANDUM OF LAW IN OPPOSITION TO TUTOR PERINI'S MOTION FOR RECONSIDERATION

---

[1] Certain Underwriters at Lloyd's, London who subscribe to Policy No. 576/UF7274400 ("Underwriters").

## TABLE OF CONTENTS

**Page Nos.**

TABLE OF AUTHORITY ................................................................................ ii

I.    PERINI FAILS TO MEET THE STANDARD
      FOR A MOTION TO RECONSIDER .................................................................2

II.   THE ENDORSEMENT FOR PROFESSIONAL SERVICES DOES NOT OBVIATE
      PERINI'S BURDEN OF ESTABLISHING THAT THE FAÇADE FAILURE IS AN
      "OCCURANCE" UNDER THE POLICY ...........................................................3

      1.  PERINI STILL MUST PROVE THE FAÇADE
          FAILURE ARISES FROM A FAILURE.................................................3

      2.  PERINI FAILED TO SUBMIT ANY EVIDENCE
          OF AN ISSUE OF MATERIAL FACT REGARDING
          THE CAUSE OF THE FAÇADE FAILURE.........................................5

III.  UNDERWRITERS DID NOT WAIVE ANY COVERAGE DEFENSES INCLUDING
      BUT NOT LIMITED TO NOTICE AND VOLUNTARY
      PAYMENT PROVISIONS...........................................................................6

IV.   THE COURT CORRECTLY HELD THAT PERINI'S FAILURE TO
      COMPLY WITH THE POLICY'S EXPLICIT NOTICE
      REQUIREMENTS VITIATES COVERAGE ...................................................9

      1.  A MOTION FOR RECONSIDERATION IS NOT THE PLACE
          TO RAISE A NEW ARGUMENT FOR THE FIRST TIME...................10

      2.  PERINI'S TWO MONTH DELAY BEFORE NOTIFYING
          UNDERWRITERS OF THE FAÇADE FAILURE IS UNREASONABLE
          AS A MATTER OF LAW..................................................................12

V.    ENDORESEMENT NO. 4 OF THE LLOYD'S POLICY DOES NOT
      EXCUSE PERINI'S LATE NOTICE..............................................................12

VI.   EVEN IF THE COURT OVERLOOKED/ERRED IN ITS INTERPRETATION OF THE
      PROFESSIONAL SERVICES ENDORSEMENT AND/OR PERINI'S LATE NOTICE,
      UNDERWRITERS ARE ENTITLED TO SUMMARY JUDGMENT, AS A MATTER
      OF LAW, BECAUSE PERINI BREACHED THE VOLUNTARY PAYMENT
      PROVISION OF THE LLOYD'S POLICY WHICH NEGATES COVERAGE .............14

**TABLE OF AUTHORITIES**

**CASES**                                                                    **Page Nos.**

*Aguiar v. State,*
06 Civ. 03334, 2008 U.S. Dist. LEXIS 86755, at *2-3 (S.D.N.Y. Oct. 23, 2008) ........................2

*Aquatectonics, Inc. v. The Hartford Cas. Ins. Co.*
2012 U.S. Distr. LEXIS 41185 (E.D.N.Y. 2012) ..........................................................4

*Baker Residential Ltd. P'ship v. Travelers Ins. Co.*
10 A.D.3d 586, 586-87, 782 N.Y.S.2d 249 (1st Dep't 2004)..........................................4

*Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*
98 N.Y.2d 208, 220 (N.Y. 2002) ...........................................................................5

*Dellefave v. Access Temporaries, Inc.,*
99 Civ. 6098 (RWS), 2001 U.S. Dist. LEXIS 3165, at *2 (S.D.N.Y. Mar. 22, 2001.....................2

*Eagle Ins. Co. v. Garcia,*
720 N.Y.S.2d 172, 173 (2d Dept 2001) ...................................................................13

*Fairmont Funding Ltd. v. Utica Mut. Ins. Co.,*
694 N.Y.S.2d 389, 391 (1st Dep't 1999) ...................................................................7

*George A. Fuller Co. v. U.S. Fidelity and Guar. Co.*
200 A.D.2d 255, 613 N.Y.S.2d 152 (1st Dep't 1994) ...................................................3

*Gongolewski v. Travelers Ins. Co.,*
252 A.D.2d 569, 675 N.Y.S.2d 299, 300 (2d Dept. 1998) ..............................................5

*Hartford Ins. Co. v. Nassau County,*
46 N.Y.2d 1028 (1979) .......................................................................................7

*JMZ USA, Inc. v. Lumbermens Mut. Cas. Co.,*
828 N.Y.S.2d 385, 386 (1st Dep't 2007) ...................................................................7

*Lumbermens Mut. Cas. Co. v. Flow In't.,*
844 F. Supp. 2d 286, 310 (N.D.N.Y 2012)...............................................................7,8

*U.S. Underwriters Insurance Company v. Landau*
679 F. Supp. 2d 330, 342 (2010) ...........................................................................8

*New York v. Blank,*
27 F.3d 783 (2d Cir. 1994)..................................................................................12

ii

*Nunez v. United States Underwriters Ins. Co.*,
31 Misc. 3d 418, 422  (2011)...................................................................................................8

*Olin Corp. v. Ins. Co. of North America*,
966 F.2d 718 (2d Cir. 1992)...........................................................................................12, 13

*Only Natural, Inc. v. Realm Natl. Ins. Co.*,
830 N.Y.S.2d 229 (N.Y. App. Div. 2d Dep't 2007) ....................................................7

*Pavarini Constr. v. Continental Ins. Co.*
304 A.D.2d 501, 502, 759 N.Y.S.2d 56, 57-58 (1st Dep't 2003).................................4

*RST (2005) Inc. v. Research in Motion Limited*,
2009 U.S. Dist. LEXIS 8002, at *6 (2009) ...............................................................12

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255, 256-57 (2d Cir. 1995). ...........................................................................2

*Simon Property Group, L.P. v. Lumbermen's Mutual Casualty Company*,
459 Fed. Appx. 16, 1 8 (2d Cir. N.Y. 2012) ............................................................12

*Squires v. Robert Marini Builders, Inc.*,
293 A.D.2d 808 (3d Dep't 2002) ................................................................................7

*Sunham Home Fashions v. Diamond State Insurance Company*
813 F.Supp. 2d 411 (S.D.N.Y. 2011).......................................................................15

*United Statues Liability Ins. Co. v. 204 West 78th St. Housing Corp.*
2002 U.S. Dist. LEXIS 210 (S.D.N.Y. 2002).........................................................13

*U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*,
369 F.3d 102 (2d Cir. 2004)........................................................................................7

*Vigilant Insurance Co. v. Bear Stearns Cos, Inc.*
10 N.Y.3d 170, 884 N.E.2d 1044 (2008).................................................................15

iii

RULES/STATUTES

N.Y. ISC Law § 3420(d)....................................................................................................6

OTHER AUTHORITIES

Oxford Dictionaries (Oxford Univ. Press 2012) at
        http://oxforddictionaries.com/definition/american_english/clerical#clerical__2.............12

iv

The Third-Party Defendant, Underwriters, respectfully submit this memorandum of law in opposition to the Third-Party Plaintiff, Tutor Perini Corporation's ("Perini") *Motion for Reconsideration* ("Mt. for Recon.") of this Court's November 15, 2012 Order (the "Order") entering judgment in favor of Underwriters on Perini's declaratory judgment claim. **Underwriters incorporate the legal arguments contained in their Memorandum of Law In Support of Their Motion for Summary Judgment [Paper #75] ("Memo") and Reply Memorandum In Support of Their Motion for Summary Judgment [Paper #112] ("Reply").**

Perini's request for reconsideration is grounded in the insulting argument that the Court's comprehensive assessment of Underwriters' motion for summary judgment was done without analysis, overlooked relevant case law, disregarded certain disputed facts and relied on other erroneous undisputed facts. This is simply incorrect and an even cursory review of the Order substantiates same. The Order specifically states "[t]he Chartis Insurers and Lloyd's have posited a variety of arguments in support of their respective summary judgment motions. The Court deals only with those necessary to resolution of this motion." Order, 11. Perini does not offer any new precedent or newly discovered facts to warrant reconsideration. To the contrary, Perini merely regurgitates the same arguments it made in its Opposition to Underwriters' Motion for Summary Judgment ("Opp."). Repetition does not afford Perini's arguments greater substantive impact, nor does the Court's rejection of Perini's arguments equate with having overlooked them. Its motion, therefore, is an improper attempt to re-litigate issues already raised and decided by the Court. This may not be done by way of a motion for reconsideration and, therefore, it should be denied in its entirety.

961584.3

## FACTS

Underwriters hereby incorporate by reference the facts set forth within their previously filed Memorandum of Law in Support of Underwriters Motion for Summary Judgment and L.R. 56.1 Statement of Undisputed Material Facts[2].

## ARGUMENT

### I. PERINI FAILS TO MEET THE STANDARD FOR A MOTION TO RECONSIDER

Motions for reconsideration are governed by Rule 6.3 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York. "Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Dellefave v. Access Temporaries, Inc.*, 99 Civ. 6098 (RWS), 2001 U.S. Dist. LEXIS 3165, at *2 (S.D.N.Y. Mar. 22, 2001). "The Court must not allow a party to use the motion as a substitute for appealing from a final judgment," and therefore may not permit a party moving for reconsideration to "advance new facts, issues or arguments not previously presented to the Court." *Id.* (citations omitted). *See also Aguiar v. State*, 06 Civ. 03334, 2008 U.S. Dist. LEXIS 86755, at *2-3 (S.D.N.Y. Oct. 23, 2008). A motion to reconsider should be denied unless the purportedly overlooked matter could reasonably be expected to alter the conclusion reached by the court. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 256-57 (2d Cir. 1995).

As discussed below, Perini has not come close to meeting the necessary standard. Thus, the Mt. for Recon. can be denied on this ground alone. Consideration of the substance of each of Perini's arguments leads to the same result.

---

[2] Cites to "UW's SOF" refer to the paragraph numbers in Underwriters' Statement of Undisputed Facts in Support of Summary Judgment, dated July 27, 2012 (Paper #73).

**II.** **Perini Has Failed To Establish That The Façade Failure Was Caused By an "Occurrence" or Due To The Rendering or Failure to Render "Professional Services."**

Perini tries to circumvent the Non-Occurrence rule by arguing that even if the Façade Failure is not an "occurrence," there is still coverage under Endorsement No. 3, which provides coverage for "Property Damage arising from the rendering of or failure to render Professional Services." Opp, 13. As set forth in Underwriters' Reply, Perini's argument is without merit. See Reply, 7-15. The endorsement does not obviate Perini's burden of proving that the Façade Failure arises from an occurrence under the insuring agreement. To the contrary, in order for coverage to apply, Perini must first prove that the Façade Failure is an "occurrence". The issue then becomes what constitutes an "occurrence" in this context. No reason exists to interpret the term "occurrence" differently than the way it applies to the main insuring agreement of the Policy.

1.     <u>Perini Cannot Establish That The Façade Failure Arises From An Occurrence</u>

The Lloyd's Policy provides coverage for "those sums . . . that the Insured becomes legally obligated to pay . . . because of . . . Property Damage . . . that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world."[3] An "occurrence" is defined as "an accident, including continuous or repeated exposure to conditions."[4]

As explained more fully in UW's Reply, New York law is clear - a CGL policy, like the Lloyd's Policy, does not insure against faulty workmanship to the mere work product itself, rather, it insures against faulty workmanship in the work product <u>which causes bodily injury or property damage to something other than the work product</u>. *George A. Fuller Co. v. U.S.*

---

[3] *See* Underwriters' SOF, 93.
[4] *See* Underwriters' SOF, 94.

*Fidelity and Guar. Co.*, 200 A.D.2d 255, 613 N.Y.S.2d 152 (1st Dep't 1994).  Thus, there is no "occurrence", as the case is here, for faulty workmanship disputes claiming only defects to the insured's work.   Here, Perini admits that it was the general contractor responsible for the construction of the entire Building.[5]   Thus, the entire Building, even if constructed by subcontractors, is Perini's "work product."   *See Fuller*, 200 A.D.2d 255 (Entire building was insured's work product, even if subcontractor performed work, because it was the general contractor responsible for construction of the building and, therefore, subcontractor's negligent construction which caused property damage to the building only was no "occurrence"); *see also Pavarini Constr. v. Continental Ins. Co.*, 304 A.D.2d 501, 502, 759 N.Y.S.2d 56, 57-58 (1st Dep't 2003)(Subcontractor's defective installation of concrete components in the construction of a building was not an "occurrence" because the only damage alleged was to insured/general contractor's own work product, namely, the building.  "As a general contractor, [the insured] was responsible for the <u>entire project</u> and all work done by [the insured's] subcontractor was done on [the insured's] behalf."); *Baker Residential Ltd. P'ship v. Travelers Ins. Co.*, 10 A.D.3d 586, 586-87, 782 N.Y.S.2d 249 (1st Dep't 2004)(Insured/general contractor's "work product" was the entire condominium project, even though certain components were performed by a subcontractor and, thus, no "occurrence" where the property damage, caused by the subcontractor's faulty workmanship, was to beams and the interior of the building only);  *Aquatectonics, Inc. v. The Hartford Cas. Ins. Co.*, 2012 U.S. Distr. LEXIS 41185 (E.D.N.Y. 2012)(Damage to pool caused by subcontractor's faulty work was not "occurrence" because  no damage to property other than the pool itself, which was the general contractor's work product).

---

[5] *See e.g.* Perini's responses to Underwriters' SOF ¶2.

Consequently, Underwriters are entitled to summary judgment as Perini still cannot overcome its threshold burden of showing an "occurrence" under the Lloyd's Policy.  *See Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 220 (N.Y. 2002) (insured has burden to prove occurrence).

2.   <u>Perini Failed to Submit Any Evidence of An Issue Of Material Fact Regarding the Cause of the Façade Failure</u>

Even if Perini is correct in that it does not need to prove that the Façade Failure arises from an occurrence, which Underwriters vehemently deny, it nevertheless has the burden of establishing that the Façade Failure is a covered event under the terms of the endorsement. *Gongolewski v. Travelers Ins. Co.*, 675 N.Y.S.2d 299, 300 (2d Dept. 1998).  Specifically, Perini must establish that the Façade Failure was caused by the rendering or failure to render "Professional Services."

In its Opposition to UW's Memo, Perini argued "at a minimum a genuine issue of material facts exists as to whether the Façade Failure and resulting property damage caused by a subcontractor's work also was caused in whole or in part by the failure to inspect or ensure that the construction and engineering work was properly performed."  Perini's Opp. to UW's Memo, 14.  This conclusory statement is insufficient to raise a genuine issue of material fact.

The record is completely devoid of even a scintilla of evidence that the Façade Failure was caused by Perini's failure to inspect or ensure that the construction and engineering work was properly performed.  Perini has offered no affidavit or testimony, for example, attesting to its alleged: (1) duty to provide quality assurance services; (2) scope of quality assurance services; and/or (3) failure to provide such services.  Perini has offered no evidence that the Façade Failure was a result of Perini's negligent or reckless inspection.  Likewise, Perini has offered no evidence that even if it had properly inspected the construction of the Building, it would have

uncovered the subcontractor's faulty work and remediated it so as to avoid the Façade Failure.  It is telling that Perini's Mt. for Recon. includes what appears to be a typographical error "**[facts!!]**", presumably used as a tool to remind Perini's counsel to insert the facts necessary to create a genuine issue of fact.  *See* Mt. For Recon., 12.  No such facts were inserted in to Perini's Mt. for Recon. nor its Opp.

Further, there is no evidence that the Façade Failure was caused by an engineering error, i.e., a faulty design plan.  Indeed, the opposite is true - Perini admitted that the Façade Failure was "caused by a subcontractor's negligent installation of vertical steel columns and other subcontractor errors."  *See* Perini's Opp. to UW's Memo, 6.  Moreover, Perini's on-site project manager, Jason Benfield, testified that the Façade Failure was caused by construction deficiencies, namely the result of someone failing to properly perform their work.  UW's SOF ¶¶124-137.  Specifically, he testified that "the mason failed to follow what was reflected in the shop drawing or plan."  UW's SOF ¶127.  The WJE Report describes someone failing to properly perform work such as installing brick wall ties or failing to erect the steel frame by the erection tolerances.  UW's SOF ¶129.  It describes someone failing to install bond beams due to a defect in workmanship.  UW's SOF ¶132.  No where did Mr. Benfield attribute the defects to a failure to inspect or deficient engineering work.  Consequently, the Endorsement for Professional Services does not trigger coverage because the damages for which Perini seeks coverage were not the result of the failure to render Professional Services.

### III. UNDERWRITERS DID NOT WAIVE ANY COVERAGE DEFENSES INCLUDING, BUT NOT LIMITED TO, THE NOTICE AND VOLUNTARY PAYMENT PROVISIONS

In an effort to avoid the consequences of its failure to provide Underwriters with timely notice of the Façade Failure, Perini contends that Underwriters' waived its right to assert policy defenses based on Underwriters untimely disclaimer.  Fundamentally, there are two types of

waiver recognized under New York law: (1) statutory waiver, under New York Insurance Law § 3420(d), which is limited to claims for "death or bodily injury," *see, e.g., Lumbermens Mut. Cas. Co.   v. Flow In't.*, 844 F. Supp. 2d 286, 310 (N.D.N.Y 2012)(Insurance Law § 3420(d) is inapplicable to insurance claims based on property damage); *Only Natural, Inc. v. Realm Natl. Ins. Co.*, 830 N.Y.S.2d 229 (N.Y. App. Div. 2d Dep't 2007)(finding the unexplained failure of defendants to promptly disclaim did not automatically estop them from relying upon defenses because matter did not involve death or bodily injury claim); and (2) common law waiver. Clearly, Perini does not allege a statutory waiver under Insurance Law § 3420(d), as this claim involves purported property damage, not claims for death or bodily injury.[6]   Thus, cases involving statutory waiver under Insurance Law § 3420(d) offer no guidance here and are inapplicable. *Only Natural, Inc. v. Realm Natl. Ins. Co.*, supra.[7]

Common law waiver is far more limited than statutory waiver.   While statutory waiver may occur under circumstances where there is a delay in giving notice of a disclaimer without more, "[u]nder the common-law rule, delay in giving notice of disclaimer of coverage, even if unreasonable, will not estop the insurer to disclaim unless the insured has suffered prejudice from the delay." *Fairmont Funding Ltd. v. Utica Mut. Ins. Co,* 694 N.Y.S.2d 389, 391 (1st Dep't 1999); *accord JMZ USA, Inc. v. Lumbermens Mut. Cas. Co,* 828 N.Y.S.2d 385, 386 (1st Dep't

---

[6] *See e.g.* Perini's responses to Underwriters' SOF ¶39.
[7] Thus, Perini's sole reliance on a page-long of decisions determined under, and subject to, Insurance Law § 3420(d), or its predecessor, Insurance Law § 167, subd 8, is seriously misplaced.   *See, e.g., Hartford Ins. Co. v. Nassau County*, 46 N.Y.2d 1028 (1979)(court held that insurer could not disclaim coverage as it failed to comply with Insurance Law § 167, subd 8 which provides that an insurer must "give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage" in order to effectively disclaim liability or deny coverage for death or bodily injury under an automobile liability insurance policy); *Squires v. Robert Marini Builders, Inc.* 293 A.D.2d 808 (3d Dep't 2002)(court held disclaimer of claim for injuries sustained to a carpenter when ladder collapsed was untimely); *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 369 F.3d 102 (2d Cir. 2004)(court affirmed the district court's holding that the insurer's disclaimer of coverage pursuant to an employee exclusion clause was untimely as a matter of law under N.Y. Ins. Law § 3420(d)).
[7] *See e.g.* Perini's responses to Underwriters' SOF ¶39.

2007) (in case where Insurance Law § 3420(d) is inapplicable, "since plaintiffs made no showing that they were prejudiced by [insurer's] delay in disclaiming coverage [under particular exclusion], [insurer] was not estopped to enforce the exclusionary endorsement").

Here, Underwriters' failure to promptly disclaim coverage does not automatically preclude it from relying upon coverage defenses. *Lumbermens Mut. Cas. Co.  v. Flow In't.*, at 310.  Because Perini cannot rely on section 3420, it must invoke the doctrine of equitable estoppel to prevent Underwriters from asserting coverage defenses. *Lumbermens*, 844 F. Supp. 2d at 310, citing *U.S. Underwriters Insurance Company v. Landau*, 679 F. Supp. 330, 342 (2010).   In order to establish equitable estoppel, Perini has the burden of proving that it relied on Underwriters' coverage to its detriment <u>and</u> was prejudiced by Underwriters delay in disclaiming. *Landau*, 679 F. Supp. 2d at 344.    There is no evidence that Perini agreed to reimburse the MTA for its defective work in reliance on coverage under the Lloyd's Policy.  Nor is there evidence that Perini suffered any prejudice as a result of Underwriters' untimely disclaimer. *Nunez v. United States Underwriters Ins. Co.*, 31 Misc. 3d 418, 422  (2011)(property damage claim did not fall within the ambit of Insurance Law section 3420(d) and, therefore, insured was not entitled to summary judgment for insurer's failure to disclaim coverage as the plaintiff failed to show proof of prejudice).  To the contrary, the undisputed evidence shows that Perini "assumed obligations" to the MTA as early as January 13, 2009 when it's Chief Operations Officer, Jack Frost, made an offer to settle the threatened litigation with the MTA. UW's SOF ¶68.  At this time, Perini offered to correct its defective work and offered to pay $1 million to reimburse the MTA for costs incurred for the inspection and repair of the façade. UW's SOF ¶69.   This offer was extended long before Perini notified Underwriters of the claim

in March/April 2009[8]. Admittedly, Perini extended this offer for a multitude of reasons, including "to gain access to the 100th Street Bus Depot Project"[9], "remedy said defects in a cooperative manner"[10] and because Perini changed its position and agreed that it would "stand up and take responsibility" for its "contractual responsibility."[11]   The record demonstrates that Perini's decision to perform the repairs to the Façade Failure and reimburse the MTA for costs incurred in remediating the façade was made independent of whether there was insurance coverage available for the claim.  Perini was concerned about its reputation as a contractor and negative publicity.[12]  Moreover, Perini says that Underwriters never acknowledged the claim nor contacted Perini in any way.  Thus, it would have been unreasonable for Perini to rely on coverage.  Consequently, Perini cannot demonstrate that it relied to its detriment on any acts or omissions by Underwriters nor can it show any prejudice.

### IV. THE COURT CORRECTLY HELD THAT PERINI'S FAILURE TO COMPLY WITH THE POLICY'S EXPLICIT NOTICE REQUIREMENTS VITIATES COVERAGE

Perini seeks to re-argue the Court's ruling that it failed to provide timely notice of the Façade Failure as required by the Lloyd's Policy.  In this regard, it incorrectly asserts that the Order overlooked the notice provisions of the Lloyd's Policy which trigger Tutor Perini's notice obligation only at the time its risk manager had knowledge of the Façade Failure and which also includes a clerical oversight exception.  Mt. for Recon., 13.  Perini conflates the Court's rejection of its argument with having overlooked it.   In fact, the Court specifically addressed Perini's argument and, relying on well-settled law in the Second Circuit and New York, properly entered judgment in favor of Underwriters based on Perini's late notice.  *See* Order, 15-17.  The Order provides:

---

[8] *See* Opp, 10.
[9] *See e.g.* Perini's responses to Underwriters' SOF, 68-72.
[10] *See e.g.* Perini's responses to Underwriters' SOF, 68-72.
[11] *See* UW's SOF, 107.

> Tutor Perini argues that insurance policies must be construed against the insurer, and that since Tutor Perini's risk management personnel were not on formal notice until November 2008 and Tutor Perini provided notice of the claim to the insurers in early January, Tutor Perini's notice was timely.  According to Tutor Perini, only when it received formal notice to its risk management department can it be deemed to have been on notice – and any delay between November and January is not itself so far out of bounds as to be unreasonable.  The Court disagrees on both points.

*Id.*, 15.

Building on this false premise, Perini asserts that the Court improperly determined that the two month delay between November 2008, when Hughes first became aware of the Façade Failure and January 2009 when notice was given, was unreasonable.  Mt. for Recon., 18.  It argues, for the first time, that there are "several disputed material facts with respect to the reasonableness of any purported delay as well as Tutor Perini's obligations under the Lloyd's policy which prevents resolution of the case on a motion for summary judgment."  Mt. for Recon., 16.  Specifically, Perini contends the Court:

> overlook[ed] that once Mr. Hughes was made aware of the potential liability, he promptly took efforts to investigate what insurance companies to put on notice, including what policies would respond (for example the MTA's Policies or Tutor Perini's practice policies)(TP SOF ¶53).  The Order overlooks these facts and the complicated notice implications in noticing a claim, specifically one involving an OCIP program such as here under which the Lloyd's Policy provides coverage.

Mot. for Recon., 18.

1.    A Motion for Reconsideration is Not The Place To Raise A New Argument For the First Time

It is important to note that Perini for the first time argues that there are allegedly valid excuses for its two month delay.  In Perini's Opp., it argued in relevant part as follows:

> Lloyd's argues that there is no coverage because Tutor Perini allegedly failed to give notice of the Façade Failure 'as soon as practicable.' . . . As Chartis makes the same arguments in support of its summary judgment motion, Tutor Perini incorporates herein each of the arguments Tutor Perini set forth in opposition to

---

[12] *See* UW's SOF, 102.

Chartis' motion as if fully set forth herein, which are in sum . . . (2) if the Court declines to find that Lloyd's waived its policy defenses by failing to timely disclaim coverage, then the Court should find that Tutor Perini gave notice within a reasonable time (Tutor Perini Opp. Sec. V.C) . . .

It is undisputed that Lloyd's was notified of the Façade Failure at the latest by March, 2009 . . .

. . . up until the time it gave notice, Tutor Perini had a reasonable belief in no liability and in any event Tutor Perini's Risk Manager (whose knowledge is the operative knowledge for the purposes of notice) was not aware of the Façade failure until shortly before notice was given and therefore there was no late notice (TP SOF, ¶49-59) . . .

Opp., 9-11,

In response to Chartis' Motion for Summary Judgment, Perini asserted:

There is substantial evidence that until November 2008, Tutor Perini did not believe that it was liable for the Façade Failure and therefore its duty to provide notice had not been triggered . . . Moreover, factual questions as to whether the MTA had given notice to Chartis before November 2008 and the extent to which Tutor Perini had access to the MTA's policy prevent a grant of summary judgment on this issue . . .

Perini's Opposition to Chartis' Motion for Summary Judgment, 19.

As is clear from Perini's oppositions to the insurers motions for summary judgment, the only excuse Perini proffered as to Underwriters in its summary judgment papers was that until November 2008, it did not believe that it was liable for the Façade Failure. While this may explain why Perini's obligations under the Lloyd's Policy were purportedly excused until November 2008 when Mr. Hughes was allegedly first made aware of the claim and first believed there was an issue of liability, it does not explain why Mr. Hughes waited an additional two months before notifying any insurer of the Façade Failure. Indeed, the record is bereft of any evidence or argument as to the alleged reason/excuse for Perini's additional two month delay. This is a new argument, which cannot be raised for the first time on a motion for reconsideration.

11

*See RST (2005) Inc. v. Research in Motion Limited*, 2009 U.S. Dist. LEXIS 8002, at *6 (2009).

For this reason alone, Perini's motion must be denied.

> 2.      Perini's Two Month Delay Before Notifying Underwriters of the
>         <u>Façade Failure Is Unreasonable As A Matter Of Law</u>

Nevertheless, even if the Court were to consider Perini's arguments in favor of reconsideration, Underwriters are entitled to summary judgment in their favor.   When a notice-of-occurrence provision requires the insured to notify the insurer within a reasonable time under all of the circumstances, the burden is on the insured to demonstrate reasonableness for the delay.  *Simon Property Group, L.P. v. Lumbermen's Mutual Casualty Company*, 459 Fed. Appx. 16, 1 8 (2d Cir. N.Y. 2012).   An insured's obligation to provide notice accrues when "the circumstances known to the insured at the time would have suggested to a reasonable person the possibility of a claim."

Perini has admitted it "first became aware of the possibility of a potential claim on or about November 2008."  Mt. for Recon., 6 (TP SOF ¶50).  Despite having knowledge of the claim it waited two months before purportedly putting Underwriters on notice. Perini has never explained why it waited two months to give notice.

While the question of the reasonableness to give timely notice is generally a question of fact under New York law, a delay may be unreasonable as a matter of law and summary judgment warranted when either no excuse is advanced or there is no credible evidence to support the proffered excuse.  *Simon Property Group, L.P.*, at 18, citing *Olin Corp. v. Ins. Co. of North America*, 966 F.2d 718, 724 (2d Cir. 1992)(emphasis added); *New York v. Blank*, 27 F.3d, 783, 795 (2d Cir.  1994)(New York courts have held that the question whether notice was given within a reasonable time may be determined as a question of law when the insured has not offered a valid excuse for the delay).   Thus, the only way for an insured to avoid the

consequences of its untimely notice under New York law, is for the insured to come forward with a reasonable explanation or excuse for its failure in that regard. *See e.g.*, *Olin Corp. v. Insurance Co. of North America*, 966 F.2d 718, 724 (2d Cir. 1992). In the absence of a reasonable explanation or excuse by the insured, there should be a finding that no coverage exists as a matter of law.[13] *Id.*

No where in its opposition or summary judgment papers does Perini offer any reasonable explanation or excuse regarding why it failed to provide timely notice to Underwriters. Perini's counsel's bare arguments relating to Mr. Hughes' "promptly investigating the claim and which insurance companies to put on notice" are insufficient to constitute a reasonable excuse, do not add up to evidence of any kind and must be ignored.

Even if Perini had presented a sworn statement averring that Perini was unaware of the existence of insurance coverage[14] or that Perini had a reasonable belief regarding non –liability to the MTA, such statements would be belied by Mr. Hughes' sworn testimony which establishes that he was aware of the existence of excess insurance available to Perini and, by November 2008, believed there was an issue of liability. SOF ¶87. The unsupported red herring arguments of Perini's counsel cannot be given any weight.

Perini has not provided a <u>valid</u> excuse for its two month delay nor has it cited to any credible evidence to support any such excuse. Consequently, Perini's delay is unreasonable as a matter of law and summary judgment must enter in Underwriters' favor.

---

[13] Since Perini is unquestionably a commercial business, the standard of reasonableness that must be applied with respect to an excuse is that of a reasonable businessman rather than a layperson. *See e.g.*, *United Statues Liability Ins. Co. v. 204 West 78th St. Housing Corp.*, 2002 U.S. Dist. LEXIS 210 (S.D.N.Y. 2002).

[14] It is well settled that lack of knowledge of the existence of a policy does not excuse late notice. See *Olin Corp. v. Ins. Co. of North America*, 966 F.2d 718, 724 (2d Cir. 1992)(emphasis added); *Eagle Ins. Co. v. Garcia*, 720 N.Y.S.2d 172, 173 (2d Dep't. 2001).

**V.  Endorsement No. 4 of the Lloyd's Policy Does Not Excuse Perini's Late Notice**

Perini argues that the Court overlooked and did not consider Endorsement No. 4 of the Lloyd's Policy which provides as follows:

<u>ENDORSEMENT NO. 4</u>

<u>UNINTENTIONAL FAILURE TO DISCLOSE</u>

The unintentional failure of the first **Named Insured** to disclose all hazards or **Occurrences** existing as of the effective date of this policy shall not prejudice the first **Named Insured** with respect to the insurance afforded by this policy.

A clerical oversight to notify an **Occurrence** will not prejudice your rights.

. . . .

Endorsement No. 4 does not remedy Perini's failure to timely notify Underwriters of the Façade Failure.  Endorsement No. 4 only applies to "clerical" oversights.  Although the Lloyd's Policy does not define the term "clerical", its ordinary meaning is "(of a job or person) concerned with or relating to work in an office, especially routine documentation and administrative tasks."   Oxford  Dictionaries  (Oxford  Univ.  Press  2012)  at http://oxforddictionaries.com/definition/american_english/clerical#clerical__2.   Admittedly, Perini's failure to notify Underwriters was not because of a "clerical" oversight, but rather it was deliberate.[15]  According to Hughes "the issue of excess liability coverage wasn't as important at that time." UW's SOF ¶87.

**VI. Even If The Court Overlooked/Erred In Its Interpretation of the Professional Services Endorsement and/or Perini's Late Notice, Underwriters Are Entitled to Summary Judgment, As A Matter of Law, Because Perini Breached The Voluntary Payment Provision Of The Lloyd's Policy Which Negates Coverage**

Even if the Court overlooked or erred in its interpretation of the Professional Services Endorsement and/or Perini's late notice, Underwriters are entitled to summary judgment, as a matter of law, because Perini breached the voluntary payment provision of the Lloyd's Policy

961584.3

which negates coverage.  It is well settled under New York law that an insured's settlement of an underlying claim without the insurer's consent constitutes a breach of the policy's consent provision and results in no coverage under the policy.  *Sunham Home Fashions v. Diamond State Insurance Company*, 813 F.Supp. 2d 411 (S.D.N.Y. 2011); *Vigilant Insurance Co. v. Bear Stearns Cos, Inc.*, 10 N.Y.3d 170, 884 N.E.2d 1044 (2008).

The Lloyd's Policy provides that "No Insureds will, except at their own cost, voluntarily make a payment, <u>assume any obligation</u>, or incur any expense, other than for first aid, without our consent." SOF ¶96(emphasis added).  It is beyond dispute that Perini failed to comply with this provision on multiple occasions.  For example, the evidence demonstrates as follows:

- as early as January 13, 2009, before Underwriters had notice of the claim, Perini "assumed obligations" by offering to settle the threatened litigation with the MTA.  SOF ¶67.  On this date, Perini offered to repair and/or reconstruct the façade, agreed to warrant the work, agreed to provide inspectors to inspect the work, and agreed to pay the sum of $1 million in order to reimburse the NYCTA for its actual, incurred, out-of-pocket costs.  SOF ¶69.

- On February 9, 2009, Perini made a proposal to the MTA in which it conceded "certain defects in the brick façade" and promised to perform "corrective work in order for the building to meet the requirements of the Contract."  SOF ¶69.

- In an e-mail dated February 13, 2009, Perini's general counsel, Anthony Buccitelli, notified the MTA that "Perini can agree to the sum of $5 million as part of an overall agreement to resolve the 100th Street Bus Depot brick façade issue." SOF ¶¶49, 71 (MTA-SUPP000071).

It is undisputed that the aforementioned assumptions of obligations were made prior to Perini's notice of the Façade Failure to Underwriters and obviously without Underwriters consent.  SOF ¶¶75-76.  This is because Perini admits in its Mot. for Recon. that the broker who placed the Lloyd's Policy did not provide notice of the Façade Failure to Underwriters until March 2009.  Mt. for Recon, 7.  It is undisputed, therefore, that Perini assumed this obligation without Underwriters' consent as Underwriters had no knowledge of the claim.  **Not only did**

---

[15] *See e.g.* Perini's responses to Underwriters' SOF, 87.

961584.3

Perini fail to inform Underwriters of their offers of settlement (i.e., assumed obligations) regarding the Façade Failure to the MTA, but Perini did not contact, consult or obtain Underwriters' consent prior to consummating/executing the Repair Agreement in the summer of 2009. SOF ¶76.   Pursuant to well-established New York law directly on point, Perini failed to satisfy a condition precedent to coverage.   Because Perini failed to obtain Underwriters consent before settling the Façade Failure claim, there is no coverage for the Façade Failure, as a matter of law.

## CONCLUSION

For the foregoing reasons, Perini's request for reconsideration must be denied as the Court properly entered judgment in favor of Underwriters on Perini's declaratory judgment claim.

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: George C. Rockas
George C. Rockas, BBO #544009
George.Rockas@wilsonelser.com
Peri K. Agulnek, BBO #663568
Peri.Agulnek@wilsonelser.com
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
*Attorneys for Third Party Defendant, Certain
Underwriters at Lloyds Subscribing to Policy
No. 576/UF7274400*
260 Franklin Street, 14th Floor
Boston, MA 02110
(617) 422-5300

/s/ Guy J. Levasseur
Guy J. Levasseur
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
3 Gannett Drive
White Plains, NY 10604-3407
914-872-7720

Dated: January 2, 2013

961584.3

<u>**CERTIFICATE OF SERVICE**</u>

I, Peri K. Agulnek, hereby certify that Certain Underwriters at Lloyd's London's Memorandum of Law in Opposition to Tutor Perini's Motion for Reconsideration was filed electronically using the Court's ECF on January 2, 2013 with a copy thereby delivered by email to all counsel.

<u>/s/ Peri K. Agulnek</u>

17

961584.3