UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILLINOIS NATIONAL INSURANCE COMPANY, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>         Plaintiffs,<br><br>v.<br><br>TUTOR PERINI CORPORATION,<br><br>         Defendant. | CASE NO. 11-CV-00431 (KBF) |
| TUTOR PERINI CORPORATION,<br><br>         Counter-Plaintiff,<br><br>v.<br><br>ILLINOIS NATIONAL INSURANCE COMPANY, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>         Counter-Defendants, | |

**TUTOR PERINI'S REPLY IN FURTHER SUPPORT OF
ITS MOTION FOR RECONSIDERATION**

## TABLE OF CONTENTS

Page(s)

I. The Professional Services Liability Endorsement Does Not Require an "Occurrence" as Defined by the Policy ................................................................. 1

II. Lloyd's Waived Its Policy Defenses By Failing to Timely Disclaim Coverage ....... 4

III. Because Tutor Perini Has Offered Legitimate Excuses for Delay in Giving Notice, Late Notice Cannot be Found as a Matter of Law ................................................. 7

IV. Lloyd's Cannot Rely on the Voluntary Payments Clause to Deny Coverage ........ 9

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*1325 North Van Buren, LLC v. T-3 Group, Ltd.*,
  716 N.W.2d 822 (Wis. 2006) ..................................................................................... 3

*Allstate Ins. Co. v. Sullivan*,
  230 A.D.2d 732 (2d Dep't 1996) ................................................................................ 6

*Atlantic Mut. Ins. Co. v. Continental Nat'l Am. Ins. Co.*,
  302 A.2d 177 (N.J. Super. Ct. 1973) .......................................................................... 3

*Brosnahan Builders, Inc. v. Harleysville Mut. Ins. Co.*,
  137 F. Supp. 2d 517 (D. Del. 2001), *aff'd*, 2003 WL 146486 (3d Cir. 2002) ............... 3

*Burt Rigid Box, Inc. v. Travelers Prop. & Cas. Corp.*,
  302 F.3d 83 (2d Cir. 2002) ..................................................................................... 5, 6

*Cohen v. Utica First Ins. Co.*,
  436 F. Supp. 2d 517 (E.D.N.Y. 2006) ........................................................................ 8

*Continental Cas. Co. v. JBS Constr. Mgmt., Inc.*,
  No. 09 Civ. 6697(JSR), 2010 WL 2834898 (S.D.N.Y. July 1, 2010) .......................... 3

*Eagle Ins. Co. v. Garcia*,
  280 A.D.2d 476 (2d Dep't 2001) ............................................................................ 8, 9

*Erie Ins. Exch. v. Colony Dev. Corp.*,
  Nos. 02AP-1087, 02AP-1088, 2003 WL 23096010 (Ohio Ct. App. Dec. 31,
  2003) ........................................................................................................................... 4

*Fairmont Funding, Ltd. v. Utica Mut. Ins. Co.*,
  264 A.D.2d 581 (1st Dep't 1999) ................................................................................ 7

*Greater New York Savings Bank v. Travelers Ins. Co.*,
  173 A.D.2d 521 (2d Dep't 1991) ................................................................................ 6

*Hartford Accident & Indem. Co. v. CNA Ins. Cos.*,
  99 A.D.2d 310 (1st Dep't 1984) ................................................................................. 8

*Homestead Village Assoc. v. Diamond State Ins. Co.*,
  818 F. Supp. 2d 642 (E.D.N.Y. 2011) ........................................................................ 8

*Incorporated Village of Pleasantville v. Calvert Ins. Co.*,
  204 A.D.2d 689 (2d Dep't 1994) ................................................................................ 6

*JMZ USA, Inc. v. Lumbermens Mut. Cas. Co.*,
  36 A.D.3d 555 (1st Dep't 2007) ..................................................................................6, 7

*Lumbermens Mut. Cas. Co. v. Flow Int'l Corp.*,
  844 F. Supp. 2d 286 (N.D.N.Y. 2012) .......................................................................6, 7

*MBIA Inc. v. Fed. Ins. Co.*,
  652 F.3d 152 (2d Cir. 2011) .....................................................................................5, 10

*Nunez v. U.S. Underwriters Ins. Co.*,
  31 Misc. 3d 418 (N.Y. Sup. Ct. 2011) ............................................................................7

*Only Natural, Inc. v. Realm Nat'l Ins. Co.*,
  37 A.D.3d 436 (2d Dep't 2007) .................................................................................6, 7

*Shrader v. CSX Transp., Inc.*,
  70 F.3d 255 (2d Cir. 1995) ............................................................................................1

*Simon Prop. Group, L.P. v. Lumbermen's Mut. Cas. Co.*,
  459 F. App'x 16 (2d Cir. 2012) .....................................................................................8

*State Farm Auto. Ins. Co. v. Blanco*,
  208 A.D.2d 933 (2d Dep't 1994) ...................................................................................5

*State of N.Y. v. Blank*,
  27 F.3d 783 (2d Cir. 1994) ............................................................................................8

*State of New York v. AMRO Realty Corp.*,
  936 F.2d 1420 (2d Cir. 1991) ........................................................................................5

*Sunham Home Fashions, LLC v. Diamond State Ins. Co.*,
  813 F. Supp. 2d 411 (S.D.N.Y. 2011) .........................................................................10

*Town of Massena v Healthcare Underwriters Mut. Ins. Co.*,
  40 A.D.3d 1177 (3d Dep't 2007) ...................................................................................3

*U.S. Fid. & Guar. Co. v. Continental Cas. Co.*,
  505 N.E.2d 1072 (Ill. App. Ct. 1987) ............................................................................3

*United States Fid. & Guar. Co. v. Weiri*,
  265 A.D.2d 321 (2d Dep't 1999) ...................................................................................6

*Vigilant Ins. Co. v. Bear Stearns Cos.*,
  10 N.Y.3d 170 (2008) ..................................................................................................10

*Wimberly Allison Tong & Goo, Inc. v. Travelers Prop. Cas. Co. of America*,
  559 F. Supp. 2d 504 (D.N.J. 2008), *aff'd*, 352 F. App'x 642 (3d Cir. 2009) ................3

nydocs1-1002423.3

## Introduction

As noted in Tutor Perini's Opening Brief, the Court should grant Tutor Perini's Motion for Reconsideration (the "Motion")[1] because the Court's prior decision overlooked important facts that would reasonably be expected to alter the Court's Order. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Specifically, the Order (1) presents no indication that the Court considered the possibility of coverage under the Professional Services Endorsement (the "Endorsement"); (2) overlooked caselaw and facts which would support the conclusion that there is at least a question of material fact as to whether Lloyd's waived its late notice and voluntary payments defenses; and (3) overlooked important Policy provisions and that, in its prior briefing to the Court, Tutor Perini offered multiple, substantiated and reasonable excuses as to the timing of its notice to Lloyd's which should have resulted in the Court finding that there was a question of material fact with regard to whether Tutor Perini's notice to Lloyd's was timely. For all of these reasons and those asserted in Tutor Perini's Opening Brief, the Court should grant Tutor Perini's Motion.

## Argument

**I.   The Professional Services Liability Endorsement Does Not Require an "Occurrence" as Defined by the Policy**

Lloyd's argues that Tutor Perini's motion for reconsideration should be denied because the Court correctly determined that there was no "occurrence" under the Policy and that because there allegedly was no "occurrence," coverage under the Endorsement was not triggered. Opp. Br. at 3-6. While Tutor Perini is not challenging

---

[1] Capitalized terms not defined herein shall have the same meaning as that set forth in Tutor Perini's Opening Brief in support of its Motion for Reconsideration or Tutor Perini's Counter-Statement of Additional Material Facts filed with Tutor Perini's Responses and Objections to Lloyd's multiple Statements of Undisputed Facts, dated September 7, 2012 (Docket No.107).

nydocs1-1002423.3

the part of the Order determining whether there was an "occurrence" under the Policy for the purposes of this Motion, Tutor Perini maintains that there was an "occurrence" that triggered coverage for the Façade Failure for all the reasons set forth in Tutor Perini's Opposition to Underwriters' Motion for Summary Judgment.[2] However, even if the Court correctly found that there was no "occurrence," there is still coverage under the Endorsement, which provides coverage "for **Bodily Injury** and **Property Damage** arising from the rendering of or failure to render Professional Services." TP SOF ¶ 92; UW's SOF ¶97.

It is well-settled that professional liability coverage is distinct from and triggered by different events than CGL coverage:

> [P]rofessional liability insurance covers damages resulting from the professional negligence of architects, engineers, construction managers, and design-build entities. . . .
>
> <u>Coverage is triggered by a claim consisting, in part, of an allegation of a professionally negligent error or omission</u>. While technically there is no coverage for the failure of a designer or construction professional to satisfactorily perform a particular contract requirement, such breaches often constitute negligent acts, errors, or omissions and coverage is afforded by a professional liability policy.
>
> . . . .
>
> With the advent of design-building and construction management, it is often essential for contractors to obtain professional liability insurance. Many contractors hire staff architects and engineers who perform design work, provide construction management services, provide construction inspection services for the work of other contractors and designers, and provide advice on project budgeting and

---

[2] Lloyd's argues that an occurrence is required to trigger coverage under the Endorsement. Opp. Br. at 3-5. For the reasons set forth in its Opposition to Chartis's Motion for Summary Judgment at Sections I-IV (Docket No. 106) and its Opposition to Lloyd's Motion for Summary Judgment at Sections I-IV (Docket No. 105), Tutor Perini disagrees with this point and incorporates such briefing, including the sections in which Tutor Perini distinguished from this action the cases Lloyd's cites in its Opposition Brief, in reply to Tutor Perini's arguments as if fully set forth herein.

2

nydocs1-1002423.3

> financing. The contractor that engages in these activities
> should procure professional liability insurance. <u>This can be
> done either by obtaining a separate professional liability
> policy or endorsing the contractor's CGL or umbrella policy
> to obtain professional liability coverage</u>.

Construction Disputes Prac. Guide with Forms § 10.10, Errors and Omissions Insurance (West 2012) (emphasis added).

Moreover, the clear language of the Endorsement here does not require that there be an "occurrence" to trigger professional services liability coverage. TP SOF ¶ 92; UW's SOF ¶97. Rather, the Endorsement is triggered by the rendering of or failure to render professional services and interpreting the Endorsement accordingly is in line with professional services liability coverage generally. *See, e.g.*, *Town of Massena v Healthcare Underwriters Mut. Ins. Co.*, 40 A.D.3d 1177, 1181 (3d Dep't 2007).

Lloyd's argues that, even if no occurrence is required to trigger coverage, the Endorsement allegedly does not cover the Failure because it did not arise from the rendering or failure to render Professional Services, a term not defined in the Policy. Opp. Br. at 5-6. These arguments fail because Courts have found that professional services includes a general contractor's supervisory, inspection or engineering services. *See Continental Cas. Co. v. JBS Constr. Mgmt., Inc.*, No. 09 Civ. 6697(JSR), 2010 WL 2834898, at *5 (S.D.N.Y. July 1, 2010); *Brosnahan Builders, Inc. v. Harleysville Mut. Ins. Co.*, 137 F. Supp. 2d 517, 527 (D. Del. 2001), *aff'd*, 2003 WL 146486 (3d Cir. 2002).[3]

---

[3] *See also 1325 North Van Buren, LLC v. T-3 Group, Ltd.*, 716 N.W.2d 822, 826 (Wis. 2006); *U.S. Fid. & Guar. Co. v. Continental Cas. Co.*, 505 N.E.2d 1072, 1075 (Ill. App. Ct. 1987); *Atlantic Mut. Ins. Co. v. Continental Nat'l Am. Ins. Co.*, 302 A.2d 177, 181 (N.J. Super. Ct. 1973). *Cf. Wimberly Allison Tong & Goo, Inc. v. Travelers Prop. Cas. Co. of America*, 559 F. Supp. 2d 504, 512-13 (D.N.J. 2008), *aff'd*, 352 F.

3

Under the Design and Building Contract for the Bus Depot, Tutor Perini was responsible for the design and construction of the building. TP SOF ¶ 2. Tutor Perini hired several subcontractors to perform work pursuant to the Contract, including Advance Testing Co. ("Advance Testing"), a quality assurance monitor, who was responsible for monitoring the work performed on the façade and informing Tutor Perini of any irregularities. TP SOF ¶¶ 7, 48. The WJE report stated that the steel columns behind the bricks of the façade were spaced incorrectly causing the cavity in between the bricks and the steel columns to vary in size making it "impossible for the bricks on the other side of the cavity to be installed property. TP SOF ¶ 48. This "caused the bricks to become defective and led to the Façade Failure." TP SOF ¶ 48. Had Advance Testing properly monitored the placement of the columns and construction of the façade, it would have known that the cavity size was irregular and notified Tutor Perini of that problem, as it was hired to do. Moreover, the MTA claimed that there was a quality issue implicated in the Façade Failure, i.e., that Advance Testing had not done its job properly. TP SOF ¶48. Such claim is sufficient to trigger coverage under the Endorsement.

Accordingly, the Court should find that there is at least an issue of material fact as to whether the Endorsement covers the Façade Failure and grant Tutor Perini's Motion for Reconsideration.

## II. Lloyd's Waived Its Policy Defenses By Failing to Timely Disclaim Coverage

Lloyd's argues in its Opposition Brief that the Court cannot find that Lloyd's waived its coverage defenses because Tutor Perini allegedly has not shown any

---

App'x 642 (3d Cir. 2009); *Erie Ins. Exch. v. Colony Dev. Corp.*, Nos. 02AP-1087, 02AP-1088, 2003 WL 23096010, at *10 (Ohio Ct. App. Dec. 31, 2003).

4

prejudice from Lloyd's failure to deny coverage. Opp. Br. at 6-9. However, Lloyd's Brief conflates waiver and estoppel. Opp. Br. at 6. As noted by the Second Circuit,

> Waiver and estoppel are distinct in New York insurance law. Waiver is the "voluntary and intentional relinquishment of a known right. Courts may find waiver where, for example, an insurance company disclaims coverage for failure to satisfy one condition precedent but neglects to assert other such conditions." Estoppel, on the other hand, arises where an insurer acts in a manner inconsistent with a lack of coverage, and the insured reasonably relies on those actions to its detriment. Thus, estoppel requires a showing of prejudice to the insured.

*Burt Rigid Box, Inc. v. Travelers Prop. & Cas. Corp.*, 302 F.3d 83, 95 (2d Cir. 2002) (quoting *Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 698 (1980)). *See also State of New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1431 (2d Cir. 1991). Tutor Perini has met both of these standards.

With regard to waiver, Tutor Perini gave notice of the Façade Failure in January 2009. TP SOF ¶ 60. There can be no dispute that Lloyd's had notice of the Façade Failure at least by March 2009 when Tutor Perini's broker forwarded the January 2009 notice to Lloyd's and Lloyd's hired a third party administrator to monitor Tutor Perini's claim shortly thereafter. TP SOF ¶¶ 57-58, 60, 63. However, Lloyd's failed to issue a reservation of rights or otherwise communicate its position with regard to coverage for the Failure until Tutor Perini filed a coverage action against Lloyd's in Massachusetts. TP SOF ¶¶ 65-71. These facts establish that there is at least an issue of material fact as to whether Lloyd's voluntarily and intentionally relinquished its right to deny coverage for the Façade Failure. *See MBIA Inc. v. Fed. Ins. Co.*, 652 F.3d 152, 170 (2d Cir. 2011); *State Farm Auto. Ins. Co. v. Blanco*, 208 A.D.2d 933, 934 (2d Dep't 1994).

5

With regard to estoppel, Lloyd's acted inconsistently with a lack of coverage by failing to disclaim coverage for almost two and half years after Tutor Perini gave notice of the claim. TP SOF ¶ 69; *Burt Rigid*, 302 F.3d at 95 (an "unreasonable delay in disclaiming coverage" is "an action inconsistent with a lack of coverage"). Tutor Perini was prejudiced by Lloyd's failure to disclaim coverage as it was forced to proceed without knowing whether there would be insurance coverage for the Failure. Since as of June 2009, the MTA had not allowed Tutor Perini back on site to inspect the damage since it occurred, Tutor Perini had to take action in order to gain access to the Bus Depot. TP SOF ¶¶ 72-73.[4] Throughout that time period, Tutor Perini attempted to contact Lloyd's multiple times for a copy of the Policy and the status of the claim. TP SOF ¶ 68. Had Lloyd's responded to Tutor Perini's entreaties, Tutor Perini would have involved Lloyd's in the settlement thereby avoiding litigation over whether Tutor Perini's settlement with the MTA constituted a voluntary payment. *See United States Fid. & Guar. Co. v. Weiri*, 265 A.D.2d 321, 322 (2d Dep't 1999); *Allstate Ins. Co. v. Sullivan*, 230 A.D.2d 732, 732-33 (2d Dep't 1996); *Incorporated Village of Pleasantville v. Calvert Ins. Co.*, 204 A.D.2d 689, 690 (2d Dep't 1994); *Greater New York Savings Bank v. Travelers Ins. Co.*, 173 A.D.2d 521, 522 (2d Dep't 1991).

The cases Lloyd's cites in its Opposition Brief do not compel a different result for several reasons. First, all of those cases only address estoppel, not waiver. *See Lumbermens Mut. Cas. Co. v. Flow Int'l Corp.*, 844 F. Supp. 2d 286, 310 (N.D.N.Y. 2012); *JMZ USA, Inc. v. Lumbermens Mut. Cas. Co.*, 36 A.D.3d 555, 557 (1st Dep't 2007); *Only Natural, Inc. v. Realm Nat'l Ins. Co.*, 37 A.D.3d 436, 439 (2d Dep't 2007);

---

[4] Lloyd's assertion that Tutor Perini allegedly "assumed obligations" to the MTA as early as January 13, 2009 are unsubstantiated. Opp. Br. at 8; Tutor Perini's Response to UW SOF ¶ 68.

6

nydocs1-1002423.3

*Fairmont Funding, Ltd. v. Utica Mut. Ins. Co.*, 264 A.D.2d 581, 581-582 (1st Dep't 1999); *Nunez v. U.S. Underwriters Ins. Co.*, 31 Misc. 3d 418, 422 (N.Y. Sup. Ct. 2011). Second, the cases are distinguishable from the instant proceeding because in none of those cases, unlike here, did the plaintiffs allege or otherwise show that they were prejudiced by the insurance company's delay in disclaiming coverage. *See Flow Int'l Corp.*, 844 F. Supp. 2d at 310; *JMZ USA, Inc.*, 36 A.D.3d at 557; *Only Natural, Inc.*, 37 A.D.3d at 439; *Fairmont Funding, Ltd.*, 264 A.D.2d at 581-582; *Nunez*, 31 Misc.3d at 422.

### III. Because Tutor Perini Has Offered Legitimate Excuses for Delay in Giving Notice, Late Notice Cannot be Found as a Matter of Law

Lloyd's argues that Tutor Perini's arguments regarding late notice must fail because the Court considered Tutor Perini's late notice arguments and ruled against it on that issue. Opp. Br. at 9-10. Lloyd's also argues that Tutor Perini previously offered no excuse as to why its Risk Manager delayed two months in giving notice of the Failure. Opp. Br. at 12-13. However, it is clear that the Order did not address Endorsement No. 8 to the Lloyd's Policy, which states that "[k]nowledge of an **Occurrence**, claim or **Suit** shall only be knowledge to the **Insured** if" Tutor Perini's risk management department (i.e. Mr. Hughes) has received such notice,[5] which was in November 2008. Order at 8, 14-16; UW SOF ¶ 97. Nor did the Court address Endorsement No. 4 to the Lloyd's Policy, which states that "[a] clerical oversight ['such as when notice isn't posted on time or to the appropriate person'] to notify an Occurrence will not prejudice your rights." TP SOF ¶¶ 59, 94.

---

[5] As noted in Tutor Perini's Opening Brief on page 17, as the Lloyd's Policy provided coverage to Tutor Perini through owner controlled insurance endorsements and also contains a "Cross Liability Endorsement," Endorsement No. 8 must be read to impute knowledge to Tutor Perini only if Tutor Perini's risk management department received such notice.

7

nydocs1-1002423.3

Moreover, Lloyd's ignores that in prior briefing to the Court, Tutor Perini offered multiple explanations for the two month delay which is sufficient basis for the Court to deny summary judgment on the notice issue. Tutor Perini's Opp. to Chartis's Summary Judgment Motion at 19; Tutor Perini's Opp. to Lloyd's Summary Judgment Motion at 9-10.[6] Specifically, Tutor Perini has asserted that it delayed in giving notice at least because (1) Tutor Perini had a good faith belief that it was not liable for the Façade Failure (TP SOF ¶¶49-59 ) and (2) Tutor Perini did not have access to the Lloyd's Policy to determine whether there was coverage (TP SOF ¶ 68). *See Blank*, 27 F.3d at 795; *Homestead Village Assoc. v. Diamond State Ins. Co.*, 818 F. Supp. 2d 642 (E.D.N.Y. 2011); *Cohen v. Utica First Ins. Co.*, 436 F. Supp. 2d 517 (E.D.N.Y. 2006).

The cases Lloyd's cites in support of its argument for late notice are distinguishable from this case. In none of those cases was there any indication that the policies at issue contained provisions such as Endorsement No. 8 or Endorsement No. 4 or bore any resemblance to the complex insurance program at issue here, involving multiple layers of coverage and multiple insurance companies, and in which the MTA procured and had exclusive custody of the policies under which Tutor Perini was seeking coverage. *See Simon Prop. Group, L.P.v. Lumbermen's Mut. Cas. Co.*, 459 F. App'x 16, 17-18 (2d Cir. 2012); *Eagle Ins. Co. v. Garcia*, 280 A.D.2d 476, 477 (2d Dep't 2001) In addition, in those cases, unlike here, either no excuse was proffered for the delay in giving notice or such excuse was completely meritless. *Simon Prop. Group, L.P.*, 459 F. App'x at 18; *Garcia*, 280 A.D.2d at 477.[7]

---

[6] *See Hartford Accident & Indem. Co. v. CNA Ins. Cos.*, 99 A.D.2d 310, 313 (1st Dep't 1984). *See also State of N.Y. v. Blank*, 27 F.3d 783, 795 (2d Cir. 1994).

[7] In *Garcia*, 280 A.D.2d at 477, the Court held that "[a]n insured's ignorance of his or her insurance carrier constitutes gross negligence and is not a valid excuse for the failure to provide the carrier with timely

8

Accordingly, because Tutor Perini has offered several excuses as to why Tutor Perini waited until January 2009 to provide Lloyd's with notice of the claim, whether Tutor's Perini's delay in giving notice was reasonable is a question of fact.

## IV. Lloyd's Cannot Rely on the Voluntary Payments Clause to Deny Coverage

Lloyd's attempts to argue that Tutor Perini's claim is barred by the voluntary provision of the Lloyd's Policy because Tutor Perini allegedly "assumed obligations" with the MTA as early as January 13, 2009. Opp. Br. at 15. The "facts" Lloyd's cites in support of its argument do nothing other than to show that Tutor Perini was engaged in discussions with the MTA, a matter of which Lloyd's was likely aware. TP SOF ¶ 61. They do not change the indisputable fact that no agreement was reached between Tutor Perini and the MTA until June 2009. TP SOF ¶¶ 72-73.

Moreover, these "facts" do nothing to dispute that Lloyd's had notice of the Façade Failure by April 2009 at which point Lloyd's had hired a third-party claim administrator to monitor Tutor Perini's claim. TP SOF ¶ 63. Tutor Perini sent additional notices to Lloyd's requesting copies of the Policy and inquiring about the status of its claim. TP SOF ¶ 68. Accordingly, it is reasonable to conclude that Lloyd's <u>knew</u> about the Façade Failure by April 2009 and <u>knew</u> that the MTA and Tutor Perini were in discussions to resolve the MTA's damages claim, but still decided not to respond to Tutor Perini's claim for coverage. It is clear that Lloyd's either waived the voluntary

---

notice." (citation omitted). While such a rule might make sense for cases involving first-party auto insurance policies like *Garcia*, it should not apply to cases such as that at bar where the party seeking coverage was making a claim under another entity's policy and that entity procured and maintained custody over the policy, which was part of a complex program involving multiple layers of coverage and multiple insurance companies.

9

payments clause or should be estopped from asserting such clause in defense to coverage here.  *MBIA Inc.*, 652 F.3d at 169.  *See also* cases cited *supra* at Section II.

The cases Lloyd's relies upon to support its voluntary payment defense are of little guidance because those cases do not involve facts like those here, where the insurance company was informed of the claim <u>months</u> before any agreement was reached and was invite to participate in negotiations but declined to do so.  *See Sunham Home Fashions, LLC v. Diamond State Ins. Co.*, 813 F. Supp. 2d 411, 414-415 (S.D.N.Y. 2011); *Vigilant Ins. Co. v. Bear Stearns Cos.*, 10 N.Y.3d 170, 175 (2008).  Accordingly, the Court should grant Tutor Perini's Motion for Reconsideration.

### Conclusion

For all the reasons asserted herein and in Tutor Perini's Opening Brief, the Court should grant Tutor Perini's Motion for Reconsideration.

Dated:  New York, New York
        January 14, 2013

Respectfully submitted,

By: /s/ Carrie Maylor DiCanio
    Finley T. Harckham, Esq.
    Alexander D. Hardiman, Esq.
    Carrie Maylor DiCanio, Esq.
    Vianny M. Pichardo, Esq.
    ANDERSON KILL & OLICK, P.C.
    1251 Avenue of the Americas
    New York, New York 10020
    Telephone: (212) 278-1000
    Fax: (212) 278-1733
    *Attorneys for Defendant and Third-Party Plaintiff Tutor Perini Corporation*