UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ILLINOIS NATIONAL INSURANCE COMPANY, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

                          Plaintiffs,

          - against -

TUTOR PERINI CORPORATION,

                                 X
-----------------------------------------------------------------------
TUTOR PERINI CORPORATION,

                        Third-Party Plaintiff,

          - against -

CERTAIN UNDERWRITERS AT LLOYD'S LONDON

                       Third-Party Defendant.
-----------------------------------------------------------------------X

Case No.: 11-CV-00431 (KBF)


# CERTAIN UNDERWRITERS AT LLOYD'S, LONDON'S[1] SUR-REPLY IN FURTHER SUPPORT OF THEIR OPPOSITION TO TUTOR PERINI'S MOTION FOR RECONSIDERATION

---

[1] Certain Underwriters at Lloyd's, London who subscribe to Policy No. 576/UF7274400 ("Underwriters").

966065.3

The Third-Party Defendant, Underwriters, respectfully submit this sur-reply in further support of their opposition to the Third-Party Plaintiff, Tutor Perini Corporation's ("Perini") *Motion for Reconsideration* of this Court's November 15, 2013 Order (the "Order") entering judgment in favor of Underwriters on Perini's declaratory judgment claim.

### I. The Endorsement for Professional Services Does Not Obviate Perini's Burden of Establishing that the Façade Failure is an "Occurrence" under the Policy.

The linchpin of Perini's argument is its attempt to negate the dispositive effect of the Policy's "occurrence" condition by arguing that the endorsement does not require that there be an "occurrence" to trigger coverage. *See* Mt. For Recon., 12. Perini is mistaken. The Endorsement modifies the Lloyd's Policy by adding an additional coverage, it does not replace, alter or amend the requirement that an "occurrence" must take place in order to trigger coverage. The Endorsement specifically states that "[a]ll other terms and conditions [of this policy] remain unchanged." UW's SOF ¶97[2] (emphasis added).

It is well settled that a policy is read as a whole and "in construing an endorsement to an insurance policy, the endorsement and the policy must be read together, and the words of the policy remain in full force and effect except as altered by the words of the endorsement." *Response Pers., Inc. v. Hartford Fire Ins. Co.*, 812 F. Supp. 2d 309 (S.D.N.Y. 2011). "An insurance contract should not be read so that some provisions are rendered meaningless" *Richner Commc'ns, Inc. v. Tower Ins. Co.*, 72 A.D. 3d 670, 671. Further, "[w]hen an endorsement indicates that it leaves the terms and conditions of the policy unchanged, the endorsement does not abrogate or nullify the terms and conditions of a policy element not explicitly referred to in

---

[2] Cites to "UW's SOF" refer to the paragraph numbers in Underwriters' Statement of Undisputed Facts in Support of Summary Judgment, dated July 27, 2012 (Paper #73).

the endorsement." *U. S. Underwriters, Ins. Co. v. Kum Gang Inc.,* 443 F.Supp. 2d 348, 358 (E.D.N.Y. 2006), citing *Birnbaum v. Jamestown Mut. Ins. Co.*, 298 N.Y. 305 (1948).

Under the principles followed in the above cited cases, in order for coverage under the Endorsement to attach, Perini must first prove that the Façade Failure is an "occurrence".

## II. UNDERWRITERS DID NOT WAIVE ANY COVERAGE DEFENSES INCLUDING, BUT NOT LIMITED TO, THE NOTICE AND VOLUNTARY PAYMENT PROVISIONS

Perini argues that Underwriters have waived their right to disclaim based on its late notice and violation of the voluntary payment provision. "Waiver occurs when a party intentionally relinquishes a known right." *United States Liab. Ins. Co. v. Winchester Fine Arts Servs.*, 337 F. Supp. 2d 435, 452 (S.D.N.Y. 2002). "It must be predicated upon full knowledge of all the facts upon which the existence of the right depends." *Bellefonte Re-Ins. Co. v. Volkswagenwerk AG*, 476 N.Y.S.2d 890, 894 (1st Dep't 1984) (concurring opinion of Silverman, J.) (quoting *S.& E. Motor Hire Corp. v. New York Indemnity Co.*, 255 N.Y. 69, 72(1930)).

In order to establish waiver, an insured <u>must submit evidence that tends to show the insurance company intended to abandon a specific known defense</u>. *Commercial Union Ins. Co. v. Int'l Flavors & Fragrances*, 822 F.2d 267, 274 (2d Cir. 1987); *see also United States Liab. Ins. Co. v. Winchester Fine Arts Servs.*, 337 F. Supp. 2d 435, 452 (S.D.N.Y. 2004); *New York v. Amro Realty Corp.*, 936 F.2d 1420, 1431 (2d Cir. 1991); *Asbeka Indus. v. Travelers Indem. Co.*, 831 F. Supp. 74, 86 (E.D.N.Y. 1993); *Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 698 (N.Y. 1980). In the context of insurance, Courts typically find waiver where, for example, an insurer asserts a disclaimer based upon an alleged failure to satisfy one condition precedent or based upon a claim of non-coverage followed by a later disclaimer based upon an alleged failure to satisfy another such condition. *Burt Rigid Box, Inc. v. Travelers Property Cas. Corp.*, 302 F.3d 83 (2nd Cir. 2002).

1. <u>LATE NOTICE</u>

Here, Perini has failed to establish that Underwriters intended to abandon its late-notice defense and the cases it relies upon can be distinguished. In *State of New York v. Amro Realty Corp.*, 936 F.2d 1420, 1432 (2d Cir. 1991), for example, the plaintiff did not give notice to the defendant, its insurer, of the plaintiff's potential environmental liabilities until four years after the first lawsuit was filed against the plaintiff. In response to this notice, the insurer sent several letters to the plaintiff <u>disclaiming coverage on various grounds, but not including late notice</u>. Later, the insurer sought to invoke a defense of late notice. Reversing the district court's grant of summary judgment in favor of the insurer based on the insured's untimely notice, the Second Circuit held that the act by the insurer of disclaiming on certain grounds but not others was deemed conclusive evidence of an insurer's intent to waive the unasserted grounds. *Id.* at 1432.

In the present case, Perini admits, upon receiving notice of the Façade Failure at least by March 2009, Underwriters <u>never</u> made any contact with Perini with regard to coverage of the Façade Failure until almost two and a half years after the claim was submitted when it answered Perini's complaint in a related action in Massachusetts in August 2011. TP SOF ¶¶65-71. Thus, Underwriters neither made any statements regarding coverage until their disclaimer, nor did they give any other indication to Perini that they intended to provide a defense or indemnity regarding the Façade Failure. Perini has simply failed to put forth any facts to support the contention that Underwriters manifested an intention to waive their right to disclaim liability.

Equally unavailing is any argument that Underwriters' silence in never expressing an intent to accept or deny coverage constitutes waiver. In order to prove implied waiver, i.e., where an insurer's waiver is unexpressed, but clearly inferred from the circumstances, an insured must submit evidence of an insurer's <u>intention</u> to waive a policy provision, or when there is no such intention in fact, an insured must show that the conduct of the insurer has misled the insured

3

into acting on a reasonable belief that the company has waived some provision of the policy to their detriment. *Kiernan v. Dutchess County Mut. Ins. Co.*, 150 N.Y. 190, 194 (N.Y.S. 1896), citing *Armstrong v. Agricultural Ins. Co.*, 130 N.Y. 560, 559 (N.Y.S. 1982)("in every case where a waiver has been implied from the defendant's acts, there has existed something of the element of an estoppel. The plaintiff has been misled to his harm").

None of these elements exist here. First, Perini has no evidence that Underwriters' <u>intended</u> to forfeit any of their policy defenses, including late notice, nor has it proffered any evidence that Underwriters' silence misled it into acting on a <u>reasonable</u> belief that Underwriters waived their defense. Perini asserts, albeit without any evidence, that it "was forced to proceed <u>without knowing whether there would be insurance coverage for the Failure</u>." Reply, 6. This statement demonstrates that Perini <u>did not</u> know whether Underwriters waived the late notice defense. Thus, Perini cannot now in good faith argue that it detrimentally relied upon Underwriters' silence under the auspices of coverage.

### 2. B<small>REACH OF</small> V<small>OLUNTARY</small> P<small>AYMENT</small> P<small>ROVISION</small>

Equally inapt is Perini's argument that Underwriters waived their right to rely on Perini's violation of the voluntary payments clause because it allegedly "<u>knew</u> about the Façade Failure by April 2009 and <u>knew</u> that the MTA and Tutor Perini were in discussions to resolve the MTA's damages claim, but still decided not to respond to Tutor Perini's claim for coverage." (emphasis in original). Reply, 9.

As stated above, waiver "must be predicated upon <u>full knowledge</u> of all the facts upon which the existence of the right depends." 476 N.Y.S.2d 890, 894 (1st Dep't 1984). Perini has failed to come forth with any evidence demonstrating that Underwriters had knowledge of Perini's settlement discussions (or consummation of settlement) with the MTA. This is because "Perini did not adduce any evidence - -despite its assertion to the contrary - - that it invited the

4

966065.3

Chartis Insurers [nor Underwriters] to participate in Tutor Perini's settlement negotiations with the MTA." *See Order*, 16. Thus "Perini's argument that the Chartis Insurers [and in-turn Underwriters'] delay[] in denying coverage even after being informed of a claim in January 2009 cannot work because Tutor Perini had consummated the settlement agreement (i.e., "assumed obligations") with the MTA prior to providing notice to the Chartis Insurers [and Underwriters]." *See Order*, 16.

Stated another way, Underwriters could not have waived any right to disclaim coverage based on Perini's failure to comply with the voluntary payment provision of the Lloyd's Policy because it is undisputed that Underwriters did not have knowledge of this defense, i.e., Perini's settlement with the MTA, until discovery in the instant action. UW's SOF ¶73. As the record demonstrates, Perini did not inform any of its insurers that it was negotiating the Repair Agreement and did not invite any of them to participate in the negotiation. UW's SOF ¶75. Nor did Perini provide a copy of the Repair Agreement to any of its insurers before it was signed on June 22, 2009. UW's SOF ¶75. Perini did not contact, consult or obtain Underwriters' consent prior to entering into the Repair Agreement. UW's SOF ¶76. Indeed, <u>Underwriters knew nothing</u> about the settlement until discovery in the instant action.

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: /s/ Peri K. Agulnek
George C. Rockas, BBO #544009
George.Rockas@wilsonelser.com
Peri K. Agulnek, BBO #663865
Peri.Agulnek@wilsonelser.com
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
*Attorneys for Third Party Defendant*
260 Franklin Street, 14th Floor
Boston, MA 02110
(617) 422-5300

Dated: January 25, 2013

5

966065.3

## CERTIFICATE OF SERVICE

      I, Peri K. Agulnek, hereby certify that the foregoing document was filed electronically using the Court's ECF on January 25, 2013 with a copy thereby delivered by email to all counsel.

/s/ Peri K. Agulnek