UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ILLINOIS NATIONAL INSURANCE
COMPANY, THE INSURANCE COMPANY OF
THE STATE OF PENNSYLVANIA, and
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

                     Plaintiffs,

        -v-

TUTOR PERINI CORPORATION,
                    Defendant.

------------------------------------------------------------X

TUTOR PERINI CORPORATION,

                 Third-Party Plaintiff,

        -v-

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

                 Third-Party Defendant.

------------------------------------------------------------X

11 Civ. 431 (KBF)

MEMORANDUM
DECISION & ORDER

KATHERINE B. FORREST, District Judge:

    The Chartis Insurers[1] here sue Tutor Perini seeking a declaration that they were not obligated to provide insurance coverage for the Façade Failure, a collapse of an area of masonry at a project Tutor Perini constructed for the New York MTA.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Court's Memorandum Decision & Order dated November 15, 2012 (docket no. 128).

1

In addition to disputing that claim, Tutor Perini sued Lloyd's seeking a declaration that Lloyd's must provide coverage for the Façade Failure. The Chartis Insurers and Lloyd's both moved for summary judgment, and the Court granted both motions and terminated this action. (See docket no. 128 (the "MSJ Order").)

Tutor Perini has now moved for reconsideration of that portion of the MSJ Order granting summary judgment for Lloyd's. Tutor Perini does not argue that the Court improperly concluded that the Façade Failure was not an "Occurrence" under the Lloyd's Policy. Instead, Tutor Perini asserts that the Court overlooked its argument, made on summary judgment, that the Lloyd's Policy provides independent coverage for "Property Damage arising from the rendering of or failure to render Professional Services." (See Lloyd's Policy at Bates TP031471.) This, Tutor Perini argues, would not require that the Façade Failure be an "Occurrence." In addition, Tutor Perini asserts that material issues of fact exist prohibiting the Court from entering summary judgment that Tutor Perini failed to provide Lloyd's notice of a potential claim arising from the Façade Failure in a timely manner--this ruling constituting a separate, and independent, ground for granting summary judgment for Lloyd's. As more fully explained below, however, the Court overlooked neither of these assertions and neither casts doubt upon the correctness of the MSJ Order. Accordingly, Tutor Perini's motion for reconsideration is denied in its entirety.

DISCUSSION

The Court presumes the parties' familiarity with the facts and issues involved in this case, and therefore recounts only those facts relevant to its discussion of the legal issues raised on this motion.

The standard for granting reconsideration is strict. Generally, motions for reconsideration are not granted "unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see also Rule 6.3, Local Civil Rules, S.D.N.Y. "Controlling authority means decisions of the Second Circuit Court of Appeals or the U.S. Supreme Court." Ivan Visin Shipping, Ltd. v. Onego Shipping & Chartering B.V., 543 F. Supp. 2d 338, 339 (S.D.N.Y. 2007) (citation omitted). The Court should not revisit a prior order unless there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation marks omitted).

A motion for reconsideration should not be used as a vehicle simply to voice disagreement with the Court's decision, see R.F.M.A.S., Inc. v. Mimi So, 640 F. Supp. 2d 506, 512-13 (S.D.N.Y. 2009), nor does it present "an occasion for repeating old arguments previously rejected [ ] or an opportunity for making new arguments that could have previously been made." Associated Press v. U.S. Dep't of Defense, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) (citations omitted). Therefore, a motion for

3

reconsideration should be denied if the moving party "merely offers substantially the same arguments [ ] offered on the original motion." U.S. v. Kerik, 615 F. Supp. 2d 256, 276 n. 27 (S.D.N.Y. 2009) (internal quotation marks omitted). Ultimately, however, the decision to grant or deny the motion for reconsideration is within "the sound discretion of the district court." Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

**Professional Services Coverage**

The Lloyd's Policy provides, in relevant part:

> We will pay on behalf of the Insured those sums . . . that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured . . . because of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world.

(Lloyd's Policy at Bates TP031475.)

In the MSJ Order, the Court ruled that the Façade Failure was not an "Occurrence" as defined under the Lloyd's Policy. Tutor Perini does not contest that ruling on this motion. (See Tutor Perini Reply at 1-2.) Tutor Perini instead points to "Endorsement No. 3" to the Lloyd's Policy, which explains that "coverage is provided hereunder for **Bodily Injury** and **Property Damage** arising from the rendering of or failure to render Professional Services.[2] All other terms and conditions of this policy remain unchanged." (Lloyd's Policy at Bates TP031471.) Tutor Perini argues that this endorsement obligates Lloyd's to provide coverage for

---

[2] "Professional Services" is undefined in the Lloyd's Policy.

4

incidents involving "Professional Services," even if such incidents are are not "Occurrences."

As an initial matter, this argument was made before the Court on summary judgment (see docket no. 105 ("Tutor Perini MSJ Opp'n") at 13), the Court read it in the papers below and rejected it, and therefore it is not a proper basis for reconsideration. See Kerik, 615 F. Supp. 2d at 276 n. 27.

More importantly, Tutor Perini reads the Lloyd's Policy incorrectly. Endorsement No. 3 does not change the fundamental coverage provided by the Lloyd's Policy--that being for certain injuries "caused by an **Occurrence** happening anywhere in the world." (Lloyd's Policy at Bates TP031475.) Indeed, the endorsement itself states that "[a]ll other terms and conditions of this policy remain unchanged." (Id. at Bates TP031471.) The Lloyd's Policy's definitions of Bodily Injury and Property Damage do not make any reference to coverage for instances relating to provision of professional services of any kind;[3] Endorsement No. 3 simply makes plain that such injuries also include injuries related to "Professional Services." New York law is well-settled, and has been for at least seven decades, that an "endorsement [to an insurance policy] and [the] policy [itself] must be read together and that the policy remains in full force and effect except as altered by the words of the endorsement." First Roumanian Am. Congregation v. GuideOne Mut. Ins. Co., 862 F. Supp. 2d 293, 305 (S.D.N.Y. 2012) (alterations omitted, quoting

---

[3] Bodily Injury is defined as "bodily injury, sickness, disability or disease . . . mental injury, mental anguish, humiliation, shock or death if directly resulting from bodily injury, sickness, disability or disease." (Lloyd's Policy at Bates TP031478.) Property Damage is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . or [l]oss of use of tangible property that is not physically injured." (Id. at Bates TP031482.)

5

Thompson-Starrett Co. v. Am. Mut. Liab. Ins. Co., 11 N.E.2d 905, 906 (N.Y. 1937)); see also U.S. Underwriters Ins. Co. v. Kum Gang Inc., 443 F. Supp. 2d 348, 358 (E.D.N.Y. 2006) ("When an endorsement indicates that it leaves the terms and conditions of the policy unchanged, the endorsement does not abrogate or nullify the terms and conditions of a policy element not explicitly referred to in the endorsement."). Reading Endorsement No. 3 to negate the specific requirement in the central Coverage section of the Lloyd's Policy that an "**Occurance** happen[] anywhere in the world," is therefore inappropriate. Simply put, coverage under Lloyd's Policy requires that an "Occurrence" have occurred. Since Tutor Perini does not dispute on this motion that an "Occurrence" did not occur, it cannot avail itself of Endorsement No. 3 to obtain coverage.

Finally, Tutor Perini states that "[i]t is well-settled that professional liability coverage [that assumedly for 'Professional Services' as provided by Endorsement No. 3] is distinct from and triggered by different events than CGL coverage [that provided under central 'Commercial Umbrella Policy' section of the Lloyd's Policy]." (Tutor Perini Reply at 2.) This is precisely the point. To borrow from the Court's prior decision, it simply defies credulity, and no reasonable juror could find, that sophisticated parties would so fundamentally change their contract of insurance-- indeed, change to remove a central requirement of coverage--through execution of a two-line endorsement. Tutor Perini's argument is, therefore, implausible and unsupported.

## Timeliness

As in the MSJ Order, the Court need not reach the issue of whether Tutor Perini's delay in notifying Lloyd's of the Façade Failure failed the Lloyd's Policy requirement that Tutor Perini provide notice "as soon as practicable." The Lloyd's Policy does not provide coverage for "Professional Services"-related incidents outside of an "Occurrence," and the Façade Failure was not an "Occurrence." Accordingly, the Lloyd's Policy does not provide coverage for the Façade Failure.

Despite this, the Court would make the same rulings on timeliness on this motion for reconsideration as it did on summary judgment. First, that the Lloyd's Policy required a single specific person to have knowledge of the Façade Failure before Tutor Perini's obligation to alert Lloyd's is irrelevant. Several high-level people at Tutor Perini were on-site as of April 2008. It is unbelievable, and no reasonable juror could find, that the individual in charge of insurance coverage for Tutor Perini would not have been notified of the Façade Failure until seven months later in November 2008--indeed, if this were somehow true, it is illustrative of deep and serious problems in Tutor Perini's management structure. Moreover, even accepting this communication failure as true, the Court determined as a matter of law that the two month delay between the requisite Tutor Perini individual receiving formal notice of the Façade Failure and Tutor Perini's notification of Lloyd's was not "as soon as practicable." Tutor Perini's arguments on this issue were put before the Court previously, and the Court explicitly considered and rejected them. (See MSJ Order at 14-16.)

7

Tutor Perini argues that the Court overlooked (1) that the Lloyd's Policy excuses late notice if due to a "clerical oversight"; (2) Tutor Perini believed it would not be subject to claims before notifying Lloyd's, and therefore notice was not required; and (3) that Lloyd's cannot rely on Tutor Perini's failure to notify Lloyd's in a timely manner because Lloyd's itself did not respond in a timely manner. None of these arguments, however, is availing.

First, it is true that under the Lloyd's Policy, "[a] clerical oversight to notify an **Occurrence** will not prejudice [the insured's] rights." (Lloyd's Policy at Bates TP031470.) But this fails to help Tutor Perini for several reasons. The Façade Failure was not an "Occurrence"--a point conceded by Tutor Perini on this motion-- and therefore this provision does not apply. Indeed, even if the Lloyd's Policy provided for "Professional Services" coverage absent an "Occurrence"--which it does not--this provision still would not apply, again because it applies only to notification of "Occurrences." Finally, Tutor Perini does not allege a single fact suggesting that its two-month (or nine-month) notification delay was actually due to a clerical oversight. Instead, Tutor Perini simply relies on the fact of the clause's existence and the cosmic possibility that "any purported delay . . . may have been caused due to a clerical error." (Tutor Perini Mem. at 18-19; see also Tutor Perini Reply at 7 (noting existence of "clerical oversight" provision); Tutor Perini MSJ Opp'n at 10 (same).) But without any factual support, the infinite chance that something might have happened is insufficient to raise a triable issue on summary judgment.

8

Second, that Tutor Perini believed it would not be subject to liability before notifying Lloyd's is equally inapposite. The Lloyd's Policy requires that Tutor Perini notify Lloyd's "as soon as practicable of an Occurrence which <u>may</u> result in a claim." (Lloyd's Policy at Bates TP031490 (emphasis added).) By conceding that Tutor Perini was not sure it would be subject to liability, Tutor Perini has essentially admitted that the Façade Failure <u>might</u> have created liability, and therefore that it <u>may</u> have had to file a claim. Thus, that Tutor Perini was considering its probable level of culpability or liability in late 2008 was no excuse for its failure to notify Lloyd's of the Façade Failure.

Finally, Lloyd's failure to respond to Tutor Perini's January 2009 claim notice does not prevent Lloyd's from relying on Tutor Perini's late notice in denying coverage. Lloyd's did not waive its right to deny coverage by failing to respond because there is no fact indicating that Lloyd's consciously, and with full knowledge, voluntarily gave up that right. See <u>Sirignano v. Chicago Ins. Co.</u>, 192 F. Supp. 2d 199, 207 (S.D.N.Y. 2002) ("[W]aiver is a voluntary and intentional relinquishment of a known right, and cannot be found unless there was full knowledge of the facts upon which the existence of the right depends. Waiver cannot be lightly inferred and cannot be found unless the carrier made a conscious choice to waive its rights.") (quotation marks, citations, and alterations omitted). Tutor Perini's suggestion that Lloyd's waived its rights through its silence (<u>see</u> Tutor Perini Reply at 5), is simply

9

not enough to raise a triable issue as to Lloyd's intentional and knowing relinquishment of its ability to deny coverage.[4]

Nor is Lloyd's estopped from denying coverage due to Tutor Perini's failure to provide timely notice. Lloyd's acted consistently--not inconsistently--with the Façade Failure being uncovered by the Lloyd's Policy. See Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 95 (2d Cir. 2002) (Estoppel "arises where an insurer acts in a manner inconsistent with a lack of coverage, and the insured reasonably relies on those actions to its detriment . . . for example, an insurer, though not in fact obligated to provide coverage, defends the case without asserting any policy defenses.") (emphasis added). Here, however, Lloyd's never acted in a manner suggesting that the Façade Failure was covered by the Lloyd's Policy.

In the end, this discussion of timeliness is academic because the Façade Failure was not an "Occurrence," and was not otherwise covered by the Lloyd's Policy. In other words, even if notice were timely provided, it would not matter because the incident in question fell outside the scope of coverage. Similarly, however, even if the Façade Failure were covered, which it is not, notice of it was not provided to Lloyd's in a timely manner, and accordingly, Lloyd's obligation to provide coverage was relieved.

---

[4] Tutor Perini's citation to MBIA Inc. v. Fed. Ins. Co., 652 F.3d 152 (2d Cir. 2011) does not change this conclusion. That case is easily distinguishable because the insurer was in fact participating in settlement discussions concerning the claims in question even while it was not providing an opinion on coverage. There is no dispute here that Lloyd's was not participating in anything having to do with the Façade Failure.

## CONCLUSION

For the reasons set forth above, Tutor Perini's motion for reconsideration is DENIED in its entirety.

The Clerk of the Court is directed to close motion at docket no. **135**.

The Clerk of the Court is further directed to include this order in the Record on Appeal pursuant to Federal Rule of Appellate Procedure 10(e)(2)(B).

SO ORDERED:

Dated: New York, New York
       February 5, 2013

_____
KATHERINE B. FORREST
United States District Judge